## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

_____

SECURITIES AND EXCHANGE
COMMISSION,

                  Plaintiff,

              v.

STEPHEN D. FERRONE, DOUGLAS A.
MCCLAIN, JR., DOUGLAS A. MCCLAIN, SR.,
JAMES T. MICELI, IMMUNOSYN
CORPORATION, ARGYLL
BIOTECHNOLOGIES, LLC, ARGYLL
EQUITIES, LLC, AND PADMORE
HOLDINGS, LTD.,

                  Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 11-cv-5223

HON. ELAINE E. BUCKLO


**THE SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO
DEFENDANT DOUGLAS MCCLAIN SR. AND ITS MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT AS TO DEFENDANT DOUGLAS MCCLAIN JR.</u>**

Eric M. Phillips
Tracy W. Lo
U.S. SECURITIES AND EXCHANGE
COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390
Fax: (312) 353-7398

*Attorneys for Plaintiff United States Securities
and Exchange Commission*

## INTRODUCTION

Defendant Douglas McClain Sr. ("McClain Sr.") is a con man.  In this case, his lies ensnared investors in a public company called Immunosyn Corporation ("Immunosyn"), whose sole product was a drug made from goat serum, a component of goat's blood.  Like any skilled con man, McClain Sr. convinced innocent victims about the promise of what he was selling.  Then McClain Sr. engaged in the most basic con of all – he took investors' money and never gave them what he promised.  There is no legitimate dispute that McClain Sr. engaged in this misconduct or that he made egregious misstatements about Immunosyn and its drug product.

Similarly, there is no genuine dispute that McClain Sr. and his son, Douglas McClain Jr., who was Immunosyn's CFO and Chairman of the Board, engaged in insider trading.  McClain Sr. and McClain Jr. each sold Immunosyn shares through companies they owned while knowing that the U.S. Food and Drug Administration ("FDA") had imposed a "clinical hold" on Immunosyn's sole drug product.  Immunosyn's public filings did not disclose this critical fact, and McClain Sr. and McClain Jr. profited from this non-disclosure through stock sales.

The Securities and Exchange Commission's ("SEC") summary judgment motion has three components.  First, the motion is based on McClain Sr.'s failure to ever deliver the shares he sold to investors, which amounts to a theft.  Among the millions of dollars in stock sales that the Defendants in this case made collectively, McClain Sr. personally raised at least $338,000 from at least 21 investors in 2008 by promising to sell these investors Immunosyn shares at a discount.  After taking investors' money, McClain Sr. first promised to deliver shares, and then promised to return investors' money, but he did neither.  Instead, he made excuses for several years, hoping that investors would give up.  But the investors did not give up, and neither did the SEC.  This Court should hold McClain Sr. accountable for his theft.

Second, the motion is based on McClain Sr.'s lies that the FDA had issued approvals for Immunosyn's drug product and that the U.S. Department of Defense had purchased the drug. Neither was true. In fact, not only had the FDA failed to approve the drug, but it had done just the opposite – it had expressly prohibited any human use of the drug, as McClain Sr. well knew.

Third, the motion is based on McClain Sr.'s and McClain Jr.'s insider trading by selling Immunosyn shares while knowing that the FDA had placed a clinical hold on Immunosyn's sole drug product.

By this misconduct, as alleged in the Complaint, McClain Sr. and McClain Jr. violated the federal securities laws' antifraud provisions (Counts I-II).[1] McClain Sr. and McClain Jr. cannot establish a genuine dispute regarding any fact material to these claims. Accordingly, the SEC respectfully asks this Court to grant summary judgment in favor of the SEC[2] with respect to these claims against McClain Sr. and McClain Jr.

## SUMMARY OF UNDISPUTED FACTS

Along with this Memorandum of Law, the SEC has submitted a separate statement of undisputed material facts pursuant to Local Rule 56.1,[3] which provides a more detailed recitation of the evidence. The SEC includes certain undisputed facts here for the Court's convenience.

---

[1] The entity defendants in this case have never appeared and are in default. Defendant James Miceli is now deceased. Therefore, there are three active Defendants remaining – McClain Sr., McClain Jr., and Stephen Ferrone. The SEC is not moving for summary judgment at this time on its claims against Ferrone or on its claims (Count IV and Counts VI-VII) against McClain Jr. outside of Counts I-II.
[2] The SEC is moving for summary judgment against McClain Sr. and McClain Jr. on liability. In the event the Court grants the SEC's motion for summary judgment, the SEC then will move for imposition of remedies against McClain Sr. and McClain Jr.
[3] References to the SEC's statement of undisputed material facts are cited herein as "Stmt. ¶ _."

I.    **Argyll Biotech and Immunosyn**

Immunosyn Corporation was formed to market and sell a biopharmaceutical drug product referred to as "SF-1019." (Stmt. ¶ 4) A private company, Argyll Biotechnologies ("Argyll Biotech"), created Immunosyn. (Stmt. ¶ 6) McClain Sr. was Argyll Biotech's Chief Science Officer. (Stmt. ¶ 7) McClain Sr.'s son, McClain Jr., ran Argyll Biotech, along with Defendant James Miceli ("Miceli"). (Stmt. ¶ 8) McClain Jr. served as Immunosyn's Chairman of the Board and Chief Financial Officer. (Stmt. ¶ 9)

Argyll Biotech's three officers – McClain Jr., Miceli, and McClain Sr. -- all have been criminally convicted or indicted. (Stmt. ¶¶ 9-14) In 2013, a federal jury in San Diego, California convicted McClain Jr. of participating in a stock lending scheme through other companies that he and Miceli ran. (Stmt. ¶ 10) In the criminal case against McClain Sr., a Texas grand jury indicted McClain Sr. on charges that he stole as much as $200,000 from an elderly man in San Antonio, Texas. (Stmt. ¶¶ 13-14)

In 2006, Argyll Biotech acquired the rights to SF-1019. (Stmt. ¶ 15) SF-1019 is derived from goat serum, or goat's blood. (Stmt. ¶ 16) It purportedly can treat AIDS and other ailments. (Stmt. ¶ 17)

After forming Immunosyn, Argyll Biotech transferred certain rights for SF-1019 to Immunosyn, in exchange for Immunosyn shares. (Stmt. ¶ 18) Immunosyn was a public company whose shares began trading on the over-the-counter stock market in October 2007. (Stmt. ¶ 19) Immunosyn's rights to SF-1019 were Immunosyn's primary asset. (Stmt. ¶ 20)

## II.   McClain Sr. Obtains At Least $338,000 By Selling Some of His Immunosyn Shares After Making An Audiotaped Sales Presentation

As compensation for the work that McClain Sr. performed for Argyll Biotech on SF-1019, McClain Sr. received 2.8 million shares of Immunosyn stock through his ten percent ownership interest in a company called Padmore Holdings. (Stmt. ¶ 21)

In July 2008, McClain Sr. gave a presentation to members of a clinic located in Texas. (Stmt. ¶ 22)  A participant made an audio recording of McClain Sr.'s presentation. (Stmt. ¶ 23) Subsequent to making the presentation, McClain Sr. obtained at least $338,000 from sales to people who attended the presentation and to others.  (Stmt. ¶ 25)

## III.  McClain Sr. Makes False or Misleading Statements During the Audiotaped Presentation

During the July 2008 presentation to potential investors at the Texas clinic, McClain Sr. represented, among other things, that: (1) in the United States, "Phase 2" clinical trials for SF-1019 were getting ready to start in about 60 days (Stmt. ¶ 26); (2) the FDA had given Immunosyn or Argyll permission to treat six people in Minnesota with SF-1019 through "compassionate waivers" issued by the FDA (*Id.*); (3) the FDA had also given a compassionate waiver approval to treat patients in Texas with SF-1019 (*Id.*); and (4) the FDA would issue approval for the drug within about a year after Phase 2 clinical trials were completed.  (*Id.*)

McClain Sr.'s statements relating to FDA approvals for SF-1019 were false.  (Stmt. ¶ 27)  As Immunosyn's public filings admitted both before and after McClain Sr.'s July 2008 presentation at the Texas clinic, "SF-1019 has not been approved for any human use."  (*Id.*)  In fact, in early 2007, the FDA had issued a full clinical hold on an application seeking approval to conduct human clinical trials using SF-1019.  (Stmt. ¶ 28) As a result of the FDA's clinical hold, Argyll

was prohibited from proceeding with human clinical trials or from any other human use of SF-1019.  (Stmt. ¶ 29)  The issues raised by the FDA in issuing a clinical hold were serious and significant.  (Stmt. ¶ 30)  The clinical hold would have been important to investors.  (Stmt. ¶ 31)  McClain Sr. knew about the clinical hold soon after the FDA issued it.  (Stmt. ¶ 32)

During the July 2008 presentation at the Texas clinic, McClain Sr. also told investors that the U.S. Department of Defense had bought 600,000 vials of SF-1019 in the prior year.  (Stmt. ¶ 35)  This statement was false.  (Stmt. ¶ 36)

Based on McClain Sr.'s July 2008 representations at the Texas clinic, and based on other representations around the same time, several individuals paid McClain Sr. money to buy shares of Immunosyn stock that McClain Sr. owned.  (Stmt. ¶¶ 25, 37)

## IV.    McClain Sr. Takes Investors' Money But Never Delivers Immunosyn Shares

After taking money from about 21 individuals to purchase Immunosyn shares from McClain Sr., McClain Sr. never delivered these individuals their Immunosyn shares or other evidence of their ownership of Immunosyn stock. (Stmt. ¶ 38)  McClain Sr. repeatedly promised that he would be delivering the shares but never did so.  (Stmt. ¶ 39)  For example, after an investor gave McClain Sr. money in August 2008 to purchase shares, and the investor continued to follow up with McClain Sr. about when she would get the shares, McClain Sr. told the investor in a May 2009 email: "Please contact me as I am ready to transfer shares and I need to know your account at Charles Schwab."  (Stmt. ¶ 43)  But McClain Sr. never delivered the shares.  (Stmt. ¶ 44)

Later, McClain Sr. told these investors that instead of delivering shares of Immunosyn stock, he would just pay back the money the individuals had sent to him, with interest.  (Stmt. ¶¶ 45-53)  For instance, in McClain Sr.'s December 2009 investigative testimony before the SEC, McClain

5

Sr. testified that by late December 2009 he expected to be able to repay all investors who had

sent his money for the purchase of Immunosyn shares. (Stmt. ¶ 52) But McClain Sr. never

repaid investors a dime. (Stmt. ¶ 53)

**V.** **McClain Sr. Makes False or Misleading Statements in a Video Presentation Posted On Immunosyn's Website**

In 2008, McClain Sr. and Stephen Ferrone, Immunosyn's CEO, filmed a video presentation

about Immunosyn and SF-1019. (Stmt. ¶ 54) The video presentation was posted to

Immunosyn's public website later in 2008. (Stmt. ¶ 56)

In the video presentation, McClain Sr. stated, among other things, that SF-1019 had been

shown to be effective in "pre-clinical human studies," that "[c]ompassionate use waivers have

been issued by the institutional review board of the FDA in Houston, Texas for the use of SF-

1019," and that "preparations for clinical trials are underway in the United States and Europe."

(Stmt. ¶ 58)

McClain Sr.'s statements in the video presentation relating to FDA approvals for SF-1019

were false, as the FDA never issued any approvals for SF-1019. (Stmt. ¶ 59) Further, McClain

Sr.'s statements about preparations for clinical trials being underway in the United States omitted

to state that in early 2007, the FDA had issued a full clinical hold on SF-1019. (Stmt. ¶ 60)

Moreover, McClain Sr.'s statements in the video presentation about supposed "pre-clinical

human studies" involving SF-1019 omitted to state that such human studies, if they in fact

occurred, were done without regulatory approval and in violation of the FDA's clinical hold.

(Stmt. ¶ 62)

6

## VI.    Like His Father, McClain Jr. Sells His Immunosyn Shares While Knowing That the FDA Had Placed SF-1019 on a Full Clinical Hold

Like his father, McClain Jr. also was aware that the FDA had placed SF-1019 on a full clinical hold.  (Stmt. ¶¶ 63-65)  For example, in March 2007, a scientist working with Argyll Biotech sent an email to McClain Jr., McClain Sr., and Miceli, attached the FDA's clinical hold letter to the email, and wrote in pertinent part: "Attached is the FDA reply to our IND submission.  We are on an official clinical hold."  (Stmt. ¶ 63)  In its public filings with the SEC during the relevant time period, Immunosyn did not disclose that the FDA had imposed a clinical hold on SF-1019.  (Stmt. ¶¶ 66-67)

During the time period in which Immunosyn failed to disclose the clinical hold, McClain Jr. sold his Immunosyn shares.  (Stmt. ¶ 68)  When McClain Jr. sold Immunosyn stock, his sales were reflected in McClain Jr.'s SEC filings on forms known as "Form 4."  (Stmt. ¶ 69)  McClain Jr.'s Form 4 filings with the SEC show that through the companies he owned, he sold hundreds of thousands of shares of Immunosyn stock during a period in which Immunosyn failed to disclose that the FDA had imposed a clinical hold on SF-1019.  (Stmt. ¶ 70)

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, a summary judgment motion shall be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]  The Seventh Circuit has made clear that scienter-based claims may be appropriate subject matter for summary judgment motions.  *See, e.g.*, *SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998) (affirming summary judgment in favor of SEC on

---

[4] The SEC must prove its claims by a preponderance of the evidence.  *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-90 (1983); *Steadman v. SEC*, 450 U.S. 91, 95 (1981).

scienter-based securities fraud claim). Summary judgment may be appropriate "even when a party's subjective beliefs are critical to liability." *See SEC v. Lyttle*, [538 F.3d 601](#), 603 (7th Cir. 2008) (rejecting argument that summary judgment can almost never be granted in favor of a plaintiff who has the burden of proving scienter and granting summary judgment on the SEC's fraud claims).

## **ARGUMENT**

### I.  **McClain Sr. Violated The Antifraud Provisions of the Federal Securities Laws Through Misrepresentations and Omissions and Through a Fraudulent Scheme**

The evidence establishes that the SEC is entitled to summary judgment on its claims that McClain Sr. violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by making misrepresentations and omissions and by engaging in a fraudulent scheme. Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities, and Section 10(b) of the Exchange Act and Rule 10b-5 prohibit fraud in connection with the purchase or sale of securities. Specifically, these provisions prohibit persons or entities from (1) using any device, scheme or artifice to defraud; (2) making material misstatements of fact or omitting to state material facts;[5] or (3) participating in any act or practice that operates as a fraud. *See* 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

To prevail on its securities fraud claims under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the SEC must establish that: (1) in connection with the offer or sale of securities; (2) the defendant made untrue statements or material omissions, or employed or engaged in a scheme to defraud (scheme liability); and (3) he acted with the requisite scienter.

---

[5] Section 17(a) of the Securities Act further requires that the violator obtain money or property by means of the misstatement or omission. *See* 15 U.S.C. §77q(a).

*See SEC v. Koester*, 2014 WL 1342809 at \*3 (S.D. Ind. Apr. 3, 2014) (granting summary judgment in favor of the SEC.)

The SEC's claims under Section 17(a)(2) and 17(a)(3) of the Securities Act are different from its claims under Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5, only in that scienter is not required to establish a violation. *See Aaron*, 446 U.S. at 697; *SEC v. Solucorp Indus.*, 274 F. Supp. 2d 379, 419 (S.D.N.Y. 2003). Instead, a Defendant's negligence in making misrepresentations or omissions of material fact is enough to establish liability under Sections 17(a)(2) and (3). *See SEC v. Hughes Capital Corp.*, 124 F.3d 449, 453 (3d Cir. 1997) (affirming district court's award of summary judgment on Section 17(a)(2) claim where there was no genuine dispute of material fact that defendant negligently made material omissions in offering documents); *Solucorp Indus, Ltd.*, 274 F. Supp.2d at 419; *SEC v. Scott*, 565 F. Supp. 1513, 1525-26 (S.D.N.Y. 1983).

A misstated or omitted fact is material where a substantial likelihood exists that a reasonable investor would have viewed the true fact "as having significantly altered the 'total mix' of information available." *Basic v. Levinson*, 485 U.S. 224, 231-32 (1988) (*quoting TSC Industries v. Northway*, 426 U.S. 438, 449 (1976)).

Scienter, which is an element of Sections 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5, is the mental state of intending to deceive, manipulate or defraud. *Aaron v. SEC*, 446 U.S. 680, 691, 697 (1980). The scienter requirement can be satisfied by showing that a person acted recklessly. *See, e.g., Jakubowski*, 150 F.3d at 681. Reckless conduct is "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Id*. at 1025 (*citing Sundstrand v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977)).

A. **McClain Sr. Defrauded Investors By Taking Their Money and Then Not Delivering Immunosyn Shares**

The SEC is entitled to summary judgment on its securities fraud claims based on McClain Sr.'s taking of investors' money for the purchase of McClain Sr.'s Immunosyn shares and then never delivering the shares. McClain Sr.'s misconduct – which essentially amounts to theft – satisfies all of the elements of the SEC's claims.

First, McClain Sr. made a misrepresentation and engaged in a scheme. McClain Sr. represented to investors that when they gave him their money, he would give them his Immunosyn shares. This did not occur, despite McClain Sr.'s repeated promises that it would occur and his repeated excuses about why it had not occurred during various points in time. McClain Sr.'s scheme involved not delivering the shares he promised investors and then using deception to lull investors into believing that the shares would be forthcoming.

Second, McClain Sr.'s misrepresentations were material. Indeed, nothing could be more material in a securities transaction than getting the securities that an investor paid for.

Third, McClain Sr.'s misrepresentations were made in connection with the offer or sale, or purchase or sale, of securities. As the audiotaped presentation at the Texas clinic by McClain Sr. establishes, and as various declarations of harmed investors confirm, McClain Sr. offered, and then sold, his Immunosyn shares to investors, raising at least $338,000 in the process.

Finally, McClain Sr. acted with scienter. As set forth in various investor declarations and attachments thereto, McClain Sr. repeatedly and falsely promised to investors that the transfer of their Immunosyn shares was imminent. Then, having exhausted his excuses about why he had not delivered Immunosyn shares to investors, McClain Sr. promised to return investors' money. He repeatedly claimed that this return of investors' money was imminent. Indeed, McClain Sr. testified, under oath, before the SEC back in 2009 that he would shortly return investors' money.

But this was just another of McClain Sr.'s lies.  In fact, McClain Sr.'s criminal indictment indicates that McClain Sr. has a pattern outside of Immunosyn of taking people's money by making false statements and promises.  McClain Sr.'s repeated false statements to investors establish his scienter.[6]

Relevant precedent shows that the SEC's securities fraud claims based on McClain Sr.'s theft of investors' money are ripe for summary judgment.  For example, in *Jakubowski*, where the Seventh Circuit affirmed the district court's award of summary judgment in the SEC's favor, the defendant was a lawyer who fraudulently filled out forms stating that investors had not transferred their subscription rights or agreed to transfer shares themselves.  *Jakubowski*, 150 F.3d 675, 678.  The Seventh Circuit rejected the defendant's assertion that a jury could conclude he was merely careless, holding that deliberate ignorance was sufficient for an award of summary judgment on scienter-based claims.  *Id.* at 681-82.

In the recent *Koester* decision, meanwhile, the defendant misrepresented to investors that his unique trading strategy offered investors a principal guaranteed investment opportunity.  *Koester*, 2014 WL 1342809 at *2.  The defendant misrepresented the nature of the investment and the actual and intended use of investors' funds.  *Id.* at *3.  The court examined the testimony of investors and the statements made by the defendant and concluded that summary judgment was appropriate.  *Id.* at *4.

Similarly, in the case of *SEC v. Gagnon*, 2012 WL 994892 (E.D. Mich., Mar. 22, 2012), the defendant was a self-styled Internet business opportunity expert who helped another person's

---

[6] In addition to violating the scienter-based provisions (Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a)(1) of the Securities Act) that are part of the SEC's securities fraud claims, McClain Sr. also violated the non-scienter based provisions (Sections 17(a)(2) and (3) of the Securities Act) of the SEC's claims. *See SEC v. Gagnon*, 2012 WL 994892 (E.D. Mich., Mar. 22, 2012) (granting summary judgment to the SEC on claims under both Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act).

Ponzi scheme. *Id.* at *1. Although the defendant claimed that only the Ponzi scheme perpetrator knew the truth about the scheme and that the defendant was an unwitting victim, the court concluded that summary judgment in the SEC's favor was appropriate after examining all of the false statements that the defendant made. *Id.* at *10-*11.

Like in *Jakubowski*, *Koester*, and *Gagnon*, this Court should grant summary judgment in favor of the SEC and against McClain Sr. After extensive discovery in this case, there is no dispute about any of the elements of the SEC's securities fraud claims against McClain Sr. McClain Sr.'s misstatements are captured on audiotape and videotape, he took investors' money and failed to deliver the shares he purportedly sold, and he continued to mislead investors with lie after lie about when investors would get their shares or when he would return investors' money. This Court should put an end to McClain Sr.'s lies.

**B. McClain Sr. Defrauded Investors By Falsely Stating that the FDA Had Issued Approvals for the Human Use of SF-1019 and That the Defense Department Had Purchased the Drug**

In addition to stealing investors' money, McClain Sr. also defrauded investors by falsely stating that the FDA had issued approvals for human use of SF-1019 and that the Department of Defense had purchased SF-1019. These misrepresentations provide another basis for summary judgment against McClain Sr.

First, these representations were false or misleading. As established by the audiotape of McClain Sr.'s presentation to Texas clinic investors, as well as the videotape of McClain Sr.'s presentation on Immunosyn's website, McClain repeatedly stated that the FDA had given approval for various kinds of use of SF-1019 on humans. This was false. In fact the FDA had issued a full clinical hold on SF-1019. Further, in the audiotaped presentation, McClain Sr. made the false statement that the Defense Department had purchased 600,000 vials of SF-1019.

Second, McClain Sr.'s misstatements were material.  Immunosyn's rights to SF-1019 were the company's primary asset.  Therefore, the company's ability to market and sell any anything in the United States was dependent on FDA approval.  The investor declaration of Rosella Saltarelli, who invested at least $200,000 of her money in Immunosyn based on McClain Sr.'s false declarations, reinforces the importance of McClain Sr.'s misrepresentations and omissions. *See Koester*, 2014 WL 1342809 at *4 (citing investor declaration as a factor in materiality analysis).  Moreover, McClain Sr. made the information material by affirmatively discussing supposed FDA approvals.  *Cf. Matrixx Initiatives v. Siracusano*, 131 S.Ct. 1309, 1323 (2011) (holding that plaintiffs established that materiality was substantially likely where company allegedly concealed negative information about health impact of over-the-counter medication).

Third, these misstatements were made in connection with the purchase or sale of securities. McClain Sr. made his misstatements in the audiotaped presentation to the Texas clinic investors in an explicit offer to sell Immunosyn shares to these individuals.  Additionally, McClain Sr.'s misstatements in the video presentation were also "in connection with the purchase or sale" of securities because the video was posted on Immunosyn's public website.  *See SEC v. Stratocomm Corp.*, 2014 WL 689116 at *12 (N.D.N.Y. Feb. 19, 2014) (misstatements posted on website were "in connection with" the offer, purchase, or sale of securities).

Finally, McClain Sr. made his misstatements with scienter.  McClain Sr. admits that he knew that the FDA had issued a clinical hold on SF-1019.  Therefore, he knew, or was reckless in not knowing, that the FDA had not issued any approvals for SF-1019.  Likewise, in the context of a drug product that the FDA had not approved, and had in fact put on a full clinical hold, McClain Sr. knew or was reckless in not knowing that his statements about purchase of SF-1019 by the Defense Department were false.

McClain Sr.'s statements about FDA approval of SF-1019 for human use and about the Defense Department's purchase of SF-1019 were blatantly false, and he had no basis for making these statements. As such, these statements are an appropriate basis for summary judgment against him.

**II.**     **McClain Sr. and McClain Jr. Engaged in Insider Trading**

The SEC also is entitled to summary judgment on its claims that McClain Sr. and McClain Jr. violated the antifraud provisions of the federal securities laws by engaging in insider trading of Immunosyn shares.

"It has long been established that 'insider trading' in the literal and classic sense – trading in a corporation's stock by a corporate insider on the basis of material nonpublic information – violates [the antifraud provisions of the federal securities laws.]" *SEC v. Kirch*, 263 F. Supp. 2d 1144, 1148 (N.D. Ill. 2003) (granting the SEC summary judgment on insider trading claims). Under the classical theory of insider trading, a person is liable if he trades in the securities of a corporation based on material non-public information and either owes a fiduciary duty to the corporation's shareholders or knows (or should know) that the source of the information owes a fiduciary duty to the shareholders. *SEC v. Yang*, 2013 WL 6049074 at *2 (N.D. Ill. Nov. 14, 2013) (citations omitted). The classical theory applies to trading by insiders in the stocks of their own corporations. *SEC v. Maio*, 51 F.3d 623, 631 (7th Cir. 1995) (citations omitted).

McClain Sr. and McClain Jr. engaged in insider trading under the classical theory when they used their status as insiders of Argyll Biotech and Immunosyn to acquire the material non-public information of the FDA's clinical hold and then sell their Immunosyn shares while in possession of that non-public information. As set forth above, there is no genuine dispute that the clinical hold was material to investors, that McClain Sr. and McClain Jr. knew about the clinical hold,

that this information was not disclosed by Immunosyn and therefore was non-public, that McClain Sr. and McClain Jr. sold their Immunosyn shares, and that McClain Sr. and McClain Jr. were insiders with fiduciary duties to shareholders.  *See SEC v. Talbot*, 530 F.3d 1085, 1095 (9th Cir. 2008) (corporate officers and directors are fiduciaries).  Therefore, the Court should grant summary judgment to the SEC on its insider trading claims against McClain Sr. and McClain Jr.

## CONCLUSION

For the foregoing reasons, plaintiff United States Securities and Exchange Commission respectfully requests that the Court grant its motion for summary judgment as to Counts I and II against McClain Sr. and McClain Jr., and find that they committed the violations charged.

Date:  April 24, 2014                                   Respectfully submitted,

                                                        */s/ Eric M. Phillips*
                                                        Eric M. Phillips
                                                        Tracy W. Lo
                                                        U.S. Securities and Exchange Commission
                                                        175 W. Jackson Blvd., Suite 900
                                                        Chicago, IL 60604
                                                        Telephone: (312) 353-7390
                                                        Fax: (312) 353-7398

## <u>CERTIFICATE OF SERVICE</u>

I, Eric M. Phillips, hereby certify that, on April 24, 2014, I caused a copy of the foregoing **Securities and Exchange Commission's Memorandum of Law in Support of its Motion for Summary Judgment as to Defendant Douglas McClain Sr. and for Partial Summary Judgment as to Defendant Douglas McClain Jr.** to be served upon the following counsel by the Court's CM/ECF system:

Corey Rubenstein, Esq.
Mark Rotert, Esq.
*Attorneys for Defendant Stephen Ferrone*

John Franczyk
*Attorneys for Defendants Douglas McClain Jr. and Douglas McClain, Sr.*

*/s/ Eric M. Phillips*