IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Securities and Exchange Commission, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 11-CV-05223 |
| | ) | |
| Stephen D. Ferrone; Douglas A. McClain, Jr.; | ) | HON. ELAINE BUCKLO |
| Douglas A. McClain, Sr.; James T. Miceli; | ) | |
| Immunosyn Corporation; Argyll Biotechnologies, | ) | |
| LLC; Argyll Equities, LLC; and Padmore | ) | |
| Holdings, Ltd., | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

**DEFENDANTS, DOUGLAS A. MCCLAIN, SR.'S AND DOUGLAS A. MCCLAIN, JR.'S MEMORANDUM OF LAW IN RESPONSE TO THE SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT <u>AS THE THOSE DEFENDANTS</u>**

John A. Franczyk
Franczyk, LLC

2254 Thistle Road
Glenview, IL 60026
Voice: 312.914.3112
Fax: 847.510.0626
Email: john@franczykllc.com

*Attorney for Defendants, Douglas A.
McClain, Sr. and Douglas A. McClain, Jr.*

**INTRODUCTION**

In its Memorandum in Support of its Motion for Partial Summary Judgment, Plaintiff, The Securities and Exchange Commission ("SEC"), apparently realizing that it cannot present a coherent set of undisputed facts to bolster of its already-weak allegations, has resorted to inflammatory language and character assassination in an attempt to portray the Defendants, Douglas A. McClain Sr. ("McClain Sr.") and Douglas A. McClain, Jr. ("McClain Jr.") as snake oil salesmen who deserve to suffer the wrath of the United States government. Stripped of their exaggerated accusations, misleading half-truths, irrelevant third-party representations, and factual manipulations, the SEC's arguments in support of its Motion are reduced to nothing more than restatements of the allegations in its Complaint, which allegations find no support in the full range of facts that have been elucidated through discovery. When those facts are viewed in their proper and complete context, the factual disputes between the SEC's allegations and the Defendants' responses to those allegations are so rampantly material as to preclude all consideration of summary judgment at this time.

Contrary and further to the SEC's assertions, McClain Sr. has been in contact with many of the Texas clinic patients who provided funds to support the development of the goat-serum derived "SF-1019" drug product that Argyll Biotechnologies had been developing. Many of those patients remain interested and continue to believe that this drug has substantial curative properties for a broad range of human disease pathologies. The SEC has stated that these patients have not given up in their effort to realize a return in their investment into Immunosyn Corporation, but their motivation for not giving up is not, as the SEC would have this Court believe, to get their money back, but is instead that they want to see the drug proceed into clinical trials and commercial development.

The SEC has also asserted that McClain Sr. "lied" about the status of the FDA's approval of SF-1019. Even a cursory parsing of the purported "undisputed facts" and the exhibits that supposedly support those "facts" will reveal that McClain Sr. was at all times truthful in his comments about the status of SF-1019. The SEC tries

to support its assertion that McClain Sr. "lied" first, by cherry-picking third-party statements and pulling quotations out of their explanatory context, and then, by comparing those statements to an unrelated comments from McClain Sr. Failing any real proof that McClain Sr. was not truthful, the SEC then sees fit to make vicious personal attacks on McClain Sr.'s character, notwithstanding his long history of humanitarian works.

Finally, although Immunosyn Corporation (the publicly-traded company that had procured exclusive rights to market and sell SF-1019) had disclosed in its public filings that clinical trials were not proceeding, the SEC claims that McClain Sr. and McClain Jr. sold Immunosyn stock while this information was not known to the public. In view of this disclosure in the company's public filings, and further in view of the absence of any causal connection between their possession of this purportedly "non-public" information and their sales of Immunosyn stock, the SEC's entire argument on insider trading has no substance or traction.

Accordingly, McClain Sr. and McClain Jr. respectfully request that the SEC's motion for partial summary judgment against them be denied in its entirety.

## **SUMMARY OF FACTS**

The SEC has submitted a skewed and incomplete set of purportedly undisputed facts. Pursuant to Local Rule 56.1, McClain Sr. and McClain Jr. are submitting a separate statement of facts which supplements and clarifies the record before this Court. A summary of this supplemental factual statement (referred to herein as "McClain Stmt.") is included here for background purposes.

SF-1019 is the second-generation form of a drug product that was originally referred to as BB7075. (McClain Stmt. ¶15). SF-1019 is an immunoregulatory protein peptide product that operates on a body's immune system to allow a person's natural immunity mechanisms to more effectively combat infections and diseases. Where an immune system is compromised, for example with acquired immune deficiency syndrome (AIDS), SF-1019 enhances the immune system to allow it to combat the infection. Alternately, where an immune system has become hyperactive in its attempts to eradicate certain infections, for example with multiple

sclerosis, which is believed to cause an elevated immune system response which kills nerve tissue, SF-1019 reduced the activity of the immune system and allows a body to rebuild itself.

Michelle Longo O'Donnell invited McClain Sr. to the Texas Holistic Clinic in 2008, after she had observed the positive effects of SF-1019 on multiple sclerosis patients and after she had traveled to Utah to consult with Dr. Mitchell Melling, who had made similar observations. . (McClain Stmt. ¶¶16, 17). Ms. O'Donnell became excited and enthusiastic about the prospects of SF-109 as an alternative therapy. . (McClain Stmt. ¶15).

McClain Sr. had a prior relationship with Ms. O'Donnell, who had treated and provided hospice services to his first wife. . (McClain Stmt. ¶17). Ms. O'Donnell, who was aware of McClain Sr.'s involvement with SF-1019 through her relationship with him, had extolled the value of SF-1019 to her clinic's patients and championed Immunosyn's efforts to bring this product into the marketplace. . (McClain Stmt. ¶18). Her invitation to McClain Sr. was accompanied by her request that he offer to sell Immunosyn shares that he controlled at a discounted price directly to patients at her clinic.

When McClain Sr. spoke with the clinic's patients in 2008, Argyll Biotechnologies was actively working with Drs. Ericsson and Melling to resolve the issues that had been raised by the FDA in response to the IND applications submitted by those doctors. . (McClain Stmt. ¶4, 11). McClain Sr. referred to the many pre-clinical experimental uses of SF-109 that had been administered by physicians in Europe and North America, including Dr. David Maizels in England and Germany, and Drs. Arthur Ericsson, Mitchell Melling, Kenneth Willeford and Frank Morales in North America. . (McClain Stmt. ¶12). In particular, Dr. Maizels had experienced notable results in using SF-109 to treat multiple sclerosis patients in the United Kingdom and to treat patients suffering from complications due to diabetic neuropathy in Germany. McClain Sr. understood that Dr. Maizels had administered SFG-109 to patients in Europe on an "informed consent" basis, which allowed him to utilize SF-1019 although it had not yet been fully approved by European regulatory authorities. *Id.*

- 3 -

Argyll Biotechnologies had retained Drs. Ericsson and Willeford in the United States to assist with the Investigational New Drug ("IND") application that was submitted to the FDA in respect of the first broad human clinical use study to be conducted in the US for SF-1019. (McClain Stmt. ¶2). In 2005, Dr. Willeford and two of his collaborators had submitted an application for a United States Patent in respect of an SF-109 precursor. That application matured into a patent grant, and a US Patent for a specific class of peptides that formed the active ingredient in SF-1019 was issued under U.S. Patent No. 7,358,044 in March 2008. (McClain Stmt. ¶13). While this patent application was pending, The U.S. Defense Department contacted Jim Miceli, Argyll Biotechnologies' former CEO, and expressed an interest in procuring a quantity of SF-1019 for its own internal studies. Mr. Miceli relayed this information to McClain Sr. prior to McClain Sr.'s presentation at the Texas clinic.

McClain Sr.'s presentation at the clinic and in his videotaped presentation that was available on Immunosyn's website summarized all of this information, all of which is true and correct to the best of McClain Sr.'s knowledge. McClain Sr. has not delivered Immunosyn stock nor refunded any funds to investors from the clinic who purchased stock, yet he has at all times remained willing to doing so.

Neither McClain Sr. nor McClain Jr. ever represented to any third parties that the FDA had allowed the clinical studies that were proposed in Drs. Ericsson's and Melling's IND application to proceed. Their references to uses of SF-1019 were all references to pre-clinical experimental uses that had been administered by physicians who had procured separate approvals for those uses. They had knowledge of the "full clinical hold" responses that the FDA had issued with respect to the proposed human clinical trials, but the fact that trials were not proceeding was reported in Immunosyn's public filings.

## AUTHORITY AND STANDARDS FOR MOTIONS

The SEC's motion for partial summary judgment should not be granted against McClain Sr. and McClain Jr. in this case because the record, which must be viewed in a light most favorable to the Defendants, reveals multiple genuine issues

as to material facts, and indicates that the SEC is not entitled to judgment as a matter of law. *Fed.R.Civ.Pro.* 56(c). The SEC goes to great lengths to twist and manipulate the parties documents and statements so as to suggest that no material facts are at issue here, but as will be demonstrated in this memorandum, multiple genuine issues of material fact remain, all of which are more than "metaphysical doubts as to material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 US 574, 586 (1986). More to the point, the SEC ignores the accepted standard that a genuine issue of material fact will exist when "the evidence is such that a reasonable jury could return a verdict for the non-moving party". *Anderson v. Liberty Lobby, Inc.,* 477 US 242, 248 (1986); *Insolia v. Philip Morris, Inc.,* 216 F.3d 596, 599 (7th Cir. 2000). This Court must specifically view the entire record as a whole (rather than the bits and pieces of the record relied upon by the SEC) in a light most favorable to McClain Sr. and McClain Jr., and must draw all reasonable inferences that favor them in rendering its decision on the SEC's motion. *Anderson*, 477 US at 255; *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir. 2000).

**ARGUMENT**

I.   **The SEC Has Failed to Demonstrate that McClain Sr. Engaged in a Fraudulent Scheme and That He Made Material Misrepresentations**

When viewed in a light most favorable to McClain Sr., as required by the standard for reviewing a summary judgment motion against him, the evidence reveals that McClain Sr. made no material misrepresentations that would validate a finding that he violated either Section 17(a) of the Securities Act or Section 10(b) of the Exchange Act. Specifically, when placed into their full and proper context, the facts reveal that McClain Sr. made no untrue statements or material omissions, either intentionally or negligently, and that his actions and statements were made with absolutely no intent to deceive or mislead his audience.

McClain Sr. does not disagree with the SEC's summary of the law as it applies to Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act. Rather, McClain Sr. vehemently refutes SEC's skewing of evidence and testimony to show

- 5 -

that McClain Sr. made untrue statements or material omissions and, where required by the applicable legal standard, that he acted with an intent to deceive anyone.

### A. McClain Sr. Did Not Defraud Investors

In 2008, McClain Sr. offered to sell shares of Immunosyn stock that he controlled to investors at the Texas Holistic Health Clinic at a below-market price. Shortly after making this offer, market forces drove down Immunosyn's stock price below the already-discounted price that McClain Sr. agreed to accept. After he deferred delivering the shares, the SEC opened its investigation into Immunosyn and active trading of the company's stock went into a hiatus. The stock is no longer actively traded.

McClain Sr.'s offer to return funds to those investors who request a refund, which offer originated before this litigation commenced, has remained open and pending throughout the course of this litigation, yet the litigation itself has complicated the mechanics and administration of that refund. A number of investors who have spoken with McClain Sr. have expressed their interest in supporting the continued development of SF-1019. The SEC's characterization of McClain Sr. as a liar and a thief, and the SEC's raising the specter of a wholly unrelated criminal indictment without elucidating the facts behind that indictment, serves no purpose beyond distracting the Court's focus from the fact that McClain Sr.'s consistent attempts and desires to fully and finally resolve his share sales with clinic members.

The cases cited by the SEC all reflect fact patterns that are distinct and separate from McClain Sr.'s situation. None of the individual defendants in *SEC v. Jakubowski,* 150 F.3d 675 (7th Cir. 1998), *SEC v. Gagnon*, 2012 WEL 994892 (E.D.Mich., Mar. 22, 2012), or *SEC v. Koester*, 2014 WL 1342809 (S.D.Ind. Apr. 3, 2014) offered to refund fees or attempted to maintain contact with active investors. McClain Sr. has had and continues to have every intention either to repatriate funds or deliver Immunosyn stock. Deciding this issue on the basis of summary judgment would ignore the facts behind McClain Sr.'s intention and would deny him the opportunity to have his motives and intentions to be heard by a trier of fact.

### B. McClain Did Not Make False Statements Regarding Approvals for and Purchases of SF-1019

In its zeal to tag McClain Sr. as a liar and thief, the SEC again mischaracterizes McClain Sr.'s statements regarding the uses, approvals and prospective purchases of SF-1019. In his statements to clinic members, McClain Sr. represented that SF-1019 had been used pursuant to compassionate use or informed consent waivers that had been authorized by various investigational review board's ("IRB's") that were affiliated by the researchers who were administering the drug to patients. The SEC twists this representation and improperly connects it to the full clinical holds that had been issued by the FDA in response to Drs. Ericsson's and Melling's IND applications.

First, there is no question that SF-1019 had actually been used as an experimental therapeutic treatment for multiple sclerosis and other disease pathologies by physicians in the United States, Mexico, and Europe. Whether that use had been allowed by the FDA, by one or more IRB's, or by some other regulatory body is an open question that the SEC has seen fit to ignore.

Second, there is no suggestion, either in McClain Sr.'s audiotaped remarks or otherwise that any of these uses were done under the aegis of one or more human clinical trials that were "authorized" by the FDA[1]. The FDA's "full clinical hold" determination on the human clinical trials that were proposed by Drs. Ericsson and Melling is separate from the prior experimental treatments conducted by multiple physicians.

Third, McClain Sr.'s representations as to the Defense Department's interest in SF-1019 were premised on that Department's inquiries regarding the drug, which followed the publication and subsequent issuance of Dr. Willeford's patent application. Jim Miceli, Argyll Biotechnologies' former CEO, informed McClain Sr.

---

[1] With its repeated focus on the FDA'S issuance of its "full clinical hold" notices, the SEC implies that the FDA effectively authorizes human clinical trials of experimental drugs. More accurately, the clinical trial approval process requires an investigator to submit an IND to the FDA, and if the FDA does not respond within thirty days of the submission date, the trial may proceed. Thus the FDA does not issue a written or other authorization for clinical trials to proceed.

that the Defense Department had contacted Argyll Biotechnologies and had expressed s strong interest in purchasing a substantial quantity of the drug for its own testing purposes. In view of other strong interest that had been expressed in SF-109 from various sources, McClain Sr. accepted this information as true.

Thus none of McClain Sr.'s statements were "blatantly false", as the SEC would have this Court believe, and McClain Sr. had a reasonable basis to believe that all of those statements were true. In context, none of these statements can form a basis for summary judgment against McClain Sr.

## II. The SEC Has Failed to Demonstrate that Either of McClain Sr. or McClain Jr. Engaged in Insider Trading

The SEC's sole rationale for its insider trading claim against the Defendants is that they were corporate insiders who sold stock while in possession of material non-public information. Contrary to the SEC's summary assertion, the SEC has not shown that the purported "non-public" information was material to investors. More significantly, the import of that information, *i.e.* the "full clinical hold" which delayed the implementation of human clinical trials of SF-1019, was disclosed to the public in Immunosyn's public filings at the time that McClain Sr. and McClain Jr. sold Immunosyn stock. Further, the SEC has not and cannot point to any evidence or testimony that McClain Sr. and McClain Jr. used any non-public information as the basis for making their decision to sell that stock.

The only evidence that the SEC has posited as to the materiality of the FDA's "full clinical hold" determination is a single declaration from one investor, who in hindsight states that she wouldn't have purchased Immunosyn stock if she had been told about the full clinical hold. This single data point is insufficient to prove materiality. The SEC's own citation of the standard for materiality in this context bears repeating: to qualify as a material non-disclosure, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the '*total mix'* of information made available". *Basic, Inc. v. Levinson,* 485 US 224, 231-232 (1988) (emphasis added). Determining

whether something is material "requires delicate assessments of the inferences a "reasonable shareholder" would draw from a given set of facts and the significance of the inferences to him, and these assessments are peculiarly ones for the trier of fact." *TSC Industries, Inc. v. Northway, Inc.,* 426 US 438, 450 (1976).

      The SEC also argues that Immunosyn did not disclose the FDA's "full clinical hold" assessment of the IND's for SF-1019; this argument reflects the SEC's wholesale misunderstanding of the FDA's investigational new drug application process. Investigators who wish to use experimental drugs or medical devices in human clinical trials submit an IND to the FDA. If the FDA issues no response within thirty days of the submission date, the clinical trials can proceed. Alternately, as with the two IND's submitted for human clinical trials for SF-1019, the FDA can within that same thirty-day period impose a partial or full hold on the application. The investigator can then revise or amend the IND to address the FDA's concerns.

      Although Immunosyn did not use the exact words, "full clinical hold" in its public filings, Immunosyn contemporaneously disclosed and reported that the proposed clinical trials were not going forward at the respective times of those filings. Argyll Biotechnologies continued to work to address the FDA's concerns in anticipation of the commencement of human clinical trials and McClain Sr. and McCain Jr. were at all times forthright in their statements that IND applications had been submitted to the FDA but that clinical trials had not commenced. The hypothetical reasonable investor therefore had a full universe of facts and information available to him, including but the actual net effect of the FDA's full clinical hold assessment, namely, that human clinical trials had not yet begun.

      Lastly, and assuming *arguendo* that McClain Sr. and McClain Jr. knew that human clinical trials were not proceeding but that other investors did not possess this knowledge and that this was a material omission, the SEC has made no causal connection between the Defendants' possession of this presumed "non-public" information and their sales of Immunosyn stock. Although the standard is not fully settled, many Courts require the SEC to show that a trader actually used non-public information in making a decision to trade. *See US v. Smith,* 155 F.3d 1051 (9th Cir. 1998); *SEC v. Adler*, 137 F.3d 1325 (11th Cir. 1998). Here, the SEC has stated only

that McClain Sr. and McClain Jr. came into possession of "material non-public information" (and, as set forth above, there is a substantial question as to whether that information was "material" or "non-public"), and that they sold Immunosyn stock. The SEC provides no evidence of when they came into possession of this information nor of how soon thereafter they sold Immunosyn stock. Without some causal or even a temporal connection, the SEC's argument as to insider trading fails and its motion for partial summary judgment on this issue must be denied.

## CONCLUSION

For the reasons stated herein, Defendants Douglas A. McClain Sr. and Douglas A. McClain Jr. respectfully request that this Court deny the SEC's Motion for Summary Judgment against them as to Counts I and II of the SEC's Complaint.

Dated: May 16, 2014

    Respectfully submitted,

    DOUGLAS A. MCCLAIN, SR., and
    DOUGLAS A. MCCLAIN, JR.

    By: /s/ John A. Franczyk

    John A. Franczyk
    Franczyk, LLC

    2254 Thistle Road
    Glenview, IL 60026
    Voice: 312.914.3112
    Fax: 847.510.0626
    Email: john@franczykllc.com

**CERTIFICATE OF SERVICE**

       I, John A. Franczyk, hereby certify that on May 16, 2014, I caused a copy of the foregoing **DEFENDANTS, DOUGLAS A. MCCLAIN, SR.'S AND DOUGLAS A. MCCLAIN, JR.'S MEMORANDUM OF LAW IN RESPONSE TO THE SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS THE THOSE DEFENDANTS** to be served upon the following counsel by the Court's CM/ECF system:

Corey Rubenstein, Esq.
Mark Rotert, Esq.
*Attorneys for Defendant, Stephen Ferrone*

Eric M. Phillips
Tracy W. Lo
*Attorneys for Plaintiff, Securities and Exchange Commission*

                                                    /s/ John A. Franczyk