UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) Plaintiff, ) ) v. ) ) STEPHEN D. FERRONE, DOUGLAS A. ) MCCLAIN, JR., DOUGLAS A. MCCLAIN, SR., ) JAMES T. MICELI, IMMUNOSYN ) CORPORATION, ARGYLL ) BIOTECHNOLOGIES, LLC, ARGYLL ) EQUITIES, LLC, AND PADMORE ) HOLDINGS, LTD., ) ) Defendants. ) ) | Civil Action No. 11-cv-5223<br><br>HON. ELAINE E. BUCKLO |

**THE SECURITIES AND EXCHANGE COMMISSION'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO
DEFENDANT DOUGLAS MCCLAIN SR. AND ITS MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT AS TO DEFENDANT DOUGLAS MCCLAIN JR.</u>**

Eric M. Phillips
Tracy W. Lo
U.S. SECURITIES AND EXCHANGE
COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390
Fax: (312) 353-7398

*Attorneys for Plaintiff United States Securities
and Exchange Commission*

## **INTRODUCTION**

Defendant Douglas McClain Sr.'s ("McClain Sr.") and Douglas McClain Jr.'s ("McClain Jr.") (collectively, the "McClains") response to the Securities and Exchange Commission's ("SEC") motion for summary judgment shows why the Court should grant the SEC's motion. Rather than meet the SEC's assertions head-on, the McClains do what they do best: dissemble, distract, and distort. But the McClains do not even try to dispute a single well-supported fact established by the SEC in its summary judgment papers, which means that the McClains have admitted every single one of these facts.

The McClains' response establishes that the core facts relating to the SEC's summary judgment motion are undisputed. It is undisputed that McClain Sr. took investors' money and never gave them the Immunosyn shares he promised, that he never repaid these investors, that McClain Sr.'s statements about FDA approvals were false, that McClain Sr.'s statement that the Defense Department had purchased 600,000 vials of SF-1019 was false, and that McClain Sr. and McClain Jr. sold Immunosyn stock based on material, non-public information.

The SEC disputes some of the additional "facts" that the McClains set forth in their summary judgment response, supported exclusively by a Declaration from McClain Sr. But these additional purported facts are immaterial in any event. They are immaterial because the undisputed evidence now establishes that McClain Sr. lied to and defrauded investors and that McClain Sr. and McClain Jr. engaged in insider trading. The McClains' response actually supports the granting of summary judgment against them.

## I. The McClains Have Admitted Every Well-Supported Fact in the SEC's Summary Judgment Papers

The McClains' utter failure to respond to the SEC' Statement of Undisputed Material Facts means that the McClains now have admitted to all of the SEC's well-supported facts in support of summary judgment.

Under Local Rule 56.1(a)(3), a party moving for summary judgment is required to provide a statement of material facts as to which the moving party contends there is no genuine issue. *Cracco v. Vitran Exp., Inc.* 559 F.3d 625, 632 (7th Cir. 2009). The SEC filed this Rule 56.1(a)(3) statement, with supporting materials, on April 24, 2014. (*See* Doc. Nos. 73-76) The SEC's Local Rule 56.1(a)(3) statement contained 70 well-supported paragraphs of undisputed material facts.

Under Local Rule 56.1(b)(3)(B), the opposing party is required to file a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. *Cracco*, 559 F.3d at 632 (citing N.D. Ill. R. 56(b)(3)(B)). The McClains, represented by counsel, failed to file a response to the SEC's Local Rule 56.1 Statement.

"The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.'" *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)).

As one district court recently stated regarding a party's failure to comply with Local Rule 56.1:

> It is not too much to expect counsel to comply with straightforward procedures, clearly outlined in the rules; the alternative is to require courts to devote more time and resources to ferreting out factual information with which the parties are far more familiar, thereby delaying the resolution of not only the pending motion in this case, but also the pending motions in all of the other cases before the Court. These rules are not arbitrary; they are here for a reason: to improve the quality of justice for all litigants. If attorneys are permitted to ignore them, everyone will pay the price.

*Howard v. Value City Furniture*, 2014 WL 1227559 at *2 (N.D. Ill. Mar. 25, 2014).

The failure of a nonmoving party to abide by Local Rule 56.1's requirements carries significant consequences. *Alrazzaq v. Walgreen Co.*, 2014 WL 1202967 at *1 (N.D. Ill. Mar. 21, 2014). "'All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.'" *Id.* (quoting Local Rule 56.1(b)(3)). "'This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire.'" *Id.* (quoting *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000)).

Where, as here, the nonmoving party has failed to comply with Local Rule 56.1's requirement that the opposing party respond to the moving party's statement of undisputed material facts, including references to supporting materials relied upon, courts in this District have deemed all well-supported facts in the moving party's statement to be admitted by the opposing party. *See, e.g., Howard*, 2014 WL 1227559 at * 2; *Aksoy v. Chicago Police Sergeant Moreno*, 2014 WL 949902 at * 1 (N.D. Ill. Mar. 7, 2014); *Holshouser v. Abbott Labs.*, 2014 WL 901798 at *1 (N.D. Ill. Feb. 27, 2014); *Ekufu v. Iberia Airlines and Milton Uribe*, 2014 WL 87502 at *1 (N.D. Ill. Jan. 9, 2014) (Bucklo, J.); *Neish v. City of Chicago*, 338 F. Supp. 2d 927, 929 (N.D. Ill. 2004) (Bucklo, J.) This Court should do so here.

The only sworn testimony the McClains provide in response to the SEC's moving papers is McClain Sr.'s Declaration. But the Declaration fails to address any of the facts that the SEC

3

established in its summary judgment papers. Instead, McClain Sr.'s Declaration contains a largely irrelevant narrative about SF-1019 and McClain's involvement with it. To the extent McClain Sr.'s Declaration has any relevance, it serves to confirm the facts the SEC already has established regarding FDA submissions for SF-1019 and the FDA's full clinical holds in response to those submissions. Thus, not only have the McClains failed to observe the formalities of Local Rule 56.1, but they also have failed to comply with the rule's substantive requirements of providing evidence to rebut the moving party's well-supported facts.

## II. McClain Sr. Has Admitted that He Essentially Stole Investors' Money And Failed to Deliver Immunosyn Shares

The SEC's moving papers, which included Declarations from five different investor victims, established that McClain Sr. represented to investors that when they gave him their money, he would sell them his Immunosyn shares. After investors sent McClain Sr. their money – including one investor who sent over $200,000 to McClain Sr. – McClain Sr. never delivered Immunosyn shares to these investors. McClain Sr. made repeated promises that delivery of the shares would occur and made repeated excuses about why it had not occurred. McClain Sr. then told investors he would simply return their money, but this never happened either.

McClain Sr. does not dispute any of these facts. Indeed, in the only paragraph of McClain Sr.'s Declaration devoted to his stock sales, he confirms that investors "expressed an interest in purchasing shares of Immunosyn stock from me," that the investors then "forwarded payment for the shares," that he "subsequently offered to refund the purchase funds for shares to any purchasers who were so interested," and that "I remain willing to refund these funds." (McClain Sr. Decl., Ex. 2 to Doc. No. 88, at ¶ 26) McClain Sr. does not offer any explanation about why he failed to deliver Immunosyn shares, why he repeatedly lied to investors by telling them delivery of the shares was imminent, why he has not repaid investors, or why he repeatedly

4

lied to investors by telling them repayment was imminent. By discussing his stock sales in his Declaration without refuting any of the key facts establishing the SEC's fraud allegations against him surrounding these stock sales, McClain Sr. has confirmed that the entry of summary judgment against him is appropriate.

In the McClains' response brief, McClain Sr. asserts that his "offer to return funds to those investors who request a refund, which offer originated before this litigation commenced, has remained open and pending throughout the course of this litigation, yet the litigation itself has complicated the mechanics and administration of that refund." (McClains Br. at 6) In addition to this assertion's vagueness and utter lack of evidentiary support, this assertion is also belied by the chronology of events. While McClain Sr.'s offers of refunds and investors' acceptance of those offers occurred in early 2009 (*see, e.g.,* Click Decl., Doc. No. 81, at ¶ 8; Thomas Decl., Doc. No. 80, at ¶¶ 8-9), the SEC did not file this lawsuit until August 2011. McClain Sr. fails to explain why for over two years before this lawsuit was filed, he continued to lie to investors about the return of their investment.

McClain Sr. protests that "[d]eciding this issue on the basis of summary judgment would ignore the facts behind McClain Sr.'s intention and would deny him the opportunity to have his motives and intentions to be heard by a trier of fact." (McClains Br. at 6) But "a motion for summary judgment 'requires the responding part to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit.'" *Smith v. Hallberg*, 2012 WL 4461704 at \*10 (N.D. Ill. Sept. 25, 2012) (Bucklo, J.) (quoting *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009)). On summary judgment, McClain Sr. has failed to put up any competent, relevant evidence of his "motives and intentions" or of other relevant facts. Therefore, summary judgment against him is proper.

5

Indeed, given that McClain Sr. is "willing to refund" investors' money, and that he not has repaid investors for six years, McClain Sr. should have already consented to the monetary relief that the SEC is seeking. This monetary relief includes an order requiring McClain Sr. to disgorge the money he took from investors and imposing a penalty on him for his misconduct. Instead, McClain Sr. is forcing the Court to decide his fate where the key facts surrounding his theft of investors' money are not in dispute.

### III.  McClain Sr. Has Not Refuted the Evidence that He Made Knowing Misstatements

In addition to confirming that he essentially stole investors' money, McClain Sr. also does not refute the SEC's evidence that McClain Sr. made knowing misrepresentations in the offer and sale of Immunosyn shares. The SEC has established, with audiotaped and videotaped evidence, that McClain Sr. falsely represented that in the United States, "Phase 2" clinical trials for SF-1019 were getting ready to start in about 60 days, that the FDA had given Immunosyn or Argyll Biotech permission to treat humans with SF-1019 through "compassionate waivers," that the FDA would issue approval for the drug within about a year after Phase II clinical trials were completed. The SEC has also established that McClain Sr. falsely represented that the U.S. Department of Defense had purchased 600,000 vials of SF-1019.

In McClain Sr.'s response, he does not even attempt to claim that these statements were true or that he had a valid reason to believe they were true. As to FDA approvals, McClain Sr.'s response is devoid of any assertions that the FDA ever issued approvals for SF-1019, that there was any reason for McClain Sr. to believe that the FDA had given any approvals for SF-1019, or that the FDA would give such approvals. Instead, in McClain Sr.'s Declaration, he confirms that the FDA imposed clinical holds on the two applications for FDA approval of SF-1019. (McClain Sr. Decl. at ¶¶ 12, 15)

McClain Sr. distorts the record by claiming that "[i]n his statements to clinic members, McClain Sr. represented that SF-1019 had been used pursuant to compassionate use or informed consent waivers that had been authorized by various institutional review boards ('IRB's') that were affiliated by the researchers who were administering the drug to patients." (McClains Br. at 7) He also falsely claims that "there is no suggestion, either in McClain Sr.'s audiotaped remarks or otherwise, that any of these uses were done under the aegis of one or more hum clinical trials that were 'authorized' by the FDA." (*Id.*) To the contrary, in McClain Sr.'s audiotaped presentation, as reflected by pages 5-6 of the transcript (SEC Ex. 10, Doc. No. 75), he explicitly stated that compassionate use waivers had been issued by the FDA. By contrast, in his presentation, McClain Sr. made no mention in the presentation of institutional review boards or "IRBs". Language counts. No matter how hard McClain Sr. tries to re-write the record, the evidence is clear that McClain Sr. made explicit, false representations about FDA approvals.

While McClain Sr. asserts in his Declaration that he understood that two doctors' (including the criminal Dr. Francisco Morales) purported "uses of SF-1019 with human patients were done pursuant to compassionate use exceptions and authorities granted by the medical institutions with which they were affiliated" (McClain Sr. Decl. at ¶ 10), McClain Sr.'s misstatements were not about medical institutions. Rather, as the audiotaped and videotaped evidence establishes, he made misstatements related to FDA approvals, including specific false statements that the FDA had approved SF-1019 in several instances for so-called "compassionate use." Because McClain Sr. does not even attempt to defend his statements about FDA approval, summary judgment is appropriate against him based on these claims.

Tellingly, McClain Sr.'s response and his Declaration also carefully avoid directly confronting McClain Sr.'s own false words about the U.S. Department of Defense's supposed

7

purchase of SF-1019. As reflected by page 16 of the transcript of McClain Sr.'s July 2008 audiotaped presentation, McClain Sr. falsely told prospective investors that "[t]he Defense Department bought 600,000 vials from us last year" to fight the bird flu. (SEC Ex. 10) McClain Sr. does not claim that this statement was true or that he had a reason to believe it was true.

Instead, McClain Sr. asserts that his now-deceased co-Defendant James Miceli "informed McClain Sr. that the Defense Department had contacted Argyll Biotechnologies and had expressed s (sic) strong interest in purchasing a substantial quantity of the drug for its own testing purposes." (McClains Br. at 7-8; McClain Sr. Decl. at ¶¶ 24-25) Even crediting McClain Sr.'s assertion about what a now-deceased person told him, there is a world of difference between what McClain Sr. claims he was told, which is that the Defense Department had a "strong interest" in purchasing the drug, versus what he told prospective investors, which is that the Defense Department had in fact purchased 600,000 vials. To muddle this distinction, McClain Sr. again resorts to distorting the record, claiming that he merely reported "negotiations" with the Department of Defense during his audiotaped presentation. (McClain Sr. Decl. ¶ 25) Unlike McClain Sr., however, the audiotape does not lie – McClain Sr. falsely told the audience of prospective investors about a supposed huge purchase by the Defense Department, not mere "negotiations."

**IV.     The McClains Have Offered No Evidence to Rebut That They Engaged in Insider Trading**

    **A.     The SEC Has Satisfied Its Burden to Show That the McClains Traded on Material, Nonpublic Information**

The McClains' response offers some rhetoric, but zero actual evidence, to rebut the evidence established by the SEC in its summary judgment papers that McClain Sr. and McClain Jr. engaged in insider trading under the classical insider trading theory. The McClains ignore the

bedrock summary judgment principle that "[i]f a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (emphasis and quotation marks omitted). The McClains have not even made an effort to meet their summary judgment burden on the SEC's insider trading claims.

Notably, despite McClain Sr. submitting a 26-paragraph Declaration, neither McClain Sr. nor McClain Jr. deny trading on material non-public information. McClain Sr. confirms that he sold stock and that he knew of the FDA's 2007 clinical hold while doing so. (McClain Decl. ¶¶ 12, 15, 26) McClain Jr., meanwhile, neither has submitted a Declaration nor provided any evidence rebutting the SEC's evidence of his insider trading.

The McClains ignore summary judgment procedure in claiming that the SEC has failed to establish a causal connection between the McClains' knowledge of the clinical holds and their trading in Immunosyn stock. (McClains Br. at 9) On summary judgment, the SEC can satisfy its burden of establishing a causal connection by showing that the defendant who traded was in possession of material nonpublic information. *See SEC v. Bauer*, 723 F.3d 758, 776-77 (7th Cir. 2013). This showing creates an inference that the defendant traded on the basis of that information. *Id.* After the SEC's evidence has created an inference of insider trading, the defendant then has the burden of coming forth with credible evidence of legitimate purposes for the trading. *Id.*

Here, after the SEC has shown that the McClains traded in Immunosyn stock while in possession of the nonpublic information that the FDA had issued clinical holds on SF-1019, creating an inference of insider trading, the McClains have not come forth with any evidence

9

whatsoever to rebut this inference.  In their summary judgment response, the McClains have not submitted competent evidence providing any basis for their trading in Immunosyn stock other than their knowledge of the FDA's clinical holds.

The McClains' failure to offer any evidence of legitimate purposes of their trading contrasts starkly with the showing made by the defendant in the recent Seventh Circuit *Bauer* case.  There, the defendant explained in sworn testimony that she sold company stock because she was concerned about price volatility in the stock and wanted her money invested in more stable, liquid assets.  *Id.* at 775-76.  The defendant also offered evidence that "she cashed out in anticipation of a job change and relocation to San Francisco."  *Id.* at 777.  Here, in comparison, the only competent evidence offered by the McClains on the subject of the McClains' trading is the Declaration of McClain Sr., which offers nothing to explain why the McClains sold Immunosyn stock when they did.

Because the McClains have offered no evidence to rebut the inference of insider trading established by the SEC, summary judgment is appropriate on the SEC's claims that the McClains traded based on material, nonpublic information.

### B. The SEC Has Shown That the FDA's Clinical Holds Were Material

The McClains also miss the mark in arguing that the SEC has failed to establish the materiality of the FDA's clinical holds.  (McClains Br. at 8-9)  The question for the materiality analysis is whether a misrepresentation or an omitted fact "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available*.*"  *TSC Industries, Inc. v. Northway, Inc.*, 96 S.Ct. 2126, 2132 (1976).  By examining the total mix of information "made available," the materiality analysis focuses on the information the defendant knew and/or made available.  For example, in *Matrixx Initiatives, Inc. v.*

10

*Siracusano*, 131 S.Ct. 1309 (2011), the Supreme Court examined whether plaintiffs in a private action had adequately pled materiality based on the failure of a drug company, Matrixx Initiatives, to disclose reports of adverse events associated with a product called Zicam. In assessing the materiality on the non-disclosures by Matrixx in the context of the total mix of information made available, the Court focused on Matrixx's public disclosures and what Matrixx knew, stating:

> It is substantially likely that a reasonable investor would have viewed [the] information as "'having significantly altered the 'total mix' of information made available.'" Matrixx told the market that revenues were going to rise 50 and then 80 percent. Assuming the complaint's allegations to be true, however, Matrixx had information indicating a significant risk to its leading revenue-generating product. Matrixx also stated that reports indicating that Zicam caused anosmia were "'completely unfounded and misleading'" and that "'the safety and efficacy of zinc glutonate for the treatment of symptoms related to the common cold have been well established.'" Importantly, however, Matrixx had evidence of a biological link between Zicam's key ingredient and anosmia, and it had not concluded any studies of its own to disprove that link. In fact, as Matrixx later revealed, the scientific evidence at that time was "'insufficient . . . to determine if zinc gluconate, when used as recommended, affects a person's ability to smell.'"

*Id.* at 1323 (record and case citations omitted).

In its summary judgment papers, the SEC showed that in McClain Sr.'s July 2008 presentation to prospective Texas clinic investors, McClain Sr. claimed that in the United States, "Phase 2" clinical trials for SF-1019 were getting ready to start in about 60 days, that the FDA had issued compassionate use waivers for SF-1019, and that the FDA would issue approval for the drug within about a year after Phase 2 clinical trials were completed. The SEC also showed that in a video presentation posted on Immunosyn's website, McClain Sr. stated that "[c]ompassionate use waivers have been issued by the institutional review board of the FDA in Houston, Texas for the use of SF-1019," and that "preparations for clinical trials are underway in

11

the United States and Europe." The SEC provided the Court with sworn testimony about the materiality of the clinical holds from the largest Texas clinic investor, Rosella Saltarelli, who gave McClain Sr. over $200,000 of her own money for Immunosyn stock. In its reply papers, the SEC now has provided the Court with additional sworn testimony of another investor, Dr. Mitchell Melling, who testified in his deposition about the materiality of the clinical holds.

This evidence is sufficient for the SEC to carry its burden on summary judgment regarding materiality. The Seventh Circuit's recent opinion in *Bauer* again is instructive. In *Bauer*, the district court found that the defendant was in possession of seven categories of nonpublic information which indicated that a municipal bond fund was at risk of insolvency. *Id.* at 772-73. The Seventh Circuit ruled that much of the information, standing alone, would be so obviously important to an investor that no reasonable minds could differ on the question of materiality. *Id.* at 773 (citing *TSC Indus.*, 96 S.Ct. 2126 at 2133). However, the Seventh Circuit held that the district court, in assessing materiality, also should have weighed the significance of publicly available information regarding the fund's poor performance. This publicly available information included "fairly substantial negative news coverage that touched upon many of the categories of information that the district court found to be material as a matter of law." *Id.* at 773.

Here, no reasonable minds could differ as to the importance of the FDA's clinical holds. In the context of a United States drug company with one drug product, it obviously would have been important to an investor that the federal drug regulator, the FDA, had issued clinical holds. These clinical holds prevented clinical trials from going forward, which prevented any meaningful progress from being made towards FDA drug approval. The evidence is undisputed that the issues raised by the FDA in its clinical holds were serious and significant. Further, the

12

clinical holds obviously would have been important in the context of McClain Sr.'s and Immunosyn's statements that the FDA had issued "compassionate use" waivers for SF-1019, that preparations for clinical trials were underway, and that "Phase II" clinical trials would begin in the near future. The FDA's clinical holds meant that Phase I clinical trials were dead in the water, let alone Phase II or Phase III clinical trials.

Unlike the defendant in *Bauer*, the McClains have failed to explain what meaningful information in the public domain could have affected the obvious importance of the clinical holds to an investor in Immunosyn. The McClains continue to distort the evidence by asserting that "[a]lthough Immunosyn did not use the exact words, 'full clinical hold' in its public filings, Immunosyn contemporaneously disclosed and reported that the proposed clinical trials were not going forward at the respective times of those filings." (McClains Br. at 9) Unsurprisingly, the McClains do not cite to any record support for this assertion, because there is none.

To the contrary, Immunosyn's public filings stated that "Argyll Biotech is preparing to conduct clinical trials, develop manufacturing protocols, and, if possible, apply for regulatory approval of SF-1019's use," and "Argyll Biotech anticipates that it will commence clinical trials and studies of SF-1019 and prepare and submit all filings requires for regulatory approval . . . in the United States and in other countries that are targeted for distribution and sale of the product." (*See, e.g.,* SEC Ex. 12 at p. 4 of 78). This language hardly suggests that "the proposed clinical trials were not going forward," as the McClains wrongly assert.

As to the issue of a clinical hold, Immunosyn's public filings did in fact mention a clinical hold, but as an abstract possibility, not as a reality that had already occurred. In describing the FDA approval process generally, Immunosyn's public filings stated in pertinent part that "[i]f the FDA or its foreign equivalent raises questions about an IND within a certain

13

period of time after its submission, that regulatory body may impose a clinical hold, thereby delaying the initiation of the study. In such a case, the IND sponsor and the regulatory authority must resolve any outstanding scientific questions before clinical trials can begin." (*Id.* at p. 10 of 78, "Government Regulations.") By speaking about the concept of a clinical hold only in the abstract, and not disclosing the clinical holds that the FDA actually issued for SF-1019, Immunosyn's public filings misled investors. *See*, *e.g.*, *SEC v. Tecumseh Holdings*, 765 F. Supp. 2d 340, 350-57 (S.D.N.Y. 2011) (granting summary judgment to the SEC and holding that despite cautionary language in offering memoranda, the offering memoranda made materially misleading statements, including statements that NASD approval of an acquisition was "forthcoming," when in fact no such application for approval to the NASD had been submitted or was pending); *see also Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) ("Cautionary words about future risk cannot insulate from liability the failure to disclose that a risk has transpired.") (citation omitted).

    The SEC has satisfied its burden to show materiality through sworn investor testimony and through the contrast between the McClains' disclosures and what the McClains actually knew. Meanwhile, the McClains have offered nothing to rebut the SEC's materiality showing, other than to cite generic cautionary language that actually highlights the misleading and material nature of statements in Immunosyn's public filings. The Court should weigh the evidence the SEC has provided on materiality against the evidence – or lack thereof – offered by the McClains. The Court should then conclude that summary judgment is appropriate against these Defendants.

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in the SEC's April 24, 2014 moving papers, the SEC respectfully requests that the Court grant its motion for summary judgment as to Counts I and II against McClain Sr. and McClain Jr., and find that they committed the violations charged.

Date: May 29, 2014                                                  Respectfully submitted,

*/s/ Eric M. Phillips*
Eric M. Phillips
Tracy W. Lo
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390
Fax: (312) 353-7398

**CERTIFICATE OF SERVICE**

      I, Eric M. Phillips, hereby certify that, on May 29, 2014, I caused a copy of the foregoing **Securities and Exchange Commission's Reply Memorandum of Law in Support of its Motion for Summary Judgment as to Defendant Douglas McClain Sr. and for Partial Summary Judgment as to Defendant Douglas McClain Jr.** to be served upon the following counsel by the Court's CM/ECF system:

Corey Rubenstein, Esq.
Mark Rotert, Esq.
*Attorneys for Defendant Stephen Ferrone*

John Franczyk
*Attorneys for Defendants Douglas McClain Jr. and Douglas McClain, Sr.*

                                                                  */s/ Eric M. Phillips*