**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Securities and Exchange Commission, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11 CV 05223 (severed as to Ferrone) |
| | ) | |
| | ) | Hon. Jeffrey T. Gilbert |
| Stephen D. Ferrone, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE
TESTIMONY OF DRS. HAZELWOOD AND KANTER[1]**

The SEC plans to elicit testimony at trial from two witnesses, Carlton Hazelwood and Peter Kanter, neither of whom has ever heard of Stephen Ferrone, let alone had any contact with him. Neither witness can provide any relevant or admissible testimony concerning the charges against defendant. Instead, the SEC appears to intend for these witnesses to testify about their supposed quasi-expert views on the regulatory status of SF-1019 – without having disclosed them as expert witnesses – and/or about their communications with other individuals that have no relevance to defendant's alleged liability. Each witness should be excluded from trial under Fed.R.Evid. 401 and 403, and Fed.R.Civ.P. 26(a)(2).[2]

---

[1] Defendant's counsel has conferred with SEC counsel with respect to the subject-matter of this motion and has determined that the matter is actually in dispute.

[2] The SEC has advised that it intends to call Dr. Kantor as a live witness and to use deposition designations for Dr. Hazelwood. The minuscript versions of the depositions of Drs. Hazelwood and Kantor are attached, respectively, as Exhibits A and B. Defendant will provide full-page versions to the Court upon its request.

Dr. Carlton Hazelwood. Hazelwood retired in 1979 as a college physiology professor. (He obtained a Ph.D. in 1962; he is not a medical doctor.) *See* Dep., pp. 9-10, 15. From his 1979 retirement until 2007, he had no full-time employment, although for periods of time he was a substitute high school teacher, including teaching history and science. *Id.* at 112-115. In 2007, he became an adjunct professor at Lone Star College and has also taught at the American College of Acupuncture and Oriental Medicine. *Id.* at 114-115, 15-16.

During at least 2006 to 2008, he also acted as the unpaid chairman of the Houston-based Burzynski Research Institute's institutional review board (BRI-IRB). *Id.* at 21-24. The Burzynski Research Institute, owned and operated by Hazelwood's colleague Stanislaw Burzynski, conducts research on potential cancer treatments. *Id.* In 2007, Dr. Arthur Ericsson[3] – another of Hazelwood's colleagues – discussed with him the potential for the BRI-IRB to act as the institutional review board for SF-1019, which would be the first time ever that the BRI-IRB acted in that capacity for an institution other than the Burzynski Research Institute. *Id.* at 30-32. Hazelwood had never heard of Ferrone prior to his deposition. *Id.* at 54.

Hazelwood's testimony is irrelevant to the charges against Ferrone and/or is otherwise inadmissible expert testimony. In his deposition, the SEC repeatedly asked Hazelwood his opinions or understandings concerning the regulatory processes and requirements for new drug development, such as SF-1019. Hazelwood complied, consistently referring to his understanding of the Code of Federal Regulations and/or the FDA's policies and practices. For example, he testified about the responsibilities of the IRB under "the Code of Federal Regulations," *id.* at 29, the regulatory relationship between the IRB and the FDA, *id.* at 36-37, the requirements for

---

[3]Dr. Ericsson was one of the SF-1019 investigators for Argyll.

filing an investigational new drug application with the FDA, *id.* at 39, his understanding, which he "learned [from] the Code of Federal Regulations," concerning whether clinical trials may begin before an IND has been approved, *id.* at 41-42, and his understanding regarding the regulatory term "clinical hold" and that it would be a "breach of the Code of Federal Regulations" to allow studies to go forward in the face of a clinical hold, *id.* at 42-43.

Most significantly, Hazelwood was asked about his understanding of the FDA's role in approving a so-called "compassionate use" exemption for the use of investigational drugs. *See id.* at 78-85. In particular, he was asked his understanding about "whether a doctor may treat a patient with an investigational drug pursuant to the compassionate use exception while there is a clinical hold in place." *Id.* at 88-90.

With respect to SF-1019, Hazelwood testified at length concerning his interactions and correspondence with Dr. Ericsson and later with Doug McClain, Sr. Much of that testimony centered on the BRI-IRB's decision in August 2006[4] to allow Dr. Ericsson to treat certain of his patients in Texas with SF-1019 as if the drug had received a compassionate use exemption from the FDA, even though Hazelwood acknowledged knowing that the FDA had not granted such an exemption. *See, e.g., id., supra,* and at 96-97.

None of that proffered testimony is relevant to the SEC's securities fraud claims against defendant. Hazelwood's lack of any interaction or familiarity with defendant is undisputed. Nor is there any nexus between his testimony and Ferrone's involvement with any of Immunosyn's public statements regarding SF-1019. That testimony thus has no bearing on any element of any charge against Ferrone and must be excluded under Rule 401. Moreover, Hazelwood's

---

[4]This was more than a year before Ferrone became Immunosyn's CEO.

testimony amounts to a confession that he and Dr. Ericsson entered into a criminal conspiracy to allow patients to be treated with SF-1019 without the FDA's knowledge or approval. Such testimony would be so unfairly prejudicial to Ferrone, as well as be a waste of time and cause confusion of the issues, that it would be excludable under Rule 403 even if it had some arguable marginal relevance, which it does not.

Hazelwood's opinions and "understandings" concerning the Code of Federal Regulations in particular, and the new drug development process in general, are likewise irrelevant. Moreover, what amounts to expert testimony under Rule 702 – even assuming he were qualified to provide that testimony[5] – must be excluded because the SEC never designated him to do so under Fed.R.Civ.P. 26(a)(2). And even if he were a qualified and disclosed expert, his legal opinions concerning the scope and meaning of federal regulations or law would be inadmissible. *See* Defendant's *Daubert* Motion to Restrict Testimony of Dr. Peter Rheinstein, pp. 7-8.

Dr. Peter Kanter. Kanter is a veterinarian and pharmacologist by trade and education. *See* Exhibit B, pp. 5-10. For much of his career, he was involved in testing cancer treatments on animals. *Id.* In 2006, he was hired by a company called Iso-Tex, which in turn had been hired by Argyll, to conduct autopsies of test animals (rats and guinea pigs) that had been injected with SF-1019. *Id.* at 12-14. After completing the autopsies, Kanter drafted summaries of the findings, which he titled "rangefinding studies." *Id.* at 18-19, 52-53. He described a "rangefinding study" as a "preliminary study prior to a full toxicology study to get a feel for the

---

[5]Dr. Hazelwood's 1979 retirement and resulting 28-year absence from academia leading up to the events in this case would be more than enough reason to disqualify him as an expert, if it were even necessary to reach that question. The fact of his volunteer chairmanship of the board of his friend's research institute would make him no more qualified to testify on questions concerning the FDA's new drug development processes.

4

toxicities at whatever dose." *Id.* at 131. As with Hazelwood, Kanter had never heard of Ferrone prior to his deposition. *Id.* at 97-98.

The SEC plans to call Kanter for what appears to be two general purposes. First, around the same time that he was drafting the rangefinding studies for SF-1019, Kanter was sent a copy of the FDA's clinical hold letter by Dr. Willeford, another of the named investigators for Argyll. *Id.* at 36. Kanter explained that he was being considered for a short time as someone who could assist Argyll in responding to certain of the toxicological issues raised in the hold letter. *Id.* During that brief period of time, Kanter had correspondence and emails with Willeford and Argyll – but none with Ferrone – in which he expressed his opinions concerning the hold, SF-1019, and the animal tests. For example, upon reviewing the hold letter, Kanter emailed Willeford with his view that "there is a tremendous amount of work to be done here," and that the FDA's demands were all "reasonable." *Id.* at 38-39. In a subsequent email chain to Willeford and Argyll, he characterized the prior animal tests as being "without any potential scientific, medical, regulatory, or toxicological use," and referred to the clinical hold as reflecting a "failed IND." *Id.* at 58, 66-67. In another letter to Argyll, Kanter summarized his opinions concerning the issues raised by the FDA in hold letter. *Id.* at 76-80. In his deposition, Kanter was asked to expound upon each of those opinions.

None of those communications – nor Kanter's current descriptions of them – are relevant to the charges against Ferrone. There is no evidence that Kanter's expressed views to Argyll were communicated to Ferrone. And none of his other testimony has any relevance to Ferrone's conduct. His testimony thus should be excluded under Rules 401 and 403.

5

The SEC's second and equally improper goal in calling Kanter is to have him offer his supposed expert understanding concerning the FDA's regulatory requirements for new drug development. *See, e.g., id.* at 32-35 (explaining his understanding of the requirements of an IND application, the potential regulatory responses to an IND, the requirements for clinical trials, the effect of a clinical hold); 52 (his understanding of the federal regulations and statutes governing good laboratory practices for toxicology studies). As with Hazelwood, such testimony must be excluded under Fed.R.Civ.P. 26(a)(2) because he was never designated as an expert witness under Rule 702.

Dated: May 14, 2015                                          Respectfully submitted,

                                                            Stephen D. Ferrone

                                                            By:    */s/ Corey B. Rubenstein*
                                                                            One of His Attorneys

Mark L. Rotert
Corey B. Rubenstein
STETLER, DUFFY & ROTERT, LTD.
10 South LaSalle Street, Suite 2800
Chicago, Illinois 60603
Phone: 312-338-0200
Fax: 312-338-0070
mrotert@sdrlegal.com
cruben@sdrlegal.com

## CERTIFICATE OF SERVICE

  I, Corey B. Rubenstein, an attorney, hereby certify that I caused a true and correct copy of the foregoing **DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DRS. HAZELWOOD AND KANTER** to be filed and served via the Courts CM/ECF systems on May 14, 2015.

               */s/ Corey B. Rubenstein*
                Corey B. Rubenstein