IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Securities and Exchange Commission, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11 CV 05223 (severed as to Ferrone) |
| | ) |
| | ) Hon. Jeffrey T. Gilbert |
| Stephen D. Ferrone, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT FERRONE'S RESPONSE TO SEC'S**
**MOTION *IN LIMINE* No. 1 TO PRECLUDE "ADVICE OF COUNSEL" DEFENSE**

The SEC essentially asks this Court to grant it a directed verdict on the core issue in its fraud case: whether defendant acted with scienter. The SEC would have the Court forbid defendant from eliciting evidence about his good faith or arguing that he reasonably believed that the public filings and releases at issue in this case had been reviewed and approved by lawyers specializing in SEC work and consultants specializing in FDA matters. Hoping to justify this startling and unfair result, the SEC accuses the defendant of attempting "an end run" around the elements of the affirmative advice-of-counsel defense. *See* SEC Mot., p. 2.

But the SEC's motion conflates two distinct concepts of law: the defense of advice-of-counsel and the concept of good faith. As the court noted in *Howard v. S.E.C.,* 376 F. 3d 1136, 1147-48 (D.C. Cir. 2004), the SEC knows better than to confuse those distinct ideas. Defendant bears no burden to prove his good faith, it is the SEC's burden to disprove that he acted in good faith, and evidence relevant to a defendant's good faith always is admissible. Indeed, such a defense is not an affirmative defense at all, and the SEC's assertion that a defendant must satisfy the elements of the wholly separate advice-of-counsel defense before he can refer to the role

played by lawyers or consultants is a fiction that courts have rejected repeatedly. *Id.; see also S.E.C. v. Snyder,* 292 Fed.Appx. 391, 406 (5th Cir. 2008); *S.E.C. v. Prince,* 942 F. Supp. 2d 108, 138 (D.D.C. 2013). Equally troubling, the SEC wrongly suggests that defendant somehow defaulted on his ability to assert a good faith defense, but Ferrone did nothing more than he was ethically obliged to do: he declined to waive privileges held and asserted by another that he had no standing to waive.

The evidence at trial will show that Ferrone was not experienced or knowledgeable about the process by which new drugs are developed and approved. The evidence further will show that counsel, auditors, and FDA expert consultants were involved in the preparation and review of the public filings and releases at issue in this case. Defendant will testify that his actions and thoughts were influenced by the work of those professionals, all of whom were fully aware of the regulatory status of SF-1019, and the contemporaneous documents will corroborate his testimony. The SEC has alleged that Ferrone acted with scienter in misleading investors, but now it seeks to prevent Ferrone from eliciting probative and relevant facts bearing on his state of mind. That effort must be rejected.

### Evidence Concerning Defendant's Good Faith

In assessing the unjustifiable outcome the SEC requests, it is important to understand certain of the predicates for Ferrone's theory of defense:

Ferrone became Immunosyn's CEO in October 2007, about a year after its formation and succeeding a prior CEO. Immunosyn had no operations, one administrative contract worker named Todd Ollendorff, and only one asset: a contingent licence with Argyll Biotechnologies, Inc. to distribute SF-1019 if Argyll were ever able to obtain marketing approval from the FDA.

The principals of Argyll had established Immunosyn in 2006 for that purpose, and Argyll had filed an investigational new drug application with the FDA in late 2006 so it could begin human clinical trials on SF-1019. Within a month, however, the FDA informed Argyll that the IND was on hold, meaning no clinical trials should be conducted until certain additional information could be provided.

When Ferrone came to Immunosyn almost a year later, he recognized both his own lack of experience in that industry and the importance of ensuring all necessary due diligence by those who had that expertise. Ollendorff described in his deposition (in response to questions posed by the SEC, not by Ferrone's counsel) that Ferrone's routine with respect to SEC filings and press releases was to review the drafts, ask questions, and direct Ollendorff to ensure that SEC and FDA experts reviewed and approved them. *See* Exhibit 1, pp. 43-45; *see also id.* at 225, 248. Moreover, "[i]n each of the sections of the Ks or Qs in the filings, Mr. Ferrone would ask for an expert or an attorney or whoever to sign off on that section saying that it was accurate, or who he believed, who I believed was an expert." *Id.* at 137. Ferrone "wanted everything going to SEC counsel." *Id.* at 74. "Ferrone's goal was always to strive to be as truthful, accurate, and complete as possible when it came to dealing with the public," and he was a "stickler" for regulatory and compliance issues. *Id.* at 197, 237. The documentary evidence likewise establishes Ferrone's understanding and intention that all such filings and releases were vetted by counsel and the other outside professionals, and that they were fully apprised of all relevant facts.[1]

---

[1]*See, e.g.*, Exhibit 2 (in anticipation of his CEO position, Ferrone asks Ollendorff to ensure review of company website by the company's SEC and IP counsel and by Argyll's FDA consulting firm, Becker & Associates); Exhibit 3 (Ferrone emphasizes "the importance of having

Most significantly, the undisputed evidence shows that SEC counsel was fully informed about the so-called "clinical hold" of SF-1019 when they approved the language and disclosures in the company's public releases and filings. *See, e.g.,* Exhibit 1, Ollendorff Dep., p. 58 (providing the clinical hold letter to SEC counsel); Exhibit 11 Fougner Dep., pp. 77-78, 115-116 (discussions with outside counsel about clinical hold no later than February 2007); *see also* SEC Proposed Trial Exhs. 291 and 294, attached as Exhibits Q-T to Dkt. # 143 (email chains with Immunosyn's SEC counsel reflecting her knowledge of clinical hold by no later than October 2007).

The gravamen of the SEC's claims against Ferrone is that after he became CEO in October 2007, he was required to cause Immunosyn to disclose Argyll's 2006 IND filing and the FDA's January 2007 hold. *See* Comp., ¶¶ 7, 15, 28-36, 38, 41, 43. In fact, within a few weeks of Ferrone taking the job Immunosyn issued a press release: "Presently, Argyll Biotechnologies, LLC is responding to a request from the FDA for additional information in support of an Investigational New Drug (IND) Application for SF-1019." The SEC alleges that this press

---

Argyll's FDA consultant review all of the marketing materials by whomever created . . . for any potential conflicts with the company's regulatory and licensing proceedings in that area"); Exhibit 4 (Ferrone asks counsel to review the company website); Exhibit 5 (Ollendorff email, copying Ferrone, stating that language for brokers' convention has been approved by counsel, and "Per the SEC counsel, we would need to file your press release on Thursday"); Exhibit 6 (Ollendorff email with Ferrone stating that counsel will review interview script); Exhibit 7 (Ferrone email directing that a particular transaction "MUST BE REVIEWED BY SEC COUNSEL prior to its distribution. So the SEC here is obviously not just looking for accuracy but disclosure and compliance."); Exhibit 8 (Ferrone email emphasizing importance of counsel's role in connection with the 10Qs and 10Ks: "In any case we must rely on the final opinions of counsel and the auditors on this matter."; Exhibit 9 (Ollendorff email reflecting that SEC counsel is reviewing press release for the 10K); Exhibit 10 (email chain reflecting SEC counsel's review of 10K, and Ferrone directing Ollendorff to make "whatever changes [SEC counsel] suggested").

4

release misleadingly omitted to use the phrase "clinical hold" in describing the regulatory status of that IND. *Id.* at 41.

The undisputed evidence shows, however, that the language in that press release was authored by Argyll's FDA consulting firm, Becker & Associates, which was fully aware of the FDA's hold on the commencement of clinical trials. In response to a request to Dr. Becker that she provide language for a public disclosure by Immunosyn, she wrote: "You can say that we have been retained to provide the company with clinical and regulatory consulting services in support of the marketing authorization process by the US FDA. Presently, the Company is responding to a request from FDA for additional information in support of an Investigational New Drug Application." The press release issued by Immunosyn incorporated Dr. Becker's language verbatim. *Compare* Exhibit 12 *with* Exhibit 13. Immunosyn's SEC counsel also reviewed and approved that release. *See* Exhibit 14 (counsel's billing entry reflecting her review of the "Becker" press release); Exhibit 13 (Ollendorff email advising Ferrone, among others, that the press release has been approved).

In March 2008, Immunosyn filed the first 10K issued after Ferrone became CEO. In that SEC filing – reviewed, revised, and approved in whole by SEC counsel and Immunosyn's auditors, all of whom were aware of the FDA hold – Immunosyn disclosed that despite the submission of the IND, "Argyll Biotechnologies, LLC has not received regulatory approval of SF-1019's use in clinical trials." *See,* Immunosyn 2007 10-K, p. 16, at www.sec.gov/Archives/edgar/data/1375623/000095012008000115/form10-ksb.htm. Ferrone will testify that his belief about the sufficiency of these disclosures, as well as each of Immunosyn's other public statements, was rooted in his understanding that they had been

5

reviewed and approved by all of the outside professionals, including the lawyers, auditors, and FDA consultants.

## Argument

I. The Law on Good Faith/Lack of Scienter – as Distinguished from the Affirmative Defense of Advice of Counsel.

Ferrone is charged under the anti-fraud provisions of the Securities Exchange Act and SEC rules, namely Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5). In particular, he is charged with "knowingly or recklessly" having "employed devices, schemes or artifices to defraud," making "untrue statements," or engaging in acts that would "operate as a fraud or deceit" on another. *See* Comp., Count II. Scienter is an essential element of such a charge, and a defendant's good faith completely negates scienter for such fraud-based charges. *See, e.g., Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976) ("There is no indication that Congress intended anyone to be made liable for such practices unless he acted other than in good faith.")

The affirmative "advice of counsel" defense is distinguished the concept of good faith and lack of scienter. *See, e.g., Howard v. S.E.C.,* 376 F.3d 1136, 1147-48 (D.C.Cir. 2004) (court vacated judgment against the defendant – an officer of the company at issue – because SEC failed to prove lack of good faith based on work done by company counsel, rejecting SEC's arguments that the defendant did not raise the formal defense of "advice of counsel" and observing that the SEC had recognized the distinction in a case decided by the Commission itself); *S.E.C. v. Prince*, 942 F. Supp. 2d 108, 138 (D.D.C. 2013) (judgment on fraud claims for defendant – a corporate officer – because advice provided by corporate counsel to another officer

showed defendant's good faith and, therefore, lack of scienter; observing that good faith may be established regardless of whether "advice of counsel" exists as an independent defense).

The defense of good faith in such circumstances is not an affirmative defense, but simply a means of negating scienter, an essential element of the charges. *See S.E.C. v. Snyder*, 292 Fed.Appx. 391, 406 (5th Cir. 2008). The defendant does not have the burden of proving any "elements" of the defense; it is the SEC's burden to disprove defendant's good faith. *Id.* (reversing judgment for SEC where trial court improperly instructed the jury that the defendant must prove certain elements of good faith by a preponderance of the evidence). Moreover, an employee's good faith can be established based on his understanding of the work performed by corporate counsel, even when the employee did not directly communicate with a lawyer. *See Howard*, 376 F.3d at 1148-49 (good faith exists for employees who indirectly learn of a lawyer's involvement in the transaction from other employees). Indeed, the defendant's good faith does not need to be based on a lawyer's guidance at all – it may arise from the defendant's understanding that the transaction conforms to guidance from other professionals, such as accountants or compliance personnel. *See Snyder,* 292 Fed.Appx. at 406 (good faith at issue based on work by the accountants of defendant's employer).

II.     Evidence of the Informed Approval of Immunosyn's Public Statements by Corporate Counsel, Auditors, and FDA Consultants is Crucial and Proper Evidence Negating Scienter.

When a CEO of a public company signs or approves a public filing or statement on behalf of that company, and the SEC alleges a material omission, perhaps no fact could be more important to the question of the CEO's scienter than his understanding that outside professionals, who had all the material information themselves, were involved in the drafting and approval of

those disclosures. The SEC's suggestion that evidence of that fact would "mislead and confuse the jury" and be "prejudicial to the SEC's case" (SEC Mot., pp. 2, 10) belies its criticality and ignores the reality of corporate life. Indeed, there will be no evidence that Ferrone caused any fact that he believed to be material to be omitted from any public statement. To the contrary, as Ollendorff attests, "Steve never really cared if there was a negative impact [to Immunosyn] on any of this [from a disclosure]," and Ferrone never held back any material information from any of the outside professionals, including counsel. *See* Exhibit 1, pp. 113, 205.

Especially in an omission case, a corporate officer's understanding that other professionals have made good faith determinations about which facts were necessary to disclose, and what particular language to use in disclosing them, is crucial evidence directly relevant to his lack of scienter. *See, Howard, supra.* Without the specific testimony and documents corroborating defendant's state of mind, the jury would be misled into concluding that defendant drafted, reviewed, and approved those disclosures on his own, and that any apparent omissions were the result of defendant's total discretion uninformed by independent professionals. Such a conclusion would be beyond unfair, and any scienter-based judgment would be unalterably tainted.

As in *Howard,* the relevance of such evidence does not depend on the availability or assertion of the affirmative advice-of-counsel defense. The *Howard* defendant was a high-ranking corporate officer who approved the company's offering statements based on his understanding, through others, that outside counsel had reviewed and approved them. 376 F.3d at 1138-41. The offering was conditioned on the sale of a minimum number of shares. *Id.* Howard had *no* direct interaction with the law firm in connection with that transaction, relying

8

instead on his finance department to serve as liaison. *Id.* at 1139. The finance department coordinated the drafting of documents with the law firm, and "Howard relied on its work product and believed the offering materials contained all the necessary disclosures." *Id.* at 1140. The SEC alleged that Howard was liable for a scienter-based violation because the offering materials failed to disclose that the minimum subscription number was improperly calculated by including certain affiliate share purchases. *Id.* at 1140 and 1146.

In *Howard*, the SEC asked the court to ignore evidence that the defendant's state of mind was affected by his knowledge that other professionals reviewed and approved the disclosures. Its arguments parroted those made to this Court:

> One, Howard never claimed the *defense* of reliance of counsel; and two, even if he had, he failed to qualify for the defense because he did not make full disclosure to counsel, did not request counsel's advice, did not receive advice, and did not rely in good faith on that advice.

*Id.* at 1147 (emphasis in original). In vacating the SEC's sanctions against Howard, the court rejected those rationales, holding first that Howard was not asserting the formal advice-of-counsel defense, but rather was producing "evidence of good faith, a relevant consideration in evaluating a defendant's scienter." *Id.* The court also rejected the SEC's suggestion that, because Howard himself did not interact with counsel, "the evidence does not bear on Howard's conduct." Instead, the court held that the defendant's understanding, even through other corporate personnel, is what matters, not whether the defendant elicited or received legal advice. *Id.* at 1148. Likewise, Ferrone's opportunity to produce evidence at trial of his good faith does not depend on having "claimed the defense of reliance of counsel" or on proving the elements of that affirmative defense.

9

Similarly, in *Prince, supra*, the court found that defendant's good faith based on his understanding about company counsel's involvement was sufficient evidence to negate scienter, putting aside whether defendant could make out the formal advice-of-counsel defense. The SEC alleged that Prince – who had a checkered past, including a criminal history and adverse regulatory proceedings – participated in a scheme to omit his status as the *de facto* CFO from the company's filings. 942 F.Supp.2d at 137. Although Prince had no interaction with the company's outside counsel, he understood from the company's CEO that the law firm advised the company on all of its public filings and, particularly, that it was aware of Prince's status and the omission of it from those filings. *Id.* at 138-140. The court thus found that the SEC failed to prove scienter.

Similarly, Ferrone must be allowed to show that the SEC has failed to carry its burden of proof with respect to scienter because of his understanding concerning counsel's (and other professionals') review and approval of the corporate disclosures, having all material information at hand. But unlike here, the *Prince* court analyzed the evidence after trial in reaching its final judgment.[2] In contrast, the SEC would have this Court exclude the defense *ex ante*, not allowing the jury to consider it at all. *See also Snyder,* 292 Fed.Appx. at 406 ("The defendant does not have the burden of proving any 'elements' of the defense before the jury can weigh the defendant's theory of reliance.") No basis exists to do so.

---

[2] In doing so, the court reviewed the elements of the advice-of-counsel defense as being instructive of, but not as prerequisites to, good faith. *Id.* at 138.

10

III. Neither of the Cases Cited by the SEC – One an Oral Ruling – Contradict the Propriety of Ferrone's Theory of Defense.

While ignoring the Circuit Court cases explicitly affirming the fundamental difference of the theory of good faith from the affirmative defense of advice of counsel, the SEC cites two district court cases under altogether different circumstances. In each of those cases, the defendant disclaimed before trial *any* theory of defense relating to reliance on the work of lawyers, so the courts excluded references to lawyers under Rule 403. And in neither instance did the defendant raise the cases Ferrone cites, or any similar authorities, in arguing the relevance of such evidence.

The defendant in *Stoker* – the SEC's primary cited, oral ruling – was a structurer of collateralized debt obligations for Citibank. *SEC v. Stoker*, No. 11-CV-7388, Dkt. #1 (Complaint) (S.D.N.Y.). As a relative mid-level employee of that Fortune 100 company, he apparently did not even have indirect interaction with counsel or any knowledge of their particular work, let alone any actual communications. Therefore, he conceded before trial that he would not assert as a defense any reliance on counsel's review of the transaction at issue. *See* SEC Mot., p. 9. He did not qualify that concession at all, much less by pointing to any theory of good faith or by citing to any case law concerning that theory. *See* Exhibit 8 to SEC Mot., pp. 972-73. And when the issue reemerged at trial (after a series of exhibits involving communications with lawyers unrelated to defendant were admitted without objection), his counsel readily agreed not to pursue additional evidence or make arguments based on counsel's involvement. *Id.* at 981 (agreeing "we'll back off from that"), 982 ("we'll back off"), 985 (responding "we hear that" to the court's concern about the emphasis on counsel), 986 (the court agreeing to defense counsel's suggestion on how to handle exhibits involving counsel).

In fact, Stoker made clear that the defense was "not a question of reliance," but one of industry custom and practice. *Id.* at 977-79 (defense counsel stating that the defense was that "there was *nobody in the market*" who included the allegedly-omitted data from an offering of that type; that "it's not a question of reliance"; and that it was *not* based on defendant's belief "that counsel had attested to the legal appropriateness" of the transaction); *see also* 980-81, 985 (court stating that defendant's defense "has nothing to do with the fact that counsel were involved at all"; that "you [Stoker's counsel] were saying that [the defense has] nothing to do with counsel signing off per se"; and that the defense was "talking about the customs in the industry".) In short, Stoker not only didn't object to the court's restrictions concerning the concededly-irrelevant references to counsel, he agreed to them.

The SEC's citation to *Tourre* is of no more use. In fact, the only case on which *Tourre* relied was the oral ruling in *Stoker*, and the circumstances of both cases were nearly identical. *SEC v. Tourre*, 950 F.Supp.2d 666, 683 (S.D.N.Y. 2013). The defendant there was also a relative mid-level employee involved in structuring collateralized debt obligations (this time, for Goldman Sachs), who had no involvement with the company's outside lawyers. *Id.* at 672, 683-84. Like Stoker, Tourre disclaimed any defense based on advice of counsel, and he never cited or argued any authority distinguishing a good-faith theory of defense. *Id.* at 682. The court thus excluded evidence "relevant solely to show that lawyers attended meetings or set up meetings." *Id.* at 684.

Unlike those two defendants, Ferrone explicitly argues his good faith and lack of scienter based on case law recognizing the propriety and relevance of that theory of defense. Moreover, Ferrone does not seek to rely on the mere "presence" or "specter" of lawyers or that lawyers

12

simply sat silently in a room and had no active participation. Instead, his alleged scienter is negated by his undisputed understanding of counsel's review and approval of the particular disclosures at issue, while possessing all the information material to those disclosures – a state of mind informed by his direct and indirect interaction with those lawyers and other third-party professionals. Ferrone was not just one of thousands of employees of a gigantic public company with no foundation to know whether counsel had approved the particular statements at issue, or whether those lawyers knew of all the relevant facts. He was the CEO of a company with just two other personnel, one of whom was Ferrone's direct liaison with counsel. The central issue of his good faith makes that evidence critically relevant and admissible.

IV.     Another Party's Assertion of Privilege has No Bearing on the SEC's Motion.

Ferrone resigned from Immunosyn in 2011. As a former corporate officer, Ferrone had no right or standing to waive Immunosyn's attorney-client (or any other) privileges. *See, e.g.*, *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 276-79 (N.D.Ill. 2004) (former CEO has no right to invade or force a waiver of the privilege belonging to his former employer). To the contrary, absent an explicit waiver by Immunosyn, both Ferrone and his counsel were legally and ethically obliged to recognize any privilege which that party might arguably possess. *Cf. CFTC v. Weintraub,* 471 U.S. 343 (1985) (power to waive or not to waive privilege of corporation in bankruptcy belongs to trustee; former corporate officers are divested of that authority).

The SEC's suggestion that Ferrone has asserted an attorney-client privilege on his own behalf, and that the assertion thus somehow precludes a theory of his good faith, is wrong. Ferrone and his counsel always acknowledged that he had no standing with respect to the privilege. *See, e.g.,* Ex. 4 to SEC Mot., pp. 60-61. When *another* party explicitly asserted the

13

privilege and directed Ferrone and other witnesses with respect to that privilege, they were obliged to comply. *See* SEC Mot., p. 7 (cites to instructions by counsel for McClain, Jr. regarding privilege). But Ferrone and his counsel never directed or instructed anybody else regarding Immunosyn's privilege.[3] It was the SEC's prerogative to litigate the privilege if it believed it had expired due to the corporation becoming "defunct." But the SEC never did so.[4] None of Ferrone's conduct regarding another party's assertion of privilege is a basis to exclude his good faith defense or any evidence that is relevant to that defense.

**[Remainder of Page Intentionally Left Blank]**

---

[3] Unlike Ferrone, McClain, Jr. had never resigned from Immunosyn or Argyll, and he claimed through his counsel to have ongoing authority to act on their behalf, including by instructing witnesses to withhold testimony and documents. Moreover, contrary to the SEC's assertion, Ferrone did not object to the use of certain emails in McClain, Jr.'s deposition because they were privileged; he objected because the SEC had not timely produced those documents to Ferrone (although they had been produced to McClain, Jr. and his counsel). *See* Def. Motion to Exclude Documents Produced After Discovery Cut-Off, Dkt. #147; *see also* Email from C. Rubenstein to E. Phillips, dated 1/24/14, attached as Exhibit 15.

[4] In a separate motion *in limine*, the SEC for the first time is litigating that Immunosyn's privilege does not survive its "death," which the SEC says occurred from a combination of its default in this case and otherwise inactive corporate status. Because Ferrone has no standing with respect to that privilege, he takes no position on that particular question. *See* SEC Motion *In Limine* #2.

**Conclusion**

In seeking to eviscerate defendant's ability to demonstrate his good faith, the SEC mischaracterizes his theory of defense, ignores the relevant case law, and would have the Court turn the burden of proof upside down on the core element of scienter. But defendant is clearly entitled to present this theory of defense and to admit evidence demonstrating and corroborating his state of mind concerning the disclosures at issue. The SEC's motion must be denied.

Dated: June 4, 2015                                                       Respectfully submitted,

                                                                          Stephen D. Ferrone


                                                                          By:   */s/ Corey B. Rubenstein*
                                                                                  One of His Attorneys

Mark L. Rotert
Corey B. Rubenstein
STETLER, DUFFY & ROTERT, LTD.
10 South LaSalle Street, Suite 2800
Chicago, Illinois  60603
Phone:  312-338-0200
Fax:  312-338-0070
mrotert@sdrlegal.com
cruben@sdrlegal.com

## **CERTIFICATE OF SERVICE**

      I, Corey B. Rubenstein, an attorney, hereby certify that I caused a true and correct copy of the foregoing **DEFENDANT FERRONE'S RESPONSE TO SEC'S MOTION *IN LIMINE* No. 1 TO PRECLUDE "ADVICE OF COUNSEL" DEFENSE** to be filed and served via the Courts CM/ECF systems on June 4, 2015

                                       */s/ Corey B. Rubenstein*
                                        Corey B. Rubenstein