IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Securities and Exchange Commission, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. Jeffrey T. Gilbert |
| | ) | |
| vs. | ) | No. 11CV05223 (severed as to Ferrone) |
| | ) | |
| Stephen D. Ferrone, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FERRONE'S REPLY IN SUPPORT OF HIS
*DAUBERT* MOTION TO RESTRICT TESTIMONY OF DR. RHEINSTEIN**

Instead of explaining in its response how Dr. Rheinstein's testimony would be relevant to the securities *fraud* claims against defendant, the SEC attempts to pigeon-hole this case into a line of inapplicable cases involving product liability claims – cases centering on the "standard of care" in the industry. If the SEC had its way, it would make this fraud case about anything other than defendant's scienter (or lack thereof). It primarily does so by focusing on what it contends is a "complex regulatory regime" and by mistakenly asserting that Ferrone's "reasonableness" is at issue. Whether or not the entirety of the FDA new drug process is "complex," the particular allegations against defendant do not require understanding any such complexities, and the "reasonableness" of Ferrone's conduct is not at issue. The fact of the undisputed "hold" on the commencement of human trials is not a question with which the jury needs assistance from an expert. Moreover, the SEC's response invites the Court to accept the

1

unsupported assertion that experts may opine about the law as long as those opinions do not go to an ultimate issue in the case or involve a "battle of experts." The SEC cites no authority for that proposition, and its efforts to distinguish the unambiguous cases in this circuit prohibiting expert testimony on legal conclusions are unavailing. Finally, Dr. Rheinstein's subjective views on the purported significance of emails and other documents in the case is mere argument that is of no use to the jury and should be excluded.

      The SEC's argument centers on its citation to numerous product-liability cases in the pharmaceutical industry. *See* SEC Resp., pp. 6-7. But the issue in each of the cited cases was whether the defendant's conduct conformed to the *industry* standard of care. Because the standard of care for pharmaceutical manufacturers happens to be based on standards prescribed by regulation, expert testimony regarding the industry standards necessarily included testimony concerning the regulatory standards. *See, e.g., In re Fosomax Prods. Liab. Litig.*, 645 F.Supp.2d 164, 171 (S.D.N.Y. 2009) (civil claims against Merck for strict liability and negligence based on Merck's alleged failure to comply with industry standard in warning patients of risks); *Baldonado v.* Wyeth, No. 04C4312, 2012 WL 3234240, *1 (N.D.Ill. Aug. 6, 2012) (because plaintiff "must prove that defendant breached the applicable standard of care," plaintiff needed to establish what the applicable standard was in the industry, which was based on regulatory standards); *In re Yasmin and Yaz Prod. Liab. Litig.*, No. 3:09-md-02100, 2011 WL 6302287, * 1 (N.D.Ill.

Dec. 16, 2011) (expert testimony admitted to establish standard of care).[1] Of course, this case does not involve any such issue. And none of those cases stands for the much broader principle espoused by the SEC here: that experts may opine generally on the meaning or applicability of federal statutes or regulations.

Indeed, the SEC does not cite a single securities case where an expert was allowed to provide conclusions of law for any purpose, let alone to prove that the defendant's conduct was fraudulent. The two criminal cases cited by the SEC do not suggest a different result here. The first was a Medicaid fraud case, in which the witness was an actual employee of the alleged victim (the state's Medicaid program) who was allowed to testify how the alleged false billing descriptions affected the agency's decision to reimburse the defendant-physician. *See United States v. Davis*, 471 F.3d 783, 789 (7th Cir. 2006). The second case involved a bank fraud charge arising from allegedly inflated appraisals, in which an expert was allowed to testify about the industry standards governing appraisals, the Uniform Standards of Professional Appraisal Practice. *See United States v.* Owens, 301 F.3d 521, 525 (7th Cir. 2002). Neither holding supports the SEC's broad view that experts may generally opine on legal questions, especially where those opinions are unrelated to the decision-making process of a victim-agency or to a relevant industry standard.

Contrary to the SEC's implication (SEC Resp., p. 14), *Davis* did not purport to change the outcome of cases like *Haager v. Chicago Rail Link, LLC*, 232 F.R.D. 289, 294

---

[1] The unique position of those cases is highlighted by the fact that each of them involved expert testimony from the same witness, Dr. Suzanne Parisian.

3

(N.D.Ill. 2005) and *Pivot Point Intern., Inc. v. Charlene Products, Inc.*, 932 F.Supp. 220, 225 (N.D.Ill. 1996) – neither of which involved a "battle of experts" or testimony only going to an "ultimate legal issue" in the case. To the contrary, each of those cases, citing to *Bammerlin v. Navistar Intern. Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994), excluded proposed expert testimony under virtually identical circumstances as here: where the experts sought to provide both general and specific information about a regulatory regime, such as federal railroad regulations (*Haager)* or the federal copyright process (*Pivot Point*). As Judge Easterbrook (sitting by designation) ruled in *Pivot Point:* "The court will provide the jury with any necessary general information about the operation of the copyright system. There is no need for expert testimony on this subject; in a trial there is only one legal expert – the judge." 932 F.Supp. at 225.

The SEC's suggestion that the jury will be at sea regarding the legal effect of a "clinical hold" without Dr. Rheinstein's testimony is also mistaken. The SEC intends to call the proposed investigators for both INDs (Drs. Willeford and Melling), each of whom will testify about: (a) the submission of the IND, (b) the FDA's notification of a clinical hold, (c) the nature of the hold, including the issues and questions raised; and (d) the fact that the clinical hold prevented them from engaging in human trials. Additionally, to the extent the Court deems it necessary, the Court itself may instruct the jury on the one-sentence regulation at issue: "An IND goes into effect . . . [t]hirty days after FDA receives the IND, unless FDA notifies the sponsor that the investigations described in the IND are subject to a clinical hold. . ." *See* 21 CFR § 312.40(b). No elaboration by an expert is needed.

4

Dr. Rheinstein's interpretation of the National Research Act and 21 CFR § 56.103.7 to require an IND's review and approval by an "Institutional Review Board" (*see* Exh. 1 to Mot., pp. 10-11) similarly constitutes an inadmissible legal conclusion. Moreover, the SEC's response provides no basis for the relevance of such a requirement in this case, even assuming its existence. The SEC likewise offers no relevance for any testimony concerning the regulatory steps involved in the new drug development process *after* clinical trials are approved through an IND. There is no relevance, since there are no allegations concerning any misstatements or omissions concerning those post-IND steps. Dr. Rheinstein's proffered interpretations of the Orphan Drug Act and the compassionate use exemptions under the Code of Federal Regulations (*id.*, at pp. 12-14) are also inadmissible and irrelevant legal conclusions, which the SEC again fails to justify as having any bearing on defendant's alleged fraudulent scheme.

The SEC's apparent theory of relevance for much of Dr. Rheinstein's proposed testimony is based on a fundamental mistake regarding the requirement of scienter: that Ferrone's actions (or failure to act) may be judged based on a standard of "reasonableness". (See SEC Resp., pp. 8, 9, 12 (arguing that the proffered testimony is relevant to "the reasonableness of [Ferrone's] conduct;" it is "highly relevant to the reasonableness of the decision by Ferrone" to rely on Argyll; it will assist the jury "in assessing the reasonableness of Ferrone's conduct").) Of course, the standard of liability here is not lack of reasonableness (read: negligence). As the SEC acknowledges elsewhere, its burden is to prove scienter, which requires proof either of an intent to deceive or of severe recklessness, meaning that "the danger of misleading buyers and

5

sellers is either *known* to the defendant or is so obvious that the *defendant must have been aware* of it." See SEC Resp. to Motion to Exclude Hazelwood/Kanter Testimony, Dkt. # 163, p. 6 (emphases added). Given the SEC's reliance on the inapplicable negligence and strict liability cases, it is no wonder it offers a flawed theory of relevance based on "reasonableness."

Perhaps the most troubling aspect of the SEC's effort to admit evidence under the mistaken standard is the SEC's proffer of evidence concerning Dr. Ericsson. (*See* Exh. 1, ¶¶ 91-99.) Dr. Ericsson was one of the proposed investigators Argyll identified in its 2006 IND (filed almost a year before defendant became Immunosyn's CEO). The SEC would have Dr. Rheinstein testify that the FDA subsequently instituted administrative proceedings against Dr. Ericsson, resulting in his disqualification some two or three years later. In furthering the SEC's improper "reasonableness" theory, Dr. Rheinstein proposes to testify that "Argyll and Immunosyn *should have* been aware" of those proceedings, which were "among the most serious I have seen." *Id.* (emphasis added). But whether Argyll or Immunosyn "should have" known of something is irrelevant to the fraud claims against defendant. And any such focus on *Dr. Ericsson's* supposed misconduct, which had nothing to do with the conduct of Argyll or Immunosyn, let alone Ferrone, would be such an unfairly prejudicial distraction of the jury and confusion of the issues that it would properly be excluded under Rule 403, even if it were somehow relevant, which it is not. None of the SEC's claims are based on any supposed omissions or misrepresentations concerning Dr. Ericsson's FDA

6

status; those allegations are simply nowhere in the SEC's complaint. The SEC's effort to make them a part of the trial must be rejected.

The SEC fails to explain how Dr. Rheinstein's remaining proffered testimony would aid the jury in deciding any issues relevant to the fraud claims against defendant. For example, the SEC offers no justification at all for his proposed testimony about the FDA's history, the public policies underlying its mission, and its internal bureaucracy. Nor does the SEC explain how the FDA's annual statistics about INDs and clinical holds are relevant to the claims against defendant, other than the conclusory statement that those statistics provide "context with which to evaluate Ferrone's conduct." The SEC also does not attempt to show how the jury would be helped by Dr. Rheinstein going through each of Immunosyn's public statements merely to highlight the omission of the words "clinical hold." And his ultimate conclusion that the documents reflect that Argyll and Immunosyn (and presumably defendant) "continued to trumpet that clinical trials and revenues from SF-1019 were imminent" despite them "knowing" that initiating clinical trials would take "years" is exactly the type of subjective impression that is of no help to the jury. It is mere argument reserved for the lawyers, which must be accepted or rejected by the jury based on its review of the facts.

Dated: June 25, 2015        Respectfully Submitted,

                 Stephen D. Ferrone


                By: */s/ Corey B. Rubenstein*
                    One of His Attorneys

Mark L. Rotert
Corey B. Rubenstein
STETLER, DUFFY & ROTERT, LTD.
10 South LaSalle Street, Suite 2800
Chicago, Illinois 60603
Phone:    312-338-0200
Fax:   312-338-0070
mrotert@sdrlegal.com
cruben@sdrlegal.com

<mark>Case: 1:11-cv-05223 Document #: 173 Filed: 06/25/15 Page 9 of 9 PageID #:2278</mark>

## CERTIFICATE OF SERVICE

      I, Corey B. Rubenstein, an attorney, hereby certify that I caused a true and correct copy of the foregoing **DEFENDANT FERRONE'S REPLY IN SUPPORT OF HIS *DAUBERT* MOTION TO RESTRICT TESTIMONY OF DR. RHEINSTEIN** to be served upon all counsel of record via the ECF filing system on this 25th day of June, 2015.

                                                                  */s/ Corey B. Rubenstein*