IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
U.S. SECURITIES AND           )
EXCHANGE COMMISSION,          )
                              )
            Plaintiff,        )
       v.                     )   No. 11 C 5223
                              )
STEPHEN D. FERRONE, et al.,   )
                              )
            Defendants.       )
```

MEMORANDUM OPINION AND ORDER

The U.S. Securities and Exchange Commission ("SEC" or "Commission") has moved for civil remedies against Douglas McClain, Sr. and Douglas McClain, Jr. and default judgments against four entities accused of violating federal securities laws. The McClains oppose the SEC's requests for permanent injunctions, lifetime bans on serving as an officer or director of any public company, disgorgement of ill-gotten gains, and a civil penalty against McClain Sr.

For the reasons stated below, I grant the SEC's motion only in part. Specifically, I reject the Commission's request for unconditional officer-director bars against the McClains and its attempt to disgorge $335,000 from McClain Jr.

I.

In October 2014, I granted the SEC's motion for summary judgment on its securities fraud claims against the McClains.

1

*See* Dkt. No. 94.  Based on the parties' evidentiary submissions, I held that a reasonable jury would be compelled to find that McClain Sr. intended to deceive or manipulate investors when he (1) stole over $338,000 from investors who thought they were buying stock in Immunosyn Corporation ("Immunosyn") and received nothing in return (2) misleadingly told investors that the drug Immunosyn was licensed to market and sell, SF-1019, was close to securing regulatory approval when in fact the U.S. Food and Drug Administration ("FDA") had placed full holds on proposed clinical trials of the drug.  *Id.* at §§ II.A and II.B.  I also held that the McClains failed to rebut the inference that they sold some of their Immunosyn shares based on their inside knowledge of the FDA hold, which did not become public information until April 2010.  *Id*. at II.C.

    The McClains pin the blame for their loss at summary judgment on their former attorney, John A. Franczyk, whose performance they criticize as so inadequate that it "compelled" me to grant the SEC's motion.  Dkt. No. 179 at 2.  The McClains falsely assert that Franczyk was suspended from practicing law when he filed their opposition to the SEC's motion for summary judgment in April 2014.  There is no support in the record for that assertion.  Moreover, the Illinois Attorney Registration and Disciplinary Commission's ("ARDC") website shows that Franczyk was first served with a complaint in December 2014

charging him with neglecting a different client's matter, failing to refund unearned fees, and failing to cooperate in a disciplinary investigation. *See* ARDC Case No. 2014PR00139. On August 4, 2015, the ARDC's Hearing Board found Franczyk in default and recommended to the Illinois Supreme Court that he be suspended from practicing law for one year. The ARDC's report and recommendation expressly noted, contrary to the McClains' assertions in this case, that Franczyk had not previously been disciplined by the ARDC. The McClains' misrepresentations about Franczyk's disciplinary history show that they have not accepted responsibility for engaging in securities fraud and continue to blame others for their current predicament.

Since my summary judgment ruling, the SEC has dismissed its claims against James Miceli (who is deceased); severed its claims against Stephen Ferrone, which the parties then consented to try before Magistrate Judge Gilbert; and dismissed its remaining claims against McClain Jr. *See* Dkt. Nos. 111, 129, 166.

Before me is the SEC's motion for remedies against the McClains and default judgments against four entities accused of violating federal securities laws.

II.

I start with the SEC's requested remedies against the McClains: permanent injunctive relief, officer-director bars, disgorgement, and a civil penalty.

A.

The SEC's request for permanent injunctive relief against the McClains is brought under Section 20(b) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(b), and Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(d). Those provisions authorize the Commission to seek an order permanently enjoining securities fraud and "require[] a district court 'upon a proper showing' to grant [such] injunctive relief." *Aaron v. SEC*, 446 U.S. 680, 689 (quoting 15 U.S.C. §§ 77t(b), 78u(d)).

The Seventh Circuit recently summarized the legal standard that governs requests by the SEC for injunctive relief:

> Once the SEC has demonstrated a past violation, it "need only show that there is a reasonable likelihood of future violations in order to obtain [injunctive] relief." *SEC v. Holschuh,* 694 F.2d 130, 144 (7th Cir.1982). To predict such a likelihood, the court "must assess the totality of the circumstances surrounding the defendant and his violation." *Id.* This assessment includes consideration of "the gravity of harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transactions; the defendant's recognition of his own

> culpability; and the sincerity of his assurances against future violations." *Id.*

*S.E.C. v. Yang*, 795 F.3d 674, 681 (7th Cir. 2015).

The summary judgment record established the following facts. In January 2007, McClain Sr. learned that the FDA had blocked Argyll Biotechnologies, LLC from beginning "Phase I" clinical trials of SF-1019 on human subjects. McClain Jr. learned about the FDA hold no later than March 15, 2007 and then sold hundreds of thousands of his Immunosyn shares between April 2007 and October 2007. Meanwhile, McClain Sr. deceived investors into purchasing Immunosyn stock by making false and misleading statements about the FDA approval process. McClain Sr. also personally stole over $338,000 from investors who thought they were buying Immunosyn stock from him, but received nothing in return. Immunosyn belatedly disclosed to investors in April 2010 that the FDA had placed a hold on Argyll's proposed clinical trials of SF-1019.

The McClains' illegal conduct was flagrant, recurrent, and committed with a high degree of scienter. McClain Sr. stole $338,000 from investors and duped countless others into buying Immunosyn stock based on false or misleading statements about the FDA approval process for SF-1019. Meanwhile, McClain Jr. started profiting from his inside knowledge of SF-1019's dim prospects almost as soon as he learned that the FDA had blocked

Argyll from commencing clinical trials. In this litigation, the McClains have not taken responsibility for their actions or provided any indication that they have learned their lesson.

The McClains argue that permanent injunctions should not be entered against them for three reasons: (1) they "relied heavily on the advice of their counsel concerning the legality of their stock sales and public reporting"; (2) the SEC "has presented little evidence of bad faith other than technical arguments concerning the status of Immunosyn's drug applications with the FDA"; (3) they no longer pose a danger to investors. Dkt. No. 179 at § III.A.

The McClains have not cited any cases in which a court declined to impose injunctive relief simply because a proven fraudster supposedly relied on the advice of counsel. Moreover, the legal advice upon which the McClains claim to have relied is vague. McClain Sr. says that he and his son "relied heavily on the advice of legal counsel in disclosing SF-1019 to investors." Dkt. No. 179-1 at ¶ 3. Nothing in that statement suggests that an attorney gave McClain Sr. the green light to steal money from investors who thought they were buying Immunosyn stock; make false and misleading statements about the likelihood of FDA approval for SF-1019; or sell his own Immunosyn stock before the investing public learned that the FDA had placed the proposed clinical trials of SF-1019 on full holds.

6

The McClains' second argument is an attempt to minimize their offenses as mere "technical" violations of the securities laws. There is nothing trivial about stealing money from investors, boasting about the market potential of a drug that the FDA had not even approved for use in clinical trials, and trading on the basis of inside information that a company's sole product is unlikely to secure regulatory approval any time soon. The McClains have plainly not accepted responsibility for their own actions, as further evidenced by their attempt to blame Attorney Franczyk for their loss at summary judgment. *See SEC v. Lipson*, 278 F.3d 656, 664 (7th Cir. 2002) (noting that "acceptance of responsibility for illegal conduct is a routine and unexceptionable feature even of criminal, let alone of civil, punishment"). In light of his steadfast denial of culpability, McClain Sr.'s assurance that he will not violate the securities laws in the future rings hollow. *See* Dkt. No. 179-1 ("McClain Sr. Declar.") at ¶ 3. McClain Jr., for his part, has not even attempted to persuade me that he will not engage in securities fraud again.

The McClains' final argument against injunctive relief is that they no longer pose a danger to the investing public because McClain Sr. is elderly and McClain Jr. is serving a fifteen year prison sentence following a jury conviction on twenty-seven counts of conspiracy, mail fraud, wire fraud,

7

securities fraud, and money laundering. *See U.S. v. McClain*, 593 F. App'x 697 (9th Cir. 2015) (affirming conviction), *cert. denied*, 2015 WL 3792873 (Oct. 5, 2015). McClain Sr.'s vague reference to his "advanced age and health" does not show that he lacks the skill, means, or motivation to defraud investors again. Dkt. No. 179 at 6. He claims to be a first time offender, but his violations in this case included three forms of securities fraud, including multiple instances of insider trading. As for McClain Jr., his incarceration for the next fifteen years does not permanently disable him from violating the securities laws. *See SEC v. Payne*, No. 1:00-cv-1265-JMS-TAB, 2011 WL 693630, at *4 (S.D. Ind. Feb. 18, 2011) (collecting cases in which permanent injunctions were entered against incarcerated defendants). McClain Jr.'s failure to acknowledge any culpability in this case and the recurrent nature of his insider trading show that he remains a threat to the investing public.

In sum, I find that the McClains are reasonably likely to engage in securities fraud again and hereby permanently enjoin them from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

B.

The anti-fraud provisions of the securities laws provide that:

> [T]he court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated [the anti-fraud provisions] from acting as an officer or director of [a public company] if the person's conduct demonstrates unfitness to serve as an officer or director[.]

15 U.S.C. §§ 77t(e), 78u(d)(2).

"In determining a defendant's fitness as an officer or director, a court may consider: '(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender' status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. Rooney*, No. 11 C 8264, 2014 WL 3500301, at *4 (N.D. Ill. July 14, 2014) (quoting *SEC v. Black*, 04 C 7377, 2008 WL 4394891, at *21 (N.D. Ill. Sept. 24, 2008)). "These factors are not exclusive, nor is it necessary to apply all of these factors in every case." *Id.* (citing *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

I have already explained why the McClains' violations of the securities laws were flagrant, recurrent, profitable, committed with a high degree of scienter, and are likely to recur. *See supra* at § II.A. The violations also occurred while

9

the McClains occupied positions of trust.  McClain Sr. was the chief science officer of a company, Argyll, seeking government approval of a new drug.  The FDA and the public were entitled to expect that someone in McClain Sr.'s position would not trick investors into thinking that regulatory approval was likely when he knew the opposite was true.  McClain Jr. chaired Immunosyn's board of directors and also served as its chief financial officer.  The McClains repeatedly abused their positions of trust for personal gain.

The McClains compare themselves to the defendant in *SEC v. Shah*, No. 92 Civ 1952 (RPP), 1993 WL 288285 (S.D.N.Y. July 28, 1993), who admitted to insider trading, but opposed the SEC's request for a permanent officer-director bar.  The court denied the SEC's request, in part based on a judicial finding that "the likelihood of future misconduct appears relatively slight." *Id*. at *7.  The same cannot be said of the McClains, who still see nothing wrong with the way they defrauded investors.

The SEC wants me to bar the McClains from ever serving as an officer or director of any public company. *Patel* suggests that I should consider less severe alternatives: "[B]efore imposing a permanent bar, the court should consider whether a conditional bar (e.g., a bar limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient, especially where there is no prior history of

unfitness." 61 F.3d at 142. The SEC has presented some evidence that McClain Sr. is involved in coal mining and real estate development and that Immunosyn identified McClain Jr. as a financial executive in its public filings. Although the SEC's evidence is entitled to some weight, I find it too vague to support a finding that the McClains are unfit to serve, for the rest of their lives, as an officer or director of a public company in any industry.

The officer-director bar imposed against the McClains should be tailored to the facts of this case. Therefore, I find that the McClains are permanently unfit to serve as an officer or director only of any public biopharmaceutical company.

C.

The SEC also seeks to disgorge the McClains' profits from their fraudulent activities.

"In the exercise of its equity powers, a district court may order the disgorgement of profits acquired through securities fraud." *Id*. at 139. "'[D]isgorgement need only be a reasonable approximation of profits causally connected to the violation.'" *Id*. (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)). The purpose of ordering disgorgement is to deprive the McClains of the ill-gotten gains from their fraudulent conduct. *Id*. (citing *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir. 1971)).

McClain Sr. stole $338,803 from investors who thought they were buying Immunosyn stock. He must disgorge this amount plus prejudgment interest on that sum from September 1, 2008 (by which time his theft from investors was complete) through May 31, 2015 (the last quarter before the SEC filed its motion for remedies). The total disgorgement amount for McClain Sr. is $338,803 plus $91,036.99 in prejudgment interest for a total of $429,839.99.

The SEC's disgorgement argument with respect to McClain Jr. is more complicated. At summary judgment, I found McClain Jr. liable for selling Immunosyn stock between April 26, 2007 and October 24, 2007 on the basis of inside information that was not disclosed to the public until April 16, 2010. In a typical insider trading case, the proper amount of disgorgement is the difference between (a) the price at which McClain Jr. sold his Immunosyn shares when he, but not the public, knew about the FDA hold and (b) Immunosyn's stock price within "'a reasonable period after public dissemination of the nonpublic information.'" *Lipson*, 278 F.3d at 663-64 (quoting 15 U.S.C. § 78u-1(e)); *see also SEC v. Happ*, 392 F.3d 12, 31 (1st Cir. 2004); *Patel*, 61 F.3d at 139.

McClain Jr. sold Immunosyn stock on the basis of inside information before the stock started trading publicly on October 26, 2007. His private sales of Immunosyn stock are reflected in

three statements he filed with the SEC.  *See* Dkt. Nos. 76-20 to 76-22.  Those statements show that McClain Jr. owned Immunosyn stock indirectly through at least four entities: Argyll Biotechnologies, LLC; Argyll Equities, LLC; Chairsvelle Holdings, Inc.; and Padmore Holdings, Ltd.  The SEC's sole focus in its disgorgement calculation is on McClain Jr.'s ill-gotten gains from his sale of Immunosyn stock held by Argyll Equities between April 26, 2007 and October 24, 2007.

McClain Jr. sold over one million shares of Immunosyn stock held by Argyll Equities on April 26, 2007 for a total price of over three million dollars.  *See* Dkt. No. 76-20.  On July 20, 2007, McClain Jr. sold another 89,000 shares of his Immunosyn stock (again held by Argyll Equities) for almost $250,000.  The average share price McClain Jr. obtained for his Immunosyn stock on those two dates was $2.97 and $2.78, respectively.  McClain Jr.'s only other sales of Immunosyn stock held by Argyll Equities during the period in which he engaged in insider trading totaled only $32.50.

Argyll Equities transferred a total of $335,000 to McClain Jr. in eighteen separate payments between April 23, 2007 and January 8, 2009.  *See* Dkt. No. 176 ("Kustusch Declar.") at Ex. I.  The SEC believes that sum represents a fraction of the proceeds from McClain Jr.'s insider trading of Immunosyn stock held by Argyll Equities.  There is no evidence, however, linking

(a) McClain Jr.'s sales of Immunosyn stock for a sum exceeding $3.25 million on April 26 and July 20, 2007 and (b) a series of eighteen payments totaling $335,000 that he received from Argyll Equities between April 23, 2007 and January 1, 2009. The SEC admits that it never obtained complete bank records for Argyll Equities, which may or may not have shown a series of suspicious transfers to McClain Jr. on or around the dates of his insider trades. *Id*. at ¶ 23. Without those bank records, the SEC is simply guessing about why Argyll Equities made eighteen separate transfers to McClain Jr., the last of which occurred almost a year and a half after his last major sell off of Immunosyn stock on July 20, 2007.

More broadly, the SEC has not attempted to compare the share price at which McClain Jr. sold his Immunosyn stock based on inside information and the market price of the stock within a reasonable period after the public learned about the FDA hold on clinical trials of SF-1019. Comparing those two prices is the standard way to calculate disgorgement in an insider trading case. *Lipson*, 278 F.3d at 663-64. The SEC has not cited any authorities supporting its proposed methodology, which ignores Immunosyn's stock price entirely and relies instead on conclusory statements about incomplete bank records.

"[T]he SEC bears the ultimate burden of persuasion that a disgorgement figure is a reasonable approximation of the amount

14

of unjust enrichment." *Happ*, 392 F.3d at 31-32. In this case, the record does not support a finding that McClain Jr.'s receipt of $335,000 from Argyll Equities between April 23, 2007 and January 1, 2009 represented the ill-gotten gains from his insider trading of Immunosyn stock.

D.

The final form of relief the SEC seeks is a civil penalty of $130,000 against McClain Sr.

The securities laws authorize courts "to impose, upon a proper showing, a civil penalty to be paid by the person who [violated the statute]." 15 U.S.C. §§ 77t(d)(1), 78u(d)(3). A third tier penalty is appropriate where, as here, the defendant's violation of the securities law (1) "involved fraud, deceit, [or] manipulation" and (2) "resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* at §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). The amount of a third tier penalty during most of McClain Sr.'s fraudulent activities was greater of $130,000 or the "gross amount of [his] pecuniary gain." *Id.*; *see also* 17 C.F.R. § 201.1004 (adjusting statutory penalties based on inflation).

The SEC is seeking only a $130,000 civil penalty against McClain Sr., who contends that he is entitled to a jury trial before such a penalty may be imposed. McClain Sr.'s argument overlooks plain language in the relevant statutes authorizing

15

"the court" to impose civil penalties. 15 U.S.C. §§ 77t(d)(1), 78u(d)(3); *see also Tull v. U.S.*, 481 U.S. 412, 426-27 (1987) (holding that Congress may, consistent with the Seventh Amendment, authorize courts to impose civil penalties without a jury trial).

Aside from his jury trial argument, McClain Sr. has not opposed the SEC's request for a civil penalty on any other ground. I find that the SEC's requested penalty of $130,000 is appropriate (for the same reasons that a permanent injunction was appropriate) and as a necessary deterrent against future securities fraud.

### III.

In April 2012, I granted the SEC's motion under Rule 55(a) for entries of default against Immunosyn, Argyll Biotechnologies, Argyll Equities, and Padmore Holdings (collectively, "the Entity Defendants"). *See* Dkt. No. 32.

The SEC has now moved under Rule 55(b) for default judgments against the Entity Defendants. I have no trouble finding the Entity Defendants liable for the statutory violations alleged in the complaint and permanently enjoining them from future violations of the same provisions, but I question the SEC's disgorgement calculations for the three entities accused of insider trading. The SEC is attempting to disgorge the profits these entities realized on their sales of

Immunosyn stock, calculated by subtracting the price the entities initially paid for the shares (i.e., their cost basis) from the proceeds of their stock sales.

As discussed above in connection with the SEC's attempt to disgorge the profits from McClain Jr.'s insider trading, "the proper amount of disgorgement is generally the difference between the value of the shares when the insider sold them while in possession of the material, nonpublic information, and their market value 'a reasonable time after public dissemination of the inside information.'" *Happ*, 392 F.3d at 31 (quoting *SEC v. MacDonald*, 699 F.2d 47, 54-55 (1st Cir. 1983)). *Happ* explicitly rejected the defendant's attempt to calculate disgorgement based on the difference between the proceeds from his stock sales and his cost basis in the underlying shares. *Id*. at 32.

The SEC is directed to file a memorandum within twenty-one days explaining the legal basis for its proposed disgorgement calculations against Argyll Biotechnologies, Argyll Equities, and Padmore Holdings and/or submitting revised disgorgement calculations using the traditional method approved in *Lipson*, *Happ*, and countless other cases.

## IV.

The SEC's motion is granted only in part for the reasons stated above.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: October 21, 2015