## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Plaintiff, ) | No. 11-cv-5223 |
| ) | |
| v. ) | Jeffrey T. Gilbert |
| ) | Magistrate Judge |
| STEPHEN D. FERRONE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Securities and Exchange Commission (the "SEC") alleges that Defendant

Stephen D. Ferrone ("Ferrone") violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)),

Exchange Act Rule 10b-5 (17 C.F.R. § 240.10b-5), and Exchange Act Rule 13a-14 (17 C.F.R. §

240.131-14), and aided and abetted violations of Section 13(a) of the Exchange Act (15 U.S.C. §

78m(a)) and Exchange Act Rules 12b-20 (17 C.F.R. § 240.12b-20), 13a-1 (17 C.F.R. §

240.13a-1), 13a-11 (17 C.F.R. § 240.13a-11), and 13a-13 (17 C.F.R. § 240.13a-13). [ECF No.

1.] Upon the SEC's motion, the District Court severed the claims against Ferrone from the

claims against his co-defendants. [ECF No. 129.] Pursuant to 28 U.S.C. § 636(c) and Local

Rule 73.1, the SEC and Ferrone then consented to the jurisdiction of a United States Magistrate

Judge for all proceedings, including entry of final judgment. [ECF No. 130.] Trial of the SEC's

claims against Ferrone is set to begin on April 18, 2016. [ECF No. 153.]

## I. BACKGROUND

The case against Ferrone arises out of his tenure as the Chief Executive Officer and

President of Immunosyn Corporation ("Immunosyn"). But the story begins several years before

Immunosyn came into existence. In 2002, Douglas McClain, Jr. and James Miceli founded a pharmaceutical company, Argyll Biotechnologies, LLC ("Argyll"). Douglas McClain, Sr. served as Argyll's Chief Science Officer. Several years later, Argyll acquired the rights to a biopharmaceutical drug product derived from goat's blood called SF-1019. Argyll then formed Immunosyn and granted to the new company the right to distribute SF-1019. Shortly thereafter, in December, 2006, Argyll filed an Investigational New Drug ("IND") application with the United States Food and Drug Administration ("FDA"). In early 2007, however, the FDA imposed a full clinical hold on SF-1019, prohibiting all human studies involving the potential pharmaceutical. Several months later, in October, 2007, Ferrone became CEO and President of Immunosyn. The SEC asserts that, in these roles, "Ferrone engaged in fraudulent conduct, including the making of material misrepresentations and omissions, and the aiding and abetting of misrepresentations and omissions in Immunosyn's public statements concerning SF-1019." [ECF No. 197, at 2.]

The core of the SEC's case is that Immunosyn and Ferrone never disclosed to investors or in required filings that the FDA put a clinical hold on SF-1019. Ferrone counters that Immunosyn made all required disclosures regarding SF-1019, that the disclosures were not misleading, and that he always acted in good faith. *Id.*

This Memorandum Opinion and Order addresses the SEC's three motions *in limine* [ECF Nos. 140, 142, 144], all three of Ferrone's motions *in limine* [ECF Nos. 146, 147, 148], and Ferrone's *Daubert* motion [ECF No. 149]. For the reasons stated below, these motions are granted in part, denied in part, taken under advisement in part, and reserved in part.

## II. LEGAL STANDARD

The district court has the inherent authority to manage the course of a trial. *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984). The court may exercise this power by issuing an evidentiary ruling in advance of trial. *Id.* A party may seek such a ruling by filing a motion *in limine*, which requests the court's guidance on what evidence will (or will not) be admitted at trial. *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Prudent motions *in limine* serve a gatekeeping function by allowing the judge "to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). By defining the evidentiary boundaries, motions *in limine* both permit "the parties to focus their preparation on those matters that will be considered by the jury," *id.*, and help ensure "that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues," *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

As with all evidentiary matters, the court has broad discretion when ruling on motions *in limine*. *United States v. Ajayi*, 2015 WL 8538025, at *5 (7th Cir. Dec. 11, 2015); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Moreover, the Court can change its ruling at trial, "even if nothing unexpected happens[.]" *Luce*, 469 U.S. at 41. Ruling *in limine* are speculative in effect; essentially, they are advisory opinions. *Wilson*, 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part).

The court will grant a motion *in limine* to bar evidence only where that evidence is clearly inadmissible for any purpose. *Taylor v. Union Pac. R. Co.*, 2010 WL 5421298, at *1 (S.D. Ill. Dec. 27, 2010). This is a high standard. *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1087 (N.D. Ill. 2007). The moving party bears the burden of establishing clear inadmissibility.

*Euroholdings Capital & Inv. Corp. v. Harris Trust & Sav. Bank*, 602 F. Supp. 2d 928, 934 (N.D. Ill. 2009). If the moving party cannot satisfy her burden, the evidentiary ruling should be deferred until trial. *Green v. Goodyear Dunlop Tires N. Am., Ltd.*, 2010 WL 747501, at *1 (S.D. Ill. Mar. 2, 2010). That is because, at trial, the Court will have the benefit of understanding "the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011).

## III. DISCUSSION

### A. Ferrone's Motion *In Limine* To Exclude Evidence Concerning McClain, Sr.'s Alleged Separate Fraud On The Texas Clinic Patients

#### 1. The Factual Background

In July, 2008, McClain, Sr. went to Holistic Health Care Center, located in Boerne, Texas. While there, he made a presentation during which he tried to convince the attendees, including terminally-ill patients, to purchase Immunosyn stock. In the course of his remarks, McClain, Sr. made several fraudulent statements. *SEC v. Ferrone*, 2014 WL 5152367, at *4 (N.D. Ill. Oct. 10, 2014), *appeal dismissed* (Jan. 22, 2015). (For a more thorough discussion of the facts underlying the Texas fraud, see the opinion granting summary judgment for the SEC on its claims against McClain, Sr. *Id.* at *2-4.) McClain, Sr. said that the Department of Defense purchased 600,000 vials of SF-1019. He claimed that the FDA issued compassionate use waivers for SF-1019. He asserted that Phase 2 clinical trials would start in the near future. And he declared that FDA approval would come shortly after that. Following the presentation, McClain, Sr. agreed to sell his stock to some of the attendees, and he took their money. But he never delivered the shares.

## 2. Ferrone's Motion To Exclude Evidence Of The Texas Clinic Fraud

Ferrone has moved to exclude evidence of McClain, Sr.'s fraud at the Texas clinic (as described in paragraphs 49 through 53 of the complaint (ECF No. 1, ¶¶ 49-53). [ECF No. 146.] He asserts that this evidence is not relevant and would be unfairly prejudicial. *Id.* at 3. The Court agrees.

The SEC advances one broad theory of relevance. According to its thinking, McClain, Sr.'s conduct is relevant because it is "consistent with the overall scheme in which Ferrone participated." [ECF No. 157, at 2.] Essentially, the SEC wants the jury to lump Ferrone and McClain, Sr. together. But the SEC has not produced any evidence that Ferrone was involved, even tangentially, with the Texas fraud. Ferrone's trial is no place for evidence about a different fraud committed in a different place by a different person who made different statements under different circumstances.

The SEC seems to realize that its argument is not tenable because it quickly backtracks, only "envision[ing]" two limited circumstances when it would seek to introduce evidence of the Texas fraud. *Id.* at 3. The SEC asserts that, if it calls as a witness an investor who was at the Texas clinic, the investor witness should be able to describe McClain, Sr.'s statements because they were "similar" to Ferrone's statements. *Id.* The same flaw that undermines the SEC's broad theory of relevance is fatal to this chain of reasoning. Simply put, similarity (of which there is little here, in any event) is not the same as relevance.

The SEC also wants to be permitted to use evidence of the Texas fraud to impeach McClain, Sr. He is listed as a "may call" trial witness by the SEC. [ECF No. 197-1]. If, as discussed above, McClain, Sr. cannot testify about the Texas clinic fraud then it is unnecessary to impeach him with alleged statements he made in furtherance of that fraud. "[O]ne may not

impeach by contradiction regarding 'collateral or irrelevant matters.'" *Newman v. Gaetz*, 2011

WL 320229, at *1 (N.D. Ill. Jan. 31, 2011) (quoting *United States v. Kozinski*, 16 F.3d 795, 805

(7th Cir. 1994)). "A matter is collateral if it 'could not have been introduced into evidence for

any purpose other than contradiction.'" *Id.* (quoting *United States v. Williamson*, 202 F.3d 974,

979 (7th Cir. 2000)). Because evidence of the Texas fraud would not be admissible for any other

purpose, it cannot be used to impeach McClain, Sr. That means evidence of the Texas fraud is

irrelevant to this case and therefore is inadmissible under Federal Rule of Evidence 401.

The evidence also is inadmissible under Federal Rule of Evidence 403 because the

danger of unfair prejudice substantially outweighs the probative value of the evidence.

"Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror,

provokes its instinct to punish, or otherwise may cause a jury to base its decision on something

other than the established propositions in the case." *United States v. Thompson*, 359 F.3d 470,

479 (7th Cir. 2004) (internal quotation marks omitted). The SEC's proposed evidence of the

Texas fraud pushes many of these buttons. It arouses a "sense of horror" and provokes an

"instinct to punish" because McClain, Sr. took advantage of terminally-ill patients by lying to

them and then taking their money without giving anything in return. The natural feeling of

horror at such conduct and the resulting instinct to punish could be improperly channeled to

Ferrone. In fact, if the jury adopted the thinking that underlies the SEC's broad theory of

relevance, then the jury would do just that – attribute McClain, Sr.'s misconduct to Ferrone. For

that same reason, evidence of the Texas clinic fraud also may cause a jury to decide Ferrone's

case based on irrelevant evidence. Clearly, the risk of unfair prejudice is significant.

On the other side of the balance, the evidence has no probative value because it is not

relevant to the SEC's claims against Ferrone. But even if the evidence were marginally relevant

to a disputed issue in this case, its probative value in that respect would still be substantially

outweighed by the danger of unfair prejudice. That means that, were the evidence admissible

under Federal Rule of Evidence 401, it still would be barred by Federal Rule of Evidence 403.

**B. Ferrone's Motion *In Limine* To Exclude As Trial Exhibits Privilege-Asserted Documents Produced After Discovery Cut-Off, And The SEC's Motion *In Limine* No. 2 For A Pre-Trial Ruling That The SEC Can Introduce Into Evidence Two Documents Notwithstanding Flawed Privilege Claims**

### 1. The Factual Background

In April, 2013, the SEC issued a subpoena to Todd Ollendorff, a non-party contractor

who worked for Immunosyn and Argyll. The same day, the SEC notified Ferrone's counsel that

it had sent the subpoena to Ollendorff. [ECF No. 143-13, at 2.] The Subpoena specifically

requested that Ollendorff produce documents. *Id.* Two months later, Ollendorff began

producing responsive documents to the SEC. Because of the volume of documents, Ollendorff

made his productions on a rolling basis.

During the initial rounds of production, the SEC Bates stamped the documents, uploaded

them to its document management system, and promptly produced them to Ferrone's counsel.

But the SEC did not do that when Ollendorff produced about 80,000 documents in early August

2013 (the "August Documents"). The SEC still Bates stamped the August Documents – SEC-

Ollendorff-E-26995 through SEC-Ollendorff-E-111902 – and uploaded them to its system, but it

did not immediately produce them to Ferrone's counsel.

The SEC proceeded in this manner because John Franczyk, an attorney for the two

McClain's, informed the SEC that he believed some of the documents requested by the

Ollendorff subpoena may have been privileged. The SEC did not believe that any privilege

protected the August Documents, but it still agreed to give Franczyk time to conduct a privilege

review. So, on September 10, 2013, the SEC produced all of the August Documents to

Franczyk. *See* ECF No. 143-14, at 2. The SEC notified Franczyk in an accompanying letter that the documents were not being turned over to Ferrone's counsel pending Franczyk's privilege review. *Id.*

That same day, the SEC produced other Ollendorff documents – but not the August Documents – to Ferrone's counsel. *See* ECF No. 143-15, at 2. In an accompanying letter, the SEC notified Ferrone's counsel that the production did not include potentially privileged documents provided by Ollendorff that had been given to Franczyk for a privilege review. *Id.*

Franczyk, however, never conducted a privilege review, or at least he never informed either the SEC or Ferrone's counsel of the results of his privilege review. Ferrone's counsel did not follow up with the SEC about the August Documents and the SEC also did not follow up about Franczyk's supposed privilege review. The glitch was discovered in January of 2014 when the SEC sent Ferrone's counsel a list of documents that the SEC would use in the upcoming deposition of McClain, Jr. [ECF No. 161-12.] After reading the list, Ferrone's counsel informed the SEC that he did not have some of the listed documents. *Id.* He also told the SEC that he did not have *any* documents in the Bates-range of the listed documents. *Id.* at 2.

According to the SEC, "when the SEC's counsel began preparing for the McClain, Jr., deposition in January 2014, the SEC's counsel did not focus on the fact that the SEC had produced certain Ollendorff documents to the McClains' counsel but not to Ferrone's counsel." [ECF No. 161, at 11.] The SEC characterizes this as "an oversight." *Id.*

Just before the deposition commenced, the SEC provided to Ferrone's counsel the listed documents that it had not previously turned over. [ECF No. 161-12.] Shortly thereafter, the SEC discovered that it had never produced to Ferrone's counsel the other August Documents. It so informed Ferrone's counsel on February 10, 2014. [ECF No. 147-1, at 4.] The SEC assured

Ferrone's counsel that it had already begun getting the documents ready to hand over. *Id.* But more than a month passed before the missing documents were finally produced on March 14, 2014. *See* ECF No. 143-16, at 2. This was over four months after the fact discovery cut-off on November 12, 2013. [ECF No. 64.][1]

## 2. Ferrone's Motion To Exclude Documents Produced After Discovery Cut-Off

Ferrone has moved to prevent the SEC from introducing any of the August Documents as exhibits during trial. [ECF No. 147.] He concedes that he cannot assert any privilege in the documents because he is no longer employed by Immunosyn and has no right to raise any privilege the company may have or have had in the documents. *Id.* at 3.[2]

Ferrone's motion is premised on the idea that he would suffer unfair prejudice at trial if the SEC were permitted to introduce the August Documents because he "did not have an opportunity to investigate [them] through the discovery process." *Id.*[3] Ferrone argues that the "prejudice to defendant is apparent." [ECF No. 171, at 4.] But Ferrone has not identified any additional discovery that he would have taken if he had received the documents in a timely manner. He has not identified one additional interrogatory, one additional document request, or one additional deposition question that he would have served or asked if he had the documents sooner. His unsupported and undeveloped assertion of prejudice is not enough to merit barring

---

[1] The Court's order closing discovery on this date excepted the deposition of McClain, Jr. [ECF No. 64.]
[2] Even if Ferrone could assert Immunosyn's attorney-client privilege, it is debatable whether Immunosyn even has any residual attorney-client privilege over these documents. Immunosyn's corporate status was voided in March, 2010. [ECF No. 143, at 3.] Eight months later, in November, Immunosyn stopped making required periodic filings with the SEC. *Id.* In April, 2012, the Court entered a default against Immunosyn in this litigation. *Id.* If these facts establish that Immunosyn had suffered its corporate death, then its attorney-client privilege would not survive absent a compelling reason. *Official Comm. of Admin. Claimants ex rel. LTV Steel Co. v. Moran*, 802 F. Supp. 2d 947, 948-49 (N.D. Ill. 2011); *Edgewater Med. Ctr. v. Rogan*, 2010 WL 2711448, at *5 (N.D. Ill. July 6, 2010); *TAS Distrib. Co. v. Cummins Inc.*, 2009 WL 3255297, at *2 (C.D. Ill. Oct. 7, 2009).
[3] Ferrone does not assert that he would be prejudiced because he had inadequate time to review the documents before trial. Indeed, if the trial begins on the date currently scheduled, Ferrone will have had the August Documents for over two years.

these documents at trial because "[s]peculation is not enough" to establish actual prejudice. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 339 (N.D. Ill. 2005).

Ferrone also fails to explain how the SEC obtained an unfair advantage during discovery because it had access to the August Documents before he did. The SEC represents that the only discovery impacted by the documents was McClain, Jr.'s deposition. [ECF No. 161, at 13.] Ferrone has not disputed this assertion. Before the deposition began, the SEC provided Ferrone's counsel with the documents it was going to use during the deposition. After this production, Ferrone did not ask to reschedule the deposition because he needed more time to review the documents. Ferrone has not explained how the late production limited his counsel's questioning of McClain, Jr. during the deposition. And Ferrone did not seek to reopen the deposition at a later date to ask questions prompted by a more thorough review of the documents. Ferrone also has not described how the SEC's earlier possession of the documents gave it any advantage, much less an unfair one, during the deposition.

Moreover, Ferrone was not an innocent and helpless bystander limited to a passive role during the time Franczyk supposedly was conducting a privilege review of the August Documents. His counsel *knew* in April of 2013 that the SEC had served Ollendorf with a subpoena. [ECF No. 143-13, at 2.] His counsel *knew* in September of 2013 that the SEC had given the August Documents to Franczyk and not to Ferrone's counsel. [ECF No. 143-15, at 2.] Ferrone could have followed-up on the production of those documents in a number of ways and at any time. He could have followed up with Franczyk or the SEC about the documents. He could have filed a motion to compel the SEC to produce all the documents it obtained from Ollendorf. He could have served his own subpoena on Ollendorf. He could have filed a motion to extend discovery pending the privilege review. Even after the close of discovery, he could

have filed a motion to reopen discovery after he received the documents. *See Balschmiter v. TD Auto Fin. LLC*, 2015 WL 2451853, at *9 (E.D. Wis. May 21, 2015) (explaining that discovery can be reopened for good cause). But Ferrone did not take any of these steps.

The Court understands that in the midst of discovery, particularly discovery involving a large number of documents and parties or third-parties, sometimes things slip through the cracks. A simple chart identifying subpoenas that had been served on third parties and a checklist noting whether Ferrone had received copies of all the documents produced pursuant to those subpoenas would have gone a fair way to alert Ferrone and his counsel to the fact that they had not yet received the August Documents given to Franczyk for a privilege review.

Ferrone cannot sit on his hands for months and then demand the extreme remedy of barring evidence at trial. He is responsible for defending his own rights. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (finding that a party was not diligent during discovery when she knew of allegedly deficient discovery responses before the close of discovery but waited until after the close of discovery to file a motion to compel). A contrary determination would create a perverse incentive, encouraging parties to remain silent when they notice discovery misbehavior by their counterparts secure in the notion they can play "gotcha" months or years later. Ferrone is not entitled to a "do over" because he failed to protect his own rights during discovery. *See Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007).

Of course, the SEC does not come off smelling like a rose either. The SEC has admitted it made a mistake – "an oversight" – by not following up with Franczyk about his supposed privilege review for months and then identifying for use during McClain, Jr.'s deposition documents that had not yet been produced to all parties. It should have followed up much earlier on Franczyk's supposed privilege review of the August Documents, knowing that it had not

11

turned over those documents to Ferrone. It could have filed a motion seeking a determination on the privilege issue before the McClain, Jr. deposition if it was not getting cooperation from Franczyk. It could have asked that the documents be produced to all parties subject to a non-waiver or claw-back order under Federal Rule of Evidence 502 (as, for that matter, Ferrone could have done since he was privy to any privileged communications while he was CEO of Immunosyn). But the SEC's mistakes do not justify the sanction of preventing it from using the documents under the circumstances of this case.

The SEC also overstepped in responding to Ferrone's motion *in limine*. The SEC argues that Ferrone violated his duty to preserve and produce documents because he should have produced the communications contained in the August Documents himself. [ECF No. 161, at 10-11.] The SEC claims that this duty was triggered in 2009 when it issued investigative document subpoenas and took Ferrone's sworn investigative testimony. The SEC contends that Ferrone, at that early date, failed to produce thousands of documents including hundreds of emails that were in Ollendorff's production. *Id.* But the SEC has not identified any evidence that Ferrone either possessed the documents in 2009 when the duty to preserve evidence arguably was triggered or destroyed them in some impermissible manner before that date. The Court will not speculate as to what could have happened to any copies of the documents that at one time were or may have been in Ferrone's possession or control. And the SEC should not lightly make an unsupported assertion of serious discovery misconduct without a shred of supporting evidence.

For all of these reasons, despite the SEC's discovery lapse, Ferrone has not provided an adequate justification to bar the use at trial of the August Documents. Accordingly, his motion is denied.

### 3. The SEC's Motion *In Limine* No. 2

The SEC has asked the Court to rule that it can introduce into evidence at trial two strings of emails (with some redactions), one from October 2007 and one from November 2007. [ECF No. 142.] Both email strings involved Ferrone and both mentioned the FDA's clinical hold on SF-1019. This motion is related to the immediately preceding discussion because the email strings were both part of the August Documents produced by Ollendorf. Ferrone states in his response to this Motion that he opposes the SEC's motion "for the same reasons stated in defendant's motion to exclude . . . ." [ECF No. 160, at 1.] As described above, Ferrone's reasons do not justify excluding any of the August Documents from trial. Therefore, the SEC's motion is granted. The parties are instructed to confer over the SEC's proposed redactions. They should then bring any unresolvable issues to the Court's attention at or before the pre-trial conference or through appropriate motion practice.

## C. Ferrone's *Daubert* Motion To Restrict Testimony Of Dr. Peter Rheinstein

Ferrone has moved to exclude entirely or at least severely restrict the testimony of Dr. Peter Rheinstein under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). [ECF No. 149.] Dr. Rheinstein is a physician who the SEC has identified as an expert in the regulation of prescription drug development and marketing. Ferrone does not challenge Dr. Rheinstein's credentials. *Id.* at 1. Ferrone's main objections are that portions of Dr. Rheinstein's report, as the anticipated basis for Dr. Rheinstein's testimony, are irrelevant and constitute improper legal opinions. *Id.* He has a few additional objections that will be addressed as well.

Ferrone did not take Dr. Rheinstein's deposition. Therefore, the only information he and the Court have about the testimony Dr. Rheinstein might be asked to provide at trial is in Dr. Rheinstein's very long 28-page, 108-paragraph Rule 26(a)(2)(B) expert report. The Court

assumes that the SEC does not intend for Dr. Rheinstein to testify to everything in his report. That not only would put the jury to sleep but might render them comatose as well. The SEC, however, has chosen to keep its options open and it defends the relevance and admissibility of every word of Dr. Rheinstein's report. That makes the Court's job in ruling on Ferrone's motion *in limine* a bit more difficult and potentially unnecessary to the extent the Court must address testimony on aspects of Dr. Rheinstein's report that the SEC has no real intention of offering into evidence.

### 1. Relevance

"An expert's testimony qualifies as relevant under Rule 702 so long as it assists the jury in determining any fact at issue in the case." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014), *reh'g and suggestion for reh'g en banc denied* (Jan. 21, 2015). There are some straightforward examples of information in Dr. Rheinstein's report that do not satisfy this standard. For instance, in Section IV of his report, Dr. Rheinstein spends more than an entire single-spaced page listing "important events in the history of the FDA and Drug Regulation in the United States." [ECF No. 149-1, at pp. 6-7.] The first listed event dates back almost 200 years. *Id.* ¶ 18(a).[4] Why the jury needs this information, and why the SEC believes this information will provide the jurors "with important background to assist them in evaluating the allegations against Ferrone" is beyond the ken of this Court. [ECF No. 159, at 7]. Clearly, this historical information – while it may be interesting to some – is irrelevant to the facts in this case and the current law that governs it. *See In re Ocean Bank*, 481 F. Supp. 2d 892, 901 (N.D.

---

[4] This helpful piece of trivia reads as follows: "1820 – Eleven physicians meet in Washington, D.C., to establish the U.S. Pharmacopeia, the first compendium of standard drugs for the United States. These physicians recognized that establishing the identity of a drug is fundamental to understanding the effects of the drug and using it rationally."

Ill. 2007) (explaining that the history of the Fair Credit Reporting Act is "irrelevant to the current law that will govern this case").[5]

Likewise, the discussion in Section V of Dr. Rheinstein's report about veterinary biologics, which are not at issue in this case and which the United States Food and Drug Administration ("FDA") does not regulate, appears to be irrelevant. [ECF No. 149-1, ¶¶ 25, 26, 27.] And Dr. Rheinstein's belief that certain statements made by Ferrone, let alone his former co-defendants before the claims against him were severed, violate a law or regulation that is not at issue in this case also is irrelevant. *Id.* ¶ 79.

There also are easy examples of what is or at least may be relevant. Some of Dr. Rheinstein's statements in Section VI of his report, for example, about the IND process may be relevant to the jury's understanding of the significance or importance of the clinical hold placed on SF-1019. At the same time, however, the Court agrees with Ferrone that expert testimony about regulatory standards and industry standard of care that might be relevant in a product liability case generally is not relevant in this case. *Id.* ¶¶ 28, 29, 30, 31, 33. And, as Ferrone also points out, some of this testimony from Dr. Rheinstein may be unnecessary or cumulative of testimony from other witnesses, and some of it is just plain overkill.[6]

Relatedly, some testimony from Dr. Rheinstein about institutional review boards ("IRBs"), *id.* ¶¶ 34-36, may be relevant because the complaint alleges that Immunosyn issued a misleading press release that discussed studies being conducted with the approval of and under

---

[5] Another gem from Dr. Rheinstein's report guaranteed to enliven dinner table discussion somewhere, though not the jury in this case: "1912 – Congress enacts the Sherley Amendment to prohibit labeling medicines with false therapeutic claims intended to defraud the purchaser. The law overcame a Supreme Court ruling that the 1906 Food and Drugs Act did not outlaw false medical claims but only false and misleading statements about the ingredients of identity of a drug." [ECF No. 149-1, ¶ 18(d).]

[6] *E.g.*, "For products of animal origin, characterization of the production process should include the absence of known and potential human pathogens, (both adventitious and endogenous agents." *Id.* ¶ 28(b).

the supervision of an IRB. [ECF No. 1, ¶ 39.] So, a brief description of the purpose or role of an IRB could be helpful to the jury. But, again, some of the information in paragraphs 34 through 36 of Dr. Rheinstein's report concerning the role of an IRB seems irrelevant and untethered to any issue in this case other than as very deep background.[7] Likewise, some of his discussion of the so-called compassionate use exception or waiver [ECF No. 149-1, ¶¶ 48-52] potentially may be relevant because the SEC alleges misleading statements referencing compassionate use waivers appeared in a video presentation posted on Immunosyn's web site. [ECF No. 1, ¶ 38.] So, if that evidence comes in, then some information about what a compassionate use waiver is may be helpful.

Dr. Rheinstein's opinions about what Ferrone should have known and done, however, likely are not admissible or relevant, and neither is his belief that Argyll or Immunosyn "should have been aware" of something in a case in which negligence is not the standard. [ECF No. 149-1 ¶¶ 92, 93.] His descriptions of what information was publicly available on the FDA's website may or may not be relevant to Ferrone's argued good faith or recklessness depending upon the theory under which the SEC offers that evidence, what Ferrone is expected to say on the witness stand, and his theory of the case. *See, e.g., id.* ¶¶ 53-62, 82. Ferrone's wholesale attack on Dr. Rheinstein's anticipated testimony in this area, however, and the SEC's blanket defense of the same, is not very helpful in the abstract. Simply put, what and how much evidence about the above topics will be relevant or admissible at trial depends to a large extent on what other evidence comes in or is expected to come in, and the parties' theories of their respective cases.

---

[7] *See, e.g.,* "The IRB may only approve research for which there is a bona fide informed consent process for participants, for which the risks to subjects are balanced by potential benefits to society, and for which the selection of subjects presents a fair or just distribution of risks and benefits to eligible participants." [ECF No. 149-1, ¶ 34.]

A final illustration of this point may be helpful. The parties dispute how much evidence regarding Dr. Arthur Ericsson's misconduct and his disqualification by the FDA as an investigator is admissible in this case. This is a topic on which Dr. Rheinstein opines. *Id.* ¶¶ 91-101. It may well be that the fact that the FDA disqualified Dr. Ericsson as an investigator is relevant because that decision may have altered the prospects for lifting the clinical hold on SF-1019, thereby impacting the importance of the hold itself and the total mix of information in the market. The specific reasons for his disqualification, however, are almost certainly not relevant. Again, the Court is hampered in trying to define the contours of admissible evidence regarding Dr. Ericsson without more information about the context in which the subject of his disqualification will come up at trial.

There are a few legal principles that reinforce the Court's decision not to rule *in limine* about the relevancy of every line in Dr. Rheinstein's report. There is a general principle that evidentiary rulings related to relevance are best deferred until trial so that they can be resolved in the proper context. *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1055 (N.D. Ill. 2009). Further, wholesale objection on the grounds of relevance is difficult because "the Supreme Court has stated that there is a 'low threshold' for establishing that evidence is relevant." *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). And motions *in limine* to exclude evidence are only granted where that evidence is inadmissible "on all potential grounds." *Mason*, 631 F. Supp. 2d at 1055. Because the relevance of evidence often depends on what happens at trial, that standard is particularly difficult to meet when asserting a relevance objection. Finally, the principle of judicial economy supports this conclusion because the SEC probably will not attempt to elicit at trial everything or even close to everything in Dr. Rheinstein's report. For example, the SEC

only argues that "[b]rief testimony" about the matters discussed in Sections IV through XI of the report would be helpful to jurors. [ECF No. 159, at 7.]

## 2. Legal Opinions

Ferrone contends that large portions of Dr. Rheinstein's anticipated trial testimony constitute improper legal opinions. Ferrone is correct that an expert generally may not offer legal opinions. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). More specifically, an expert usually cannot testify about how a law should be interpreted or what it means. *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994); *Jones v. Union Pac. R.R. Co.*, 2015 WL 5252958, at *6 (N.D. Ill. Sept. 8, 2015); *Aleksic v. Clarity Servs., Inc.*, 2015 WL 4139711, at *6 (N.D. Ill. July 8, 2015); *United States v. Cohen*, 2012 WL 668478, at *1 (C.D. Ill. Feb. 28, 2012); *United States v. Cinergy Corp.*, 2009 WL 77680, at *1 (S.D. Ind. Jan. 9, 2009); *Haager v. Chicago Rail Link, LLC*, 232 F.R.D. 289, 294-95 (N.D. Ill. 2005); *United States v. Caputo*, 382 F. Supp. 2d 1045, 1054 (N.D. Ill. 2005). This principle applies to Dr. Rheinstein and to any attempts by him to interpret the FDA's regulations.

But the rule does not prohibit Dr. Rheinstein from providing relevant testimony about his understanding of and experience with the drug approval process, IRBs, compassionate use waivers, and so on. Moreover, Dr. Rheinstein may be permitted at trial to reference a regulation if necessary to explain his opinions or the bases for them, so long as he does not render legal opinions. Because the admissibility of Dr. Rheinstein's testimony in this respect depends largely on what testimony the SEC intends to elicit in this area, the issue is reserved until trial

### 3. Additional Objections

Ferrone raises a smattering of other objections to Dr. Rheinstein's report. Ferrone first notes at one point that the only foundation for the IND statistics referenced in Section VI is a citation to the FDA's website. Ferrone neither asserts that Dr. Rheinstein misstated the numbers as reported by the FDA nor argues that the numbers are unreliable. It is not clear therefore why, or even if, he believes this reliance on the FDA's website merits exclusion. Ferrone's failure to develop this argument means it need not be considered. *Green*, 2015 WL 1509776, at *5.

Ferrone has two objections to Section XII of Dr. Rheinstein's report. He asserts that, throughout that portion of the report, Dr. Rheinstein essentially functions as a summary witness. Ferrone's characterization is not accurate. Dr. Rheinstein does quote extensively from documents in that Section of his report. These quotations, however, appear to be included in the report to provide the necessary foundation for his opinions. If that is the reason Dr. Rheinstein includes these documents in his report and the reason the SEC may seek to elicit testimony about the documents quoted in his report, that is not necessarily improper. In fact, the Federal Rules of Civil Procedure require that Dr. Rheinstein's report include the basis for his opinions and all facts or data which he considered in forming them. FED. R. CIV. P. 26(a)(2)(B).

On the other hand, if the SEC simply intends to have Dr. Rheinstein summarize every piece of evidence that the SEC feels is important as part of a summary narrative characterized as a "regulatory status timeline from December 2006 through December 2008" [ECF No. 149-1, ¶¶ 63-101], that is not expert testimony, If, at trial, Dr. Rheinstein attempts to testify as though he were a summary witness rather than an expert, Ferrone may object at that time. But if Dr. Rheinstein needs to refer to certain documents to support his opinion(s), that would not be improper.

That leaves Dr. Rheinstein's assorted opinions, which are sprinkled throughout his report, and his "conclusions" listed at the end of his report. Ferrone considers some of Dr. Rheinstein's opinions to be nothing more than unsupported subjective impressions. Ferrone only identifies two paragraphs, 69 and 86, when mounting this argument. In both paragraphs, Dr. Rheinstein opines that the clinical hold would take several years to resolve. *Id.* ¶¶ 69, 86. This is not simply a conclusory assertion. In support of that opinion, Dr. Rheinstein reasons why he believes this would be the case. *Id.* In doing so, he clearly drew on his specialized knowledge of and experience with the clinical hold process. This is a far cry from talking "off the cuff" as Ferrone contends. [ECF No. 149, at 12.] The SEC contends that this testimony is relevant to helping the jury to understand the materiality of the information the SEC contends Ferrone did not disclose to investors. The Court agrees. Of course, it goes without saying that Dr. Rheinstein also will be subject to cross-examination about these opinions.

Ferrone's remaining objections attack Dr. Rheinstein's conclusions, which are listed in Section XIII of his report. [ECF No. 149-1, ¶¶ 102-108.] The Court already has addressed whether and to what extent Dr. Rheinstein can testify about information on the FDA's website, whether the IND had any chance of being approved, and how long it would take to lift the clinical hold. *Id.* ¶¶ 102, 103, 105. Dr. Rheinstein cannot testify about Argyll's, Immunosyn's, or Ferrone's actual state of mind. *Id.* ¶¶ 106, 107, 108. *Fife v. mPhase Techs., Inc.*, 2014 WL 2514565, at *5 (N.D. Ill. June 4, 2014). He also cannot summarily assert that Immunosyn or Argyll is responsible for failing to disclose the clinical hold. [ECF No. 149-1, ¶ 104.] That is for the jury to decide based upon the evidence.

Accordingly, for the reasons discussed above, Ferrone's *Daubert* motion is granted in part, denied in part, and reserved in part. To the extent more clarity or precision is required with

respect to the parameters of Dr. Rheinstein's testimony, the Court can further address those issues with counsel at the pre-trial conference.

## D. Ferrone's Motion *In Limine* To Exclude Testimony Of Drs. Hazelwood And Kanter

Ferrone has moved to exclude the testimony of Drs. Carlton Hazelwood and Peter Kanter. [ECF No. 148.] During 2006, 2007, and 2008, Dr. Hazelwood was the chairman of the Burzynski Research Institute's IRB ("BRI-IRB"). In this capacity, he approved Dr. Ericsson's request to conduct compassionate use treatments with SF-1019. Dr. Hazelwood explained in his deposition that he did not know about the clinical hold when he gave this approval and that he would not have done so had he known about it.

Ferrone first objects to Dr. Hazelwood's testimony as entirely irrelevant because Dr. Hazelwood and he never interacted. For that reason, much of Dr. Hazelwood's deposition is focused on communications and work with Dr. Ericsson and McClain, Sr. This is not enough, however, to make all of Dr. Hazelwood's potential testimony irrelevant. The complaint alleges that around October, 2007, Immunosyn posted on its website a video of a presentation given by Ferrone and McClain, Sr. [ECF No. 1, ¶ 38.] In that video, McClain, Sr. referenced the BRI-IRB's approval of Dr. Ericsson, stating that "[c]ompassionate use waivers have already been issued by the institutional review board of the FDA in Houston, Texas for the use of SF-1019." *Id.*; [ECF No. 163-12, at 12.] Immunosyn also issued a press release the following month in which it talked about the study approved by BRI-IRB and touted "extraordinary" results. *Id.* at 6-7. Finally, Immunosyn's Form 10-K mentions "a limited feasibility clinical study of SF-1019," which seems to refer to the BRI-IRB-approved research. [ECF No. 163-9, at 5.]

The SEC alleges that these statements were materially false and misleading. The jury cannot determine whether the statements were false and misleading unless it knows the actual

facts about the study and BRI-IRB's approval. The jury also cannot determine whether the statements were material without knowing the total mix of information related to these topics. Dr. Hazelwood, as the chairman of BRI-IRB, potentially can offer relevant testimony as to these facts. This does not give Dr. Hazelwood *carte blanche* to delve into irrelevant topics, such as the details of Dr. Ericsson's misconduct. Ferrone's counsel may object if Dr. Hazelwood's testimony veers into such territory or before he takes the stand if the issue can be framed properly. Again, however, the admissibility of some of this testimony depends upon the other evidence in the case at the time it is offered. The Court also can, if necessary, further address the boundaries of permissible testimony in this area at the pretrial conference.

Ferrone's second objection is that Dr. Hazelwood's testimony would be unfairly prejudicial, a waste of time, and confusing if he essentially confesses to forming a criminal conspiracy with Dr. Ericsson. This contention is not an accurate characterization of Dr. Hazelwood's deposition testimony, in which he claimed he did not know about the clinical hold and would not have approved Dr. Ericsson's study if he did. Regardless, Ferrone has not explained how lumping Dr. Hazelwood in with Dr. Ericsson would unfairly prejudice Ferrone if Dr. Hazelwood's testimony is properly circumscribed. If there are timing or confusion issues at trial, Ferrone's counsel should object at that time. Again, if the Court is misperceiving this objection, counsel should explain it at the pretrial conference.

Ferrone's final objection is that Dr. Hazelwood should not be allowed to offer expert testimony because he was not disclosed as an expert. The SEC does not contend otherwise. Therefore, Dr. Hazelwood's cannot testify at trial about what "expert" opinions he holds and how he now understands the regulatory and drug development. He is a fact witness and he is not precluded from testifying about what he knew, learned or understood, so long as that testimony

is otherwise relevant. Such testimony would be factual, and, therefore, not invade the province of experts. Again, Ferrone's counsel should object at trial if he believes Dr. Hazelwood is crossing or about to cross this line. If a limiting jury instruction is necessary on this issue, the Court will consider any suggestions either party has along those lines. And if the Court is missing something, counsel should clarify the matter at the pretrial conference.

The other doctor, Dr. Kanter, worked for a company named Iso-Tex. Argyll hired Iso-Tex to help remedy the deficiencies identified in the FDA's clinical hold letter. In this arrangement, Dr. Kanter reviewed the clinical hold letter, evaluated the seriousness of the deficiencies, and discussed them with, among others, Miceli, McClain, Jr., and one of Argyll's investigators. He did not discuss them with Ferrone. Dr. Kanter also conducted autopsies on animals injected with SF-1019 and formulated reports based on these autopsies.

Ferrone objects to Dr. Kanter's testimony as expert testimony for the same reason that he did so with respect to Dr. Hazelwood. Again, the SEC concedes that Dr. Kanter is not an expert witness. The Court's ruling with respect to this matter is the same as it was with respect to Dr. Hazelwood.

Ferrone's other objection is that Dr. Kanter's testimony is not relevant.[8] He asserts that Dr. Kanter's communications about the clinical hold letter are irrelevant because he did not communicate with Ferrone. Ferrone then contends in a conclusory manner that the rest of Dr. Kanter's testimony is irrelevant. [ECF No. 148, at 5.]

The SEC offers three theories of relevance in response. First, the SEC argues that Dr. Kanter's testimony about the status of the clinical hold and the efforts to lift it are relevant to whether some of the allegedly false and misleading statements were actually false and

---

[8] Ferrone objects under Federal Rules of Evidence 401 and 403. [ECF No. 148, at 5.] But the only reason he provides for this objection is that Dr. Kanter's testimony is irrelevant.

misleading. The SEC is correct because some of the statements describe the status of SF-1019's development. For instance, during McClain, Sr. and Ferrone's video presentation, McClain Sr. stated, "[W]e have initiated the process for regulatory approval in several countries and preparations for clinical trials are underway in both the US and Europe." [ECF No. 1, ¶ 38.] Whether such a statement was misleading cannot be determined without knowing the actual progress of the "process" and "preparations."

The SEC next argues that Dr. Kanter's testimony is relevant because it goes to recklessness. Dr. Kanter will establish, the SEC contends, that the clinical hold deficiencies were very significant and that knowledge of the problems was pervasive within Argyll and Immunosyn. If proven, these facts may make it more likely that Ferrone was reckless in not knowing about or disclosing the problems. Moreover, Immunosyn had a contractual right to require Argyll to provide periodic updates with supporting documentation "with respect to material facts regarding current strategies and developments on SF-1019 . . . ." Trial Exhibit 65. The SEC argues that Ferrone may have been reckless in failing to assert this legal entitlement to find out material facts known within Argyll. Ferrone responds by citing evidence that the people at Argyll kept him in the dark. But this does not make the SEC's evidence irrelevant. Ferrone's objection goes to weight and it creates a factual question for the jury.

Because the Court agrees with these first two theories of relevance, it need not address the SEC's contention that Dr. Kanter's testimony is relevant as circumstantial evidence that Ferrone knew what Dr. Kanter was saying to others. But, at first blush, the Court agrees with Ferrone that this theory appears to be a stretch.

**E. The SEC's Motion *In Limine* No. 3 To Preclude Ferrone From Offering Evidence Or Argument About Investor Reliance**

The SEC has moved to bar Ferrone from introducing evidence or making argument about investor or broker reliance on the misstatements at issue in this case. [ECF No. 144.] The evidence to be precluded includes evidence that investors or brokers never heard, read, or relied upon the alleged misstatements. *Id.* at 1. The argument to be precluded is that the misstatements were not material because the investors did not discover them or did not rely on them. *Id.* The SEC conceded in its initial brief that such evidence may be admitted for background or foundation purposes. *Id.* More importantly, in its reply brief, the SEC conceded that if an investor witness testifies about what would have been important to her when she purchased Immunosyn stock, Ferrone may cross-examine that witness about her contemporaneous conduct. [ECF No. 168, at 2.] The SEC also conceded that Ferrone may argue that an investor witness's contemporaneous conduct contradicts her assertion that some information was material. *Id.* at 3.

In his response brief (that is, before the SEC's latter two concessions), Ferrone conceded that he would not argue either that reliance was an element of any claim or that any investor's action or inaction proves that a statement was not material. [ECF No. 162, at 1.] Ferrone contended, though, that he must be allowed to thoroughly cross-examine any investor witness who testifies about materiality. Specifically, Ferrone stated that he should be able to ask her about what contemporaneous actions she took and her decision-making process. *Id.* at 1-3. Such questioning would allow Ferrone to try to discredit the investor witness's assertions about materiality. *Id.* at 2.

In light of the concessions in the SEC's reply brief, it appears that the parties now largely agree as to the permissible scope of evidence and argument regarding investor reliance. [ECF No. 168, at 4.] The SEC's motion shall be granted in part and denied to the extent of the above

discussed concessions. If issues arise at trial concerning particular questions, lines of inquiry, or arguments, the Court will address them at that time.

**F. The SEC's Motion *In Limine* No. 1 To Preclude Defendant From Offering Evidence Of Or Argument At Trial That He Reasonably Relied On Advice Of Counsel Or The Involvement Of Lawyers Or Other Professionals**

The SEC has moved to preclude Ferrone "from offering evidence or argument at trial that [Ferrone] reasonably relied on advice of counsel or the involvement of lawyers or other professionals in preparing Immunosyn's public statements and SEC filings." [ECF No. 140, at 1.] The SEC contends that reliance on advice of counsel is an affirmative defense that a defendant cannot raise without establishing that "he (1) made complete disclosure to counsel, (2) sought advice as to the legality of his conduct, (3) received advice that his conduct was legal, and (4) relied on that advice in good faith." *SEC v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001) (citing *Markowski v. SEC*, 34 F.3d 99, 105 (2nd Cir. 1994)). According to the SEC, Ferrone cannot establish these four elements of the reliance on advice of counsel defense, so any evidence about the involvement of lawyers or other professionals in the process by which Immunosyn made its various public disclosures ultimately is irrelevant and unduly prejudicial to the SEC, and should be barred pursuant to Federal Rules of Evidence 401 and 403.

Ferrone does not argue that he can satisfy the elements of a classic reliance on advice of counsel defense. In fact, he says he is not asserting this defense. Therefore, evidence and argument relevant only to this defense is barred under Federal Rules of Evidence 401 and 403.

Ferrone counters, though, that he still should be able to put on evidence and make arguments that are relevant to his good faith. He contends that he acted in good faith because, among other reasons, he believed that Immunosyn's public filings and releases had been reviewed and approved by lawyers and other professionals working for the company who would

26

have told him if they believed Immunosyn needed to disclose the clinical hold on SF-1019 in those filings or releases. [ECF No. 158, at 1.] He argues that this evidence is relevant to rebut scienter as an element of the SEC's case. Though he acknowledges that he did not rely on any advice of counsel *per se*, he apparently wants to argue, in effect, that the participation of others, including lawyers and other professionals, in reviewing (and, according to Ferrone, approving) Immunosyn's public disclosures gave him comfort that they were not materially false or misleading. If he was wrong in that belief, he seemingly contends it was not because he acted with intent to defraud investors or in reckless disregard of the truth.

The SEC says that Ferrone's "good faith" defense is nothing more than a back door way of arguing reliance on advice of counsel. As the SEC notes, courts frequently refer to the advice of counsel defense as "good faith reliance on the advice of counsel." SEC's Reply, ECF No. 169, at 2 (citing *SEC v. Leffers,* 289 Fed. Appx. 449, 450 (2d Cir. 2008); *Enterprise Solutions,* 142 F. Supp. 2d at 576; *SEC v. Battenberg,* 2011 WL 3472619, at *5 (E.D. Mich. Aug. 9, 2011)). But good faith as a defense to a case in which a defendant is alleged to have acted with fraudulent intent or recklessly can take other forms as well. *See SEC v. Shanahan*, 646 F.3d 536 (8th Cir. 2011); *SEC v. Rubera.* 350 F.3d 1084 (9th Cir. 2003); *see also Gebhart v. SEC*, 255 Fed. Appx. 254 (9th Cir. 2007); *SEC v. Quan*, 2013 WL 5566252 (D. Minn. Oct. 8, 2013); *Branch-Hess Vending Servs. Employees' Pension Trust v. Guebert*, 751 F. Supp. 1333 (C.D. Ill. 1990).

The SEC has the burden to establish scienter for its claims under Section 10(b) and Rule 10b-5. *Aaron v. SEC*, 446 U.S. 680, 691 (1980). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). In the Seventh Circuit, both knowledge and recklessness satisfy the scienter

requirement. *Rossy v. Merge Healthcare Inc.*, 2015 WL 1208656, at *3 (N.D. Ill. Mar. 12, 2015); *City of Sterling Heights Gen. Employees' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, at *16 (N.D. Ill. Feb. 13, 2013).[9] But the quantum of proof required to establish a defendant was reckless is quite high in the Seventh Circuit. Recklessness "should be viewed as the functional equivalent of intent" because it requires "something more egregious than even 'white heart/empty head' good faith." *Sundstrand*, 553 F.2d at 1045; *see also Ziemack v. Centel Corp.*, 856 F. Supp. 430, 436 (N.D. Ill. 1994); *SEC v. Texas Int'l Co.*, 498 F. Supp. 1231, 1253 (N.D. Ill. 1980). "The Seventh Circuit has adopted the following definition of recklessness in the context of securities fraud: 'a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *SEC v. Kelly*, 545 F. Supp. 2d 808, 811-12 (N.D. Ill. 2008) (quoting *Sundstrand*, 553 F.2d at 1045 ).

At the same time, the Seventh Circuit also recognizes that someone who deliberately closes his or her eyes to the facts or the steps by which he or she would discover the facts does not have a "white heart/empty head." Indeed, the Seventh Circuit has clearly stated, "[d]eliberate ignorance . . . is a form of knowledge." *SEC v. Jakubowski,* 150 F.3d 675, 681-682 (7th Cir. 1998); *Kelly*, 545 F. Supp. 2d at 811-812. In the Seventh Circuit, however, honest "white heart/empty head" good faith is inconsistent with a subjectively reckless state of mind.[10]

This is consistent with the Supreme Court's clear directive that actions taken in good faith do not violate Section 10(b). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976)

---

[9] The Supreme Court has not addressed whether recklessness satisfies the scienter requirement. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011).

[10] This is exactly how the Ninth Circuit reads the Seventh Circuit's jurisprudence on scienter after *Sundstrand*. *SEC v. Platforms Wireless Int'l Corp.,* 617 F.3d 1072, 1092-94 (9th Cir. 2010); *SEC v. Rubera*, 350 F.3d 1084, 1094-95 (9th Cir. 2003).

("There is no indication that Congress intended anyone to be made liable for such practices unless he acted other than in good faith."); *see also Gebhart v. SEC*, 595 F.3d 1034, 1042 (9th Cir. 2010); *In re Ikon Office Sols., Inc.*, 277 F.3d 658, 670 (3d Cir. 2002); *Backman v. Polaroid Corp.*, 893 F.2d 1405, 1418 (1st Cir. 1990); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117-1118 (9th Cir. 1989); *Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1340 (9th Cir. 1980); *Rolf*, 570 F.2d at 46 n.15; *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973); *R2 Investments v. Phillips*, 2003 WL 22862762, at *7 (N.D. Tex. Dec. 3, 2003) *aff'd sub nom. R2 Investments LDC v. Phillips*, 401 F.3d 638 (5th Cir. 2005); *Mathews v. Centex Telemanagement, Inc.*, 1994 WL 269374, at*7 (N.D. Cal. June 8, 1994); *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1242 (S.D.N.Y. 1992); *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1491 (N.D. Cal. 1992) *aff'd sub nom. In re VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993); *Chin v. Shiu*, No. 87 C 9782, 1990 WL 70520, at *5 (N.D. Ill. May 15, 1990); *Selmier v. E.F. Hutton & Co.*, 1981 WL 1711, at *4 (N.D. Ill. Nov. 17, 1981).

The SEC cites a host of cases dealing with the reliance on advice of counsel defense but only one case, *SEC v. Tourre*, 950 F. Supp. 2d 666 (S.D. N.Y. 2013), in which a trial court ruled before trial that a defendant could not introduce evidence about the involvement of lawyers and others in putting together transaction and public disclosure documents when the defendant admitted he could not establish he actually relied on the advice of counsel but still maintained he acted in good faith. The facts in *Tourre* are somewhat different than the facts in this case; Mr. Tourre was a lower level participant in the events in question while Ferrone was the CEO of Immunosyn. Also, in *Tourre*, while the trial judge said the defense could not focus on the presence and participation of lawyers, she did not preclude the defendant from mentioning that lawyers were involved in the process of putting together transaction and disclosure documents.

And she reserved the ability to give the jury a limiting instruction if that were deemed necessary at trial. So, *Tourre* is not on all fours with this case and it does not bear the weight the SEC places on it.

Further, many of the cases the SEC cites on the merits of whether a defendant was or could be successful in establishing a reliance on advice of counsel defense were decided either after a full trial (*Enterprises Solutions., Inc.*, 142 F. Supp. 2d at 565-66; *United States v. Erickson*, 601 F.2d 296, 298 (7th Cir. 1979)), on a motion for summary judgment (*SEC v. Meltzer*, 440 F. Supp. 2d 179, 182 (E.D.N.Y. 2006)), or on a motion to dismiss (*In re Bank Of Am. Corp. Sec., Derivative, And Employee Ret. Income Sec. Act (ERISA) Litig.*, 2011 WL 3211472, at *1 (S.D.N.Y. July 29, 2011)). These cases also are not persuasive authority for the SEC's proposition that the Court should bar evidence wholesale before trial.

In addition, it is not clear from the parties' briefs exactly what evidence Ferrone wants (or will be able) to introduce on the issue of his asserted good faith and how far he wishes to go down the road of arguing what properly might be characterized as classic reliance on advice of counsel compared to good faith in other respects. For example, it is not clear how Ferrone intends to establish that any lawyer "approved" the language used in Immunosyn's public filings and disclosures given that he did not list the company's SEC counsel, Sara Hewitt, in his Rule 26(a) disclosures or as a trial witness, to say nothing of whether the concept of "approval" approaches closely the notion of reliance on advice of counsel that Ferrone says he will eschew.

Put simply, the SEC's motion does not fully account for the issue of good faith and the ways in which it might be raised legitimately by Ferrone to contest the scienter element of the SEC's case. Further, Ferrone needs to articulate more clearly what evidence he wants to

30

introduce in support of his asserted good faith and how it differs from the evidence concerning the reliance on advice of counsel defense that he says he is not raising.

For all of these reasons, the Court believes the more prudent path is to deny the SEC's Motion *in Limine* No. 1 without prejudice and work with counsel both at the pretrial conference and at trial to zero in on what evidence will be admitted (and what will not be admitted) on the question of Ferrone's good faith. If the Court is going to err (and it does not think it is doing so at this point), it would prefer to err on the side of allowing the jury to decide the case rather than gutting Ferrone's defense out of the box. As noted at the outset of this Opinion, a motion *in limine* should be granted only when the evidence is inadmissible for any purpose, a high standard. *Thomas v.* Sheahan, 514 F. Supp. 2d at 1087. The Court has more tools at its disposal to control the evidence at trial than it has when ruling on a motion *in limine*. Among other things, for example, the Court can consider whether an instruction along the lines discussed in both *Tourre* and *SEC v. Stoker*, No. 11-CIV-7388 (JSR) (S.D.N.Y.), might be necessary or appropriate depending upon how the evidence comes in. *See* ECF No. 203-1, at 6.

Accordingly, the SEC's Motion *in Limine* No. 1 [ECF No. 140] is granted in part and denied in part.

## IV. CONCLUSION

For the reasons stated above, the Court orders as follows.

(1) Ferrone's Motion *in Limine* to Exclude as Trial Exhibits Privilege-Asserted Documents Produced after Discovery Cut-Off [ECF No. 147] is denied.

(2) Ferrone's Motion *in Limine* to Exclude Evidence Concerning McClain, Sr.'s Alleged Separate Fraud on the Texas Clinic Patients [ECF No. 146] is granted.

(3) Ferrone's *Daubert* Motion to Restrict Testimony of Dr. Peter Rheinstein [ECF No. 149] is granted in part, denied in part, and reserved in part.

(4) Ferrone's Motion *in Limine* to Exclude Testimony of Drs. Hazelwood and Kanter [ECF No. 148] is granted in part, denied in part, and reserved in part.

(5) The SEC's Motion *in Limine* No. 2 for a Pre-Trial Ruling That the SEC Can Introduce into Evidence Two Documents Notwithstanding Flawed Privilege Claims [ECF No. 142] is granted.

(6) The SEC's Motion *in Limine* No. 3 to Preclude Ferrone from Offering Evidence or Argument about Investor Reliance [ECF No. 144] is granted in part and denied in part.

(7) The SEC's Motion *in Limine* No. 1 to Preclude Defendant from Offering Evidence of or Argument at Trial That He Reasonably Relied on Advice of Counsel Or the Involvement of Lawyers Or Other Professionals [ECF No. 140] is denied without prejudice.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 22, 2016