**Jury Instructions**

**1:11-cv-5223**

**Securities and Exchange Commission v. Ferrone et al**



# FILED

APR **2 9** 2016

MAGISTRATE JUDGE
JEFFREY T. GILBERT

Members of the jury, you have seen and heard the evidence and the lawyers' arguments. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow my instructions about the law, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

You must perform both of your duties fairly and impartially.

Nothing I say now, and nothing I said or did during the trial, is, or was, meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

During this trial, I have asked questions of witnesses. Do not assume that, because I asked questions, I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

As you know, the Plaintiff in this case is the Securities and Exchange Commission, which I will refer to as the SEC, and the Defendant in this case is Stephen Ferrone, who I will refer to as Mr. Ferrone. The SEC is an agency of the federal government. Mr. Ferrone is a private citizen.

All parties are equal before the law. And all parties in this case are entitled to the same fair consideration.

In reaching your verdict you must consider only the evidence. The evidence in this case consists of the testimony of the witnesses, the exhibits admitted in evidence, and the stipulations already read to you.

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question, regardless of who introduced the evidence.

When I first instructed you, I told you about the phrases "direct evidence" and "circumstantial evidence." I will say a few words about these phrases to remind you what they mean.

Direct evidence is proof that does not require an inference. An example of direct evidence is a witness's testimony about what he or she personally saw, did, or heard. In other words, it is the testimony of someone who claims to have personal knowledge of a fact. For instance, if a witness were to say, "I was outside yesterday, and I saw it raining," that would be direct evidence that it was raining yesterday.

Circumstantial evidence, on the other hand, is proof of a fact, or a series of facts, that tends to show that some other fact is true. For instance, if a witness were to say, "I was standing in the lobby of my apartment building yesterday, and I saw a woman enter the building with a wet umbrella in her hand," that would be circumstantial evidence that it was raining yesterday.

In reaching your verdict, you must consider all the evidence, both direct and circumstantial, in the case. The law makes no distinction between the weight to be given to direct or circumstantial evidence. It is the responsibility of you, the jury, to decide how much weight to give any evidence in the case.

As I just stated, you are to consider only the evidence in this case when reaching your verdict. However, you should consider the evidence in light of your own observations in life. Further, in weighing the evidence, you should use your common sense.

One of the important ways that you use common sense in everyday life is by drawing inferences. That is, you often look at one fact and conclude from it that another fact exists. Here is an example. Imagine that you are driving on the highway, and you pass a car that is stopped on the shoulder of the road. You see that there is a tow truck in front of the car, and that the tow truck driver is hooking the car up to the tow truck. From these facts, you may reasonably infer the car being towed cannot be operated safely at that time. You might draw this reasonable inference even though no one has actually told you whether the car can operate safely. That may not be the only inference that could be drawn from the observed scene, but it is one reasonable inference that could be drawn.

When reaching your verdict, you are allowed to make such inferences by drawing from your observations in life and using your common sense. But any inference you make must be reasonable and must be based on the evidence in the case.

As described previously, the evidence in this case consists of the testimony of the witnesses, the exhibits admitted in evidence, and the stipulations already read to you.

I want to tell you a few things that are not evidence. This is not an exhaustive list of all that is not evidence. Rather, at this time, I will only mention three things that are not evidence.

First, if I told you to disregard any testimony or exhibits, or if I struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you saw or heard outside the courtroom is not evidence and must be entirely disregarded.

Third, nothing said by the lawyers is evidence. What the lawyers said during opening statements and closing arguments is not evidence. What the lawyers said when objecting is not evidence. And all other comments that the lawyers made during the trial are not evidence.

Because these three things are not evidence, you must not consider them in reaching your verdict. As I sated earlier, in reaching your verdict, you must consider only the evidence.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than each juror's own recollection or impression of the evidence.

During the course of this trial, I instructed you that I admitted certain evidence for a limited purpose. You must consider that evidence only for the limited purpose for which I admitted it. You must not consider it for any other purpose.

Certain documents have been admitted into evidence in this case that contain portions that are blacked out, or "redacted." These redactions occurred because the Court and the parties determined that it was not appropriate to introduce those portions of the documents into evidence.

You must not consider the redacted portions of these documents for any reason. You should consider the unredacted portions of any redacted documents just as you would any other documentary evidence.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- the witness's age;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

During the trial, certain testimony was presented to you by the reading of depositions and the playing of a video deposition. This deposition testimony is entitled to the same consideration that you would have given it had the witnesses appeared and testified here in court. That means the deposition testimony should be judged, insofar as possible, in the same way as you would have judged it if the witnesses had been present and testified from the witness stand.

You may consider statements given by a party or a witness under oath before trial as evidence of the truth of what he or she said in the earlier statement, as well as in deciding what weight to give his or her testimony.

In considering a prior inconsistent statement, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

Evaluating the testimony of witnesses is not just a mathematical exercise. You are not required to find that a fact does or does not exist just because more witnesses testified that it does or does not exist. It is your responsibility, and yours alone, to decide what weight to give each witness's testimony.

The law does not require a party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require a party to present as exhibits all papers and things mentioned during this trial.

Certain charts, graphs, timelines, and PowerPoint slides have been shown to you. These visual aids were used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

Exhibits 205 and 206 are in evidence.

This case involves three claims, which I soon will describe to you in more detail.

You must give separate consideration to each claim in this case.

Before I instruct you on the specific claims involved in this case, I want to tell you about the standard of proof that applies to all of the claims.

This is a civil case. In a civil case, the plaintiff has the burden of proving its case by what is called "a preponderance of the evidence." The preponderance of the evidence standard is satisfied if, after considering all of the evidence in the case, you are persuaded that something is more probably true than not true.

When I say that a party must "prove," "show," or "establish" something, I am referring to the preponderance of the evidence standard. I also am referring to that standard whenever I use phrases such as "if you find" and "if you decide."

The SEC alleges three claims against Mr. Ferrone.

Mr. Ferrone denies each and every claim against him.

I will now explain to you what the SEC must prove in order to prevail on each of its claims.

### Claim I: Section 10(b) of the Exchange Act and Rule 10b-5

The SEC's first claim is that Mr. Ferrone violated Section 10(b) of the Exchange Act and Rule 10b-5 by making untrue statements of material fact and/or omitting to state material facts in connection with the purchase or sale of a security.

To prove that Mr. Ferrone violated Section 10(b) and Rule 10b-5, the SEC must prove by a preponderance of the evidence each of the following four elements.

*First*, the SEC must prove that Mr. Ferrone directly or indirectly did one or more of the following fraudulent acts:

- employed a device, scheme, or artifice to defraud;

- made an untrue statement of a material fact or omitted to state a material fact necessary in order to make a statement made, in light of the circumstances under which it was made, not misleading; or

- engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

*Second*, the SEC must prove that Mr. Ferrone acted knowingly or with reckless disregard for the truth.

*Third*, the SEC must prove that Mr. Ferrone's conduct occurred in connection with the purchase or sale of a security.

*Fourth*, the SEC must prove that Mr. Ferrone used or caused to be used the mails or the means and instrumentalities of interstate commerce, including a facility of a national securities exchange.

If you find that the SEC has proven each of these four elements by a preponderance of the evidence, then your verdict should be in favor of the SEC on this claim. If, on the other

hand, you find that the SEC has failed to prove any of these elements by a preponderance of the evidence, then your verdict should be in favor of Mr. Ferrone on this claim.

I will now explain some of these concepts to you in more detail.

### First Element: Materially Fraudulent Acts

A device, scheme, or artifice to defraud is a plan for the accomplishment of any objective. Fraud is a general term that embraces all ingenious efforts and means that individuals devise to take advantage of others. As previously described, the law which Mr. Ferrone is alleged to have violated prohibits all kinds of manipulative and deceptive acts.

To prove that Mr. Ferrone employed a device, scheme, or artifice to defraud, the SEC may prove that Mr. Ferrone has engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of a scheme. It is not enough that a transaction in which Mr. Ferrone was involved had a deceptive purpose and effect; Mr. Ferrone's own conduct that contributed to the transaction or overall scheme must have had a deceptive purpose. A device, scheme or artifice to defraud element may be satisfied by making material misrepresentations or omissions, as described below.

The SEC also can prove that Mr. Ferrone committed a fraudulent act by showing that he made an untrue statement of a material fact or omitted to state a material fact necessary in order to make a statement made, in light of the circumstances under which it was made, not misleading. The SEC need not prove that Mr. Ferrone personally made the misrepresentation of a material fact or that he personally omitted a material fact. It is sufficient if the SEC establishes that Mr. Ferrone caused the statement to be made or the fact to be omitted. One of the ways the SEC can prove that Mr. Ferrone caused a statement to be made is by showing that he had

22

ultimate authority over the statement, including its content and whether and how to communicate it.

The SEC must prove that any misrepresentation was untrue at the time that it was made, and that any omission made another statement misleading at the time that the omission occurred.

The SEC must prove that any misrepresentation or omission involved a fact that was material. To show that a stated or omitted fact is "material," the SEC must prove that there is a substantial likelihood that a reasonable investor would consider the fact important in making an investment decision and would view the fact as having significantly altered the total mix of information made available. You must decide whether something was material based on the circumstances that existed at the time of the statement or omission.

The SEC need not prove that Mr. Ferrone made more than one material misstatement or omission. The SEC also need not prove that any particular purchaser or seller of securities actually relied on any alleged material misrepresentations or omissions made by Mr. Ferrone.

### *Second Element: State of Mind*

As I stated earlier, the second element of this claim requires that the SEC prove Mr. Ferrone acted "knowingly" or with "reckless disregard for the truth." This is sometimes referred to as the required state of mind, or "scienter." It is not enough to show that Mr. Ferrone acted accidentally, merely made a mistake, or engaged in negligent conduct. Rather, the SEC must prove that Mr. Ferrone acted with a mental state embracing intent to deceive, manipulate, or defraud.

To act "knowingly" means to act intentionally and deliberately, rather than mistakenly or inadvertently.

To act with "reckless disregard for the truth" means to engage in highly unreasonable conduct that involves an extreme departure from the standards of ordinary care and presents a risk that either is known to a defendant or is so obvious that a defendant must be aware of it.

### *Third Element: In Connection with the Purchase or Sale of a Security*

As I stated earlier, the third element of this claim requires that the SEC prove that Mr. Ferrone's conduct occurred in connection with the sale or purchase of a security. The "in connection with" requirement is satisfied if you find that there was any connection or relation between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent conduct may be in connection with the sale or purchase of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.

### *Fourth Element: Interstate Commerce*

As I stated earlier, the fourth element of this claim requires that the SEC prove that Mr. Ferrone, in connection with the allegedly fraudulent conduct, used or caused to be used the mails or the means and instrumentalities of interstate commerce, including a facility of a national securities exchange.

24

You have heard testimony and seen exhibits concerning whether lawyers received or reviewed Immunosyn's public filings and press releases before they were filed or issued. Mr. Ferrone is not asserting as a defense that he requested, received, or relied on specific advice provided by lawyers about Immunosyn's public filings or press releases. Therefore, reliance on advice provided by lawyers is not a defense in this case. Evidence that lawyers may have received or reviewed documents was admitted only for the effect, if any, it may have had on Mr. Ferrone's state of mind, that is whether Mr. Ferrone did or did not knowingly or recklessly cause false statements or omissions of material fact to be made, as I have just defined those terms for you.

### Claim II: Rule 13a-14 of the Exchange Act

The SEC's second claim is that Mr. Ferrone violated Rule 13-a-14 of the Exchange Act. This rule requires the principal executive officer of a public company to provide certain truthful certifications in connection with a company's annual and quarterly reports filed with the SEC.

The certifications at issue in this case are contained in some of Immunosyn's annual reports on Forms 10-K and quarterly reports on Forms 10-Q. The Forms 10-K at issue are those for 2007 and 2008 (which were filed in 2008 and 2009, respectively). The Forms 10-Q at issue are those for the third 2007 fiscal quarter, the second and third 2008 fiscal quarters, and the second and third 2009 fiscal quarters. All of these Forms 10-K and Forms 10-Q were furnished to the SEC with certifications by Mr. Ferrone, as president and CEO of Immunosyn.

There are two certifications in these Forms 10-K and Forms 10-Q that the SEC alleges were false or misleading. First, Mr. Ferrone certified in these forms that, based on his own knowledge, the reports did not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made not misleading. Second, Mr. Ferrone certified in these forms that, based on his own knowledge, the financial statements and other financial information included in the reports fairly presented in all material respects Immunosyn's financial condition, results of operations, and cash flows.

You should consider each statement in the certifications that the SEC alleges was false or misleading in order to determine whether Mr. Ferrone violated Rule 13a-14.

To prove a violation of Rule 13-a-14 of the Exchange Act, the SEC must prove by a preponderance of the evidence each of the following two elements.

*First*, the SEC must prove that Mr. Ferrone filed or caused to be filed the certification.

*Second*, the SEC must prove that the certification was false or misleading.

26

If you find that the SEC has proven each of these two elements by a preponderance of the evidence, then your verdict should be in favor of the SEC on this claim. If, on the other hand, you find that the SEC has failed to prove either of these elements by a preponderance of the evidence, then your verdict should be in favor of Mr. Ferrone on this claim.

## Claim III: Section 13(a) of the Exchange Act
## and Rules 12b-20, 13a-1, 13a-11, and 13a-13

The SEC's third claim is that Mr. Ferrone aided and abetted violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13. These provisions require public reporting companies to file with the SEC annual reports on Forms 10-K, quarterly reports on Forms 10-Q, and current reports on Forms 8-K. These provisions also require that the reports include statements providing certain information. Finally, these provisions require that the reports be factually accurate, and that the reports not omit material information necessary to make the required statements, in light of the circumstances under which they are made, not misleading. These provisions may be violated by aiding and abetting a company's filing of false annual, quarterly, and current reports with the SEC.

To prove that Mr. Ferrone violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13, the SEC must prove by a preponderance of the evidence each of the following three elements.

*First*, the SEC must prove that Immunosyn filed an annual, quarterly, or current report with the SEC that contained a materially misleading statement or omission.

*Second*, the SEC must prove that Mr. Ferrone generally was aware or knew that his actions were part of an overall course of conduct that was improper or illegal.

*Third*, the SEC must prove that Mr. Ferrone substantially assisted Immunosyn's filing of a materially misleading report.

If you find that the SEC has proven each of these three elements by a preponderance of the evidence, then your verdict should be in favor of SEC on this claim. If, on the other hand, you find that the SEC has failed to prove any of these elements by a preponderance of the evidence, then your verdict should be in favor of Mr. Ferrone on this claim.

I will now explain some of these concepts to you in more detail.

I have previously instructed you on what the SEC must show to prove that something is material. "Material" has the same meaning with respect to this claim. That is, to show that a stated or omitted fact is material, the SEC must prove that there is a substantial likelihood that a reasonable investor would consider the fact important in making an investment decision and would view the fact as having significantly altered the total mix of information made available.

The SEC may prove the second element – that Mr. Ferrone acted with general awareness or knowledge – by showing that Mr. Ferrone's conduct was reckless. That is, the SEC may satisfy its burden by proving that Mr. Ferrone's conduct constituted highly unreasonable omissions or misrepresentations that involved not merely simple or even inexcusable negligence, but rather an extreme departure from the standards of ordinary care where the danger of misleading buyers or sellers was either known to Mr. Ferrone or so obvious that Mr. Ferrone must have been aware of it.

The SEC can prove the third element – that Mr. Ferrone provided substantial assistance – by showing that Mr. Ferrone engaged in affirmative conduct that assisted Immunosyn's filing of an annual, quarterly, or current report with the SEC that contained a materially misleading statement or omission. The SEC also can prove that Mr. Ferrone provided substantial assistance by showing that he remained silent or inactive with the conscious intent to aid Immunosyn's filing of a materially misleading report. To prove that Mr. Ferrone provided substantial assistance, the SEC must show that his affirmative conduct, silence, or inaction was a substantial causal factor in Immunosyn's filing of a materially misleading report. The SEC need not prove that Mr. Ferrone's assistance was the only cause of the violation.

29

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

A verdict form has been prepared for you.

[Verdict form read.]

Take this form to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the form, and all of you will sign it.

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, you must do so in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by another juror. The writing should be given to the court security officer, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you never should indicate what your numerical division is. In other words, never tell me, for instance, that you are split 5-3.

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous. You should make every reasonable effort to reach a verdict.

In doing so, each of you should consult with one another, express your own opinions, and listen to your fellow jurors' opinions. You should discuss your differences with an open mind. You should not hesitate to reexamine your own opinions and to change your opinion if you come to believe it is wrong.

However, you never should surrender your honest beliefs about the weight or effect of evidence solely because of other jurors' opinions or your desire to reach a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.